**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                            :
In re                                       :
                                            :
THE RUGGED BEAR COMPANY,                    :    Chapter 11
f/d/b/a RB ACQUISITION CORP.,               :
                                            :    Case No. 11-10577-HJB
         Debtor.                            :
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
```

**MOTION OF THE DEBTOR FOR AN ORDER PURSUANT TO SECTIONS 105, 361, 362, AND 363 OF THE BANKRUPTCY CODE (A) AUTHORIZING USE OF CASH COLLATERAL; (B) GRANTING ADEQUATE PROTECTION; (C) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY <u>RULE 4001; AND (D) GRANTING RELATED RELIEF</u>**

The Rugged Bear Company f/d/b/a RB Acquisition Corp. ("<u>Rugged Bear</u>" or the "<u>Debtor</u>"), hereby submits this motion (the "<u>Motion</u>") for an Order (the "<u>Interim Order</u>") pursuant to sections 105, 361, 362, and 363 of the Bankruptcy Code (as defined below) (i) authorizing use of cash collateral of the Debtor's senior secured prepetition lender, TD Bank, NA ("<u>TD Bank</u>"); (ii) granting adequate protection to TD Bank in the form of replacement liens and other protections described below; (iii) scheduling a final hearing; and (iv) granting related relief. As further set forth below, the Debtor seeks authority to use its cash and other receipts in the ordinary course of its retail business to satisfy ongoing expenses, including without limitation, amounts needed to pay wages, compensate estate professionals, and satisfy other post-petition expenses. Absent the use of cash collateral, the Debtor will be unable to operate its business and its prospects for reorganization will be immediately and irreparably harmed. In further support of the Motion, the Debtor respectfully states as follows:

BOS-1460411 v4

**Summary of the Relief Requested**

1. By the Motion, the Debtor requests, pursuant to sections 105, 361, 362, and 363 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Massachusetts Local Bankruptcy Rule ("MLBR") 4001-2 (a) the authority to use cash collateral and grant adequate protection to TD Bank in the form of replacement liens and the other protections described below and (b) the scheduling of a final hearing (the "Final Hearing") thereon. A proposed Interim Order is attached hereto as Exhibit A.[1]

2. As set forth below, TD Bank is entitled to receive adequate protection to the extent of any post-petition diminution in value of its interests in the prepetition Collateral and the cash proceeds thereof (the "Cash Collateral") resulting from the Debtor's use of the Cash Collateral during the bankruptcy case pursuant to sections 361, 362, and 363 of the Bankruptcy Code. TD Bank has not consented to the use of the Cash Collateral pursuant to the terms and conditions outlined in the Interim Order. The Debtor intends to seek such consent in advance of the interim hearing on this Motion.

3. In accordance with Bankruptcy Rule 4001 and MLBR 4001-2, below is a summary of the terms of the proposed Interim Order. Any terms that vary from the requirements of MLBR 4001-2(c) are highlighted in bold:

   (a) Authorization to Use Cash Collateral.

   (i) Subject to the terms and conditions of the Interim Order, and in accordance with the 3-week budget attached to the Interim Order as Exhibit A (the "Budget"), the Interim Order will authorize the Debtor to use Cash Collateral in the ordinary course of its business for the period (the "Specified Period") from the Petition Date through the date which is

---

[1] Unless stated otherwise, all capitalized terms not defined herein will have the meaning ascribed to such terms in the proposed Interim Order.

2

      the earlier to occur: (a) an Event of Default (subject to the Debtor's right to obtain further authorization to use Cash Collateral within the Notice Period) or (b) the Final Hearing on the Motion. At the Final Hearing, the Debtor will seek to further extend its use of Cash Collateral.

    (ii) The Debtor may use Cash Collateral during the Specified Period, at the times, in the amounts, and for the purposes identified in the Budget (as such may be amended as provided in the Interim Order) subject to the Permitted Variance (as defined below).

(b) <u>Adequate Protection</u>.

    (i) The Interim Order provides that, as adequate protection for the Debtor's use of Cash Collateral, TD Bank will receive replacement liens (the "<u>Replacement Liens</u>") pursuant to, and in accordance with Section 361(2) of the Bankruptcy Code, in and to all property of the kind presently securing the Prepetition Obligations owed to TD Bank, including property purchased or acquired with the Cash Collateral, together with any proceeds thereof, but excluding causes of action under chapter 5 of the Bankruptcy Code (the "<u>Collateral</u>") to the extent of any post-petition diminution in value of the prepetition Collateral.

    (ii) Notwithstanding the foregoing, the Replacement Liens (a) shall only be recognized to the extent of any post-petition diminution of the value of the prepetition Collateral resulting from the Debtor's use of the Cash Collateral during the bankruptcy case; and (b) shall only attach to and be enforceable against the same types of property, to the same extent, and in the same order of priority as existed immediately prior to the Petition Date.

    (iii) On the third business day of each week following the entry of the Interim Order, the Debtor shall furnish (a) TD Bank and its counsel and (b) any official committee of unsecured creditors appointed in this bankruptcy case and its counsel: (1) a weekly cash report setting forth, in comparative form, the actual results achieved against those projected for the prior week, including the actual cash receipts and disbursements and the variance of the actual results from those estimated in the Budget; and (2) such other documents and information as may be reasonably requested. The Debtor shall also furnish copies of its monthly operating reports as filed with the Office of the United States Trustee.

(c) <u>Events of Default</u>.

    (i) The Interim Order provides that the occurrence of any of the following events, unless waived by TD Bank in writing, will constitute an event of default (collectively, the "<u>Events of Default</u>"):

1. the failure by the Debtor to perform, in any material respect, any of the terms, provisions, conditions, covenants, or obligations under the Interim Order;

2. a default by the Debtor after the Petition Date in reporting the information specified in subsection (b)(iii) above, if such default will remain uncured for three (3) days following written notice from TD Bank to the Debtor;

3. reversal, vacatur, or modification (without the express prior written consent of TD Bank, each in its sole discretion) of the Interim Order, other than in accordance with the Final Order; or

4. dismissal of the case or conversion of the case to a chapter 7 case, or appointment of a chapter 11 trustee, examiner with enlarged powers, or other responsible person.

(d) <u>Rights and Remedies Upon Event of Default</u>.

(i) The Interim Order provides that, upon the occurrence of an Event of Default, the Debtor's authority to use Cash Collateral shall cease if the Debtor does not within five (5) business days thereof (the "<u>Notice Period</u>") seek an emergency hearing with the Court and obtain the further use of Cash Collateral.

**Jurisdiction and Venue**

4. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105, 361, 362, and 363 of the Bankruptcy Code.

**Background**

5. On January 25, 2011 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Sections 1107(a) and 1108 of the Bankruptcy Code authorize the Debtor to continue to operate its business and manage its

property as a debtor in possession. No trustee or examiner has been appointed in the Debtor's chapter 11 case.

6. For over 30 years, Rugged Bear has been selling high quality children's clothes. Rugged Bear operates 29 retail stores across 7 states in New England, New York, and New Jersey. The Debtor focuses on providing its customers with a convenient and familiar retail experience through its neighborhood locations and with reasonable prices and high quality for its products. The Debtor's assets consist primarily of: (i) cash; (ii) inventory; (iii) fixed assets; and (iv) accounts receivable. As of the Petition Date, the Debtor had approximately $176,000.00 of cash on hand, inventory with a book value of approximately $6,281,000.00,[2] fixed assets with a book value of approximately $1,278,000.00, and accounts receivable (i.e. short term credit card receivables) of approximately $408,000.00.

7. As of the Petition Date, the Debtor owed TD Bank approximately $4,278,496.00 pursuant to a revolving line of credit (the "<u>Prepetition Obligations</u>"). TD Bank asserts that the Prepetition Obligations are secured by a lien against substantially all of the Debtor's assets.

**Relief Requested**

8. By the Motion, the Debtor requests, pursuant to sections 105, 361, 362, and 363 of the Bankruptcy Code, Bankruptcy Rule 4001, and MLBR 4001-2, that the Court (a) authorize the Debtor's (i) use of Cash Collateral in the ordinary course of its business, in the amounts and for the purposes set forth in the 3-week Budget attached to the Interim Order and (ii) granting of adequate protection to TD Bank in the form of replacement liens and the other

---

[2] The retail value of the Debtor's Petition Date inventory was approximately $10,275,000.00.

5

protections described above, and (b) schedule the Final Hearing pursuant to Bankruptcy Rule 4001.

9. The expenses identified in the Budget are those incurred in the ordinary course of the Debtor's business, which are necessary to maintain the Debtor's operations and, therefore, preserve the value of the Debtor's assets. Further, the Debtor requests that it be authorized to exceed, on an aggregate basis, the revenues and expenses in the Budget by no more than ten percent (10%) (on an aggregate basis) (the "Permitted Variance") and to apply any unused portion in one week to any subsequent weekly period.

## Basis for Relief

10. The Debtor is currently in the process of formulating a go-forward business plan predicated on continuing its operations as a smaller, more profitable retail chain. The Debtor believes that by closing and liquidating inventory in unprofitable stores, it can reorganize around a core group of profitable locations, and thereby, maximize the value of its assets.

11. Absent authorization from the Court to use the Cash Collateral, the Debtor has no access to unencumbered funds and will have to cease its operations immediately. The use of Cash Collateral will enable the Debtor to maintain the continuity of its operations without disruption, and preserve the integrity and going concern value of the business while the Debtor pursues a reorganization strategy. Specifically, through the use of Cash Collateral, the Debtor will be able to satisfy its ongoing expenses, including amounts needed to pay wages and related benefits and pay all other post-petition obligations as they come due. Without the ability to use Cash Collateral to pay for such expenses, the Debtor will be unable to operate its business and will be forced to liquidate, thereby substantially devaluing its assets.

12. For the above reasons, the Debtor has determined, in the exercise of its sound business judgment, that the Debtor requires the use of Cash Collateral for the maintenance and preservation of its property, the operation of its business, the payment of expenses attendant thereto, and the payment of the costs and expenses of administering its chapter 11 case, all in compliance with the Budget.

## I. The Use of Cash Collateral is Warranted and Should Be Approved

13. Under section 363(c)(2) of the Bankruptcy Code, a debtor may not use "cash collateral" unless:

> (A) each entity that has an interest in such collateral consents; or
>
> (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of [section 363].

11 U.S.C. § 363(c)(2). See also In re LCC Fin. Corp., 2002 WL 31777643, at *2 (Bankr. D. N.H. Nov. 21, 2002) ("Under section 363 of the Bankruptcy Code, the Debtor is not allowed to use cash collateral without the movant's consent or an order of this Court. Section 363(e) conditions the use of cash collateral on a finding by the Court that the movant . . . is adequately protected.").

14. The Debtor intends to seek the consent of TD Bank in advance of the interim hearing on this Motion. As set forth above, the Debtor requires the immediate use of Cash Collateral to maintain the value of its business. Absent use of the Cash Collateral, the Debtor would be forced to close its retail stores immediately, greatly decreasing the value of the Debtor's assets, including the Collateral. If the Debtor is unable to use Cash Collateral, the value of TD Bank's prepetition Collateral would be substantially reduced. TD Bank will be adequately protected through the continuous operation of the business and the resulting increase in the value of the Debtor's assets (which include the prepetition Collateral). Use of Cash Collateral is,

7

therefore, critical to preserve and maintain the Debtor's estate and the possibility for consummation of a successful chapter 11 plan.

## II.     The Proposed Adequate Protection Should Be Approved

15.     TD Bank is entitled to receive adequate protection to the extent of any post-petition diminution in value of its interests in the prepetition Collateral resulting from the Debtor's use of Cash Collateral and the use, sale, or lease of prepetition Collateral pursuant to sections 361, 362, and 363 of the Bankruptcy Code.  Pursuant to the Interim Order, as adequate protection, TD Bank will receive replacement liens on the Collateral and the other protections summarized above.

16.     Section 363(e) of the Bankruptcy Code provides that, "on request of an entity that has an interest in property used . . . or proposed to be used . . . by the [debtor in possession], the court . . . will prohibit or condition such use . . . as is necessary to provide adequate protection of such interest."  11 U.S.C. § 363(e).   The concept of "adequate protection" is not defined in the Bankruptcy Code, but section 361 of the Bankruptcy Code contains a non-exhaustive list of acceptable forms of adequate protection, including a cash payment or periodic cash payments, additional liens, replacement liens, and the "indubitable equivalent of such entity's interest in such property."  11 U.S.C. § 361.

17.     "The purpose of adequate protection is to provide a secured creditor the benefit of its bargain while enabling a debtor to use secured property."  In re Northeast Chick Servs., Inc., 43 B.R. 326, 332 (Bankr. D. Mass. 1984); see also In re Pawtuxet Valley Prescription & Surgical Ctr., Inc., 2008 WL 1990887, at *2 (Bankr. D. R.I. Mar. 10, 2008) ("It is generally understood that adequate protection relates to maintaining the status quo for the period between filing the petition and before confirmation or rejection of the plan of reorganization.").

18. In considering a request for adequate protection, the court must balance the protection of the creditor against a debtor's need for the use of property to reorganize.

> The concept of adequate protection is based on two contradictory realities. One is that the use of cash collateral is essential to the success of the reorganization. The other is that the use necessarily diminishes the value of the security bargained for by the creditor, and the secured position ought not be allowed to deteriorate.

In re Xinde Int'l, Inc., 13 B.R. 212, 215 (Bankr. D. Mass. 1981). Courts often consider the harm to the debtor's ultimate prospects for reorganization, which reorganization is generally to the benefit of the secured creditors as well as to the debtor, if overly onerous adequate protection requirements are imposed at the beginning of a case. See id. ("If the court acts too swiftly and too rigidly in requiring adequate protection, this debtor's chance of reorganization may be so severely damaged as to be non-existent.")

19. The Debtor intends to seek the consent of TD Bank in advance of the interim hearing on this Motion. The proposed adequate protection will protect the interests of TD Bank in the Cash Collateral from any post-petition diminution in value. Accordingly, the proposed adequate protection is fair and reasonable and sufficient to satisfy the requirements of section 363(c)(2) of the Bankruptcy Code.

### III.   The Interim Approval Should Be Granted

20. Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral may not be commenced earlier than 14 days after the service of such motion. Fed. R. Bankr. P. 4001(b). Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing. Id.

21. Pursuant to Bankruptcy Rule 4001(b), the Debtor requests that the Court conduct an expedited preliminary hearing on the Motion and (a) authorize the Debtor to use the Cash Collateral in order to (i) maintain and finance the ongoing operations of the Debtor, and (ii) avoid immediate and irreparable harm and prejudice to the Debtor's estate and all parties in interest, and (b) schedule a Final Hearing on the relief requested herein.

## Notice

22. No trustee, examiner, or creditors' committee has been appointed in the Debtor's chapter 11 case. Notice of the Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee for the District of Massachusetts; (b) TD Bank; (c) the creditors holding the twenty (20) largest claims against the Debtor's estate; and (d) all known taxing authorities that have claims against the Debtor. In light of the nature of the relief requested, the Debtor submits that no other or further notice need be provided.

## Notice of Final Hearing

23. The Debtor further respectfully requests that the Court schedule a Final Hearing and authorize the Debtor to serve notice of the entry of the Interim Order and of the Final Hearing, together with a copy of the signed Interim Order and the Motion, on (a) the parties given notice of this Motion; (b) any party which has filed prior to the date of entry of the Interim Order a request for notices with the Court; and (c) counsel for any committee appointed pursuant to section 1102 of the Bankruptcy Code. The Debtor requests that the Court approve such notice of the Final Hearing as sufficient notice under Bankruptcy Rule 4001.

**No Prior Request**

24. No prior request for the relief sought herein has been made by the Debtor to this or any other court.

WHEREFORE, the Debtor respectfully requests that this Court enter an order, in substantially the form attached to the Motion as <u>Exhibit A</u>:  (i) authorizing use of Cash Collateral; (ii) granting replacement liens; (iii) scheduling a final hearing; and (iv) granting such other and further relief as is just and proper.

Dated:  Boston, Massachusetts
January 27, 2011

Respectfully submitted,

THE RUGGED BEAR, INC. f/k/a RB ACQUISITION CORP.

By its proposed counsel,

*/s/ Charles A. Dale III*
Charles A. Dale III (BBO No. 558839)
Mackenzie L. Shea (BBO No. 666241)
K&L Gates LLP
State Street Financial Center
One Lincoln Street
Boston, Massachusetts 02111
Tel:  (617) 261-3100
Fax: (617) 261-3175

E-mail:
chad.dale@klgates.com
mackenzie.shea@klgates.com