UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)

| | |
|---|---|
| In re<br><br>THE RUGGED BEAR COMPANY,<br>f/d/b/a RB ACQUISITION CORP.,<br><br>Debtor. | Chapter 11<br>Case No. 11-10577-HJB |

## PJM ASSOCIATES, LLC'S
## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Pursuant to 11 U.S.C. §§ 362(d)(1), Fed. R. Bankr. P. 4001 and MLBR 4001-1, PJM Associates, LLC ("PJM") hereby moves for relief from the automatic stay of its Connecticut summary process eviction proceedings against the above-captioned debtor (the "Debtor").[1] As grounds for its motion (the "Motion"), PJM states that it terminated the parties' non-residential real property lease agreement (the "Lease") and obtained an execution for possession before the Debtor filed its bankruptcy petition. PJM is entitled to relief from stay because the Debtor does not have a property interest in the leasehold, and thus the Lease is not subject to assumption or assignment.

In further support of its Motion, PJM respectfully states as follows:

## RELEVANT BACKGROUND

### A.      The Lease

1.      On or about January 1, 2001, PJM leased to The Rugged Bear, Inc. ("Bear, INC.") approximately 7,000 square feet of commercial space at 977 Farmington Avenue, West Hartford,

---

[1]      Alternatively, PJM requests a determination pursuant to 11 U.S.C. § 362(b)(10) that the stay does not apply to PJM based on the prepetition termination of the Lease. *See In re Southcoast Express, Inc.*, 337 B.R. 739, 742-43 (Bankr. D. Mass. 2006).

CT (the "<u>Premises</u>").[2]   The rent escalated monthly and was payable on the first day of each month.  Although the Lease term initially ended on December 31, 2006, on or about June 19, 2006, PJM and Bear, INC. executed the Amendment to Lease, thereby extending the term until December 31, 2012.

2.      On or about January 13, 2010, Bear, INC., with PJM's assent, assigned the Lease to the Debtor pursuant to the Modification and Amendment Agreement (the "<u>Modification Agreement</u>").  The Debtor since has maintained possession of the Premises.

**B.      The Debtor's Payment Defaults and PJM's Notice to Quit**

3.      The Debtor committed several defaults under the Lease by, among other things, failing to pay monthly rent of $11,859.00 for June, July and August 2010 when due.  As a result, on or about August 6, 2010, PJM served the Debtor with a Notice to Quit Possession (the "<u>Notice to Quit</u>") demanding the Debtor quit possession of the Premises on or before August 22, 2010.[3]

**C.      The Connecticut Summary Process Action**

4.      When the Debtor failed to quit possession in accordance with the Notice to Quit, on August 24, 2010, PJM filed a summary process action (the "<u>Summary Process Action</u>") in the Connecticut Superior Court to evict the Debtor from the Premises.[4]  A default judgment (the "<u>Judgment for Possession</u>") for immediate possession entered against the Debtor in the Summary Process Action on September 14, 2010.[5]

5.      On October 1, 2010, PJM agreed to stay execution of its Judgment for Possession, provided the Debtor made certain timely agreed-upon payments of past due rent and related

---

[2]      A copy of the Lease is attached as **<u>Exhibit A</u>**.
[3]      A copy of the Notice to Quit is attached as **<u>Exhibit B</u>**.
[4]      Copies of the Summons and Complaint are attached as **<u>Exhibit C</u>**.
[5]      A copy of the Judgment for Possession is attached as **<u>Exhibit D</u>**.

charges, and monthly use and occupancy charges moving forward.[6]  The Debtor acknowledged

in the stipulation that "time is of the essence as to all payments." *See* Ex. E. The Connecticut

Court approved the requested stay, but warned that "if the conditions stated above are not

followed completely, the plaintiff (landlord) has the right to apply for an Execution from the

Clerk of Court, which gives a marshal the right to physically move out your possessions." *See*

*id.*

6.      After the Debtor failed to make the required payments in December, 2010, PJM

filed an Affidavit re: Noncompliance with Stipulation.[7]  As a result, the Connecticut Court issued

a Summary Process Execution For Possession (Eviction) – Nonresidential (the "Execution for

Possession") on January 3, 2011.[8]  The sheriff was scheduled to take possession of the Premises

and evict the Debtor on January 28, 2011.

7.      The Debtor filed bankruptcy on January 25, 2011, thereby automatically staying

its eviction from the Premises.

## ARGUMENT

**I.      PJM is Entitled to Relief from the Automatic Stay**

8.      Section 362(d) of the Bankruptcy Code governs whether a party is entitled to

relief from the automatic stay.  It provides in relevant part:

> On request of a party in interest and after notice and a hearing, the court shall
> grant relief from the stay provided under subsection (a) of this section, such as by
> terminating, annulling, modifying, or conditioning such stay –
>
>      (1) for cause, including the lack of adequate protection for an interest in
> property of such party in interest; . . . .

---

[6]      Copies of the Stipulation re: Stay of Execution and the related Superior Court notice are attached as
**Exhibit E.**
[7]      A copy of the Affidavit re: Noncompliance with Stipulation is attached as **Exhibit F.**
[8]      A copy of the Execution for Possession is attached as **Exhibit G.**

9.    Here, there is cause to terminate the stay because the Debtor has no property interest in the leasehold.   That is because PJM terminated the Lease in accordance with Connecticut law, obtained a judgment and an Execution for Possession **before** the Debtor filed its bankruptcy petition.  As a result, PJM is entitled to relief from the automatic stay so it may continue its Summary Process Action to obtain possession of the Premises.[9]

A.    **PJM Terminated the Lease Before the Debtor Filed its Bankruptcy Petition**

10.    As a threshold matter, "[t]he Court is required to look to state law to determine a debtor's interest in the lease." *In re Norwood Aviation*, 47 B.R. 155, 158 (Bankr. D. Mass. 1985). Here, Connecticut law governs. *See* Lease (Ex. A) at § 16.19. Thus, the Court must look to Connecticut law to determine whether the Lease was terminated prepetition.

11.    Under Connecticut law, the "service of a valid notice to quit . . . terminates a lease and creates a tenancy at sufferance." *Waterbury Twin, LLC v. Renal Treatment Centers-Northeast, Inc.*, 292 Conn. 459, 466, 974 A.2d 626 (2009) *citing Bargain Mart, Inc. v. Lipkis*, 212 Conn. 120, 134, 561 A.2d 1365 (1989).[10]  Here, PJM served the Debtor with the Notice to Quit on or about August 6, 2010.  That notice terminated the Lease.

12.    PJM then obtained the Judgment for Possession on September 14, 2010. Although PJM agreed to stay execution of its Judgment for Possession, the Debtor failed to make the required payments in December, 2010.   As a result, PJM filed the Affidavit of Noncompliance and the Connecticut Court issued the Execution for Possession on January 3,

---

[9]    A copy of the proposed Order is attached hereto as __Exhibit H__.
[10]    Service of a notice to quite is also "'is a condition precedent to a summary process action' under Conn. Gen. Stat. 47a-23 that implicates the trial court's subject matter jurisdiction over that action." *Waterbury Twin*, 292 Conn. at 446 *quoting Bristol v. Ocean State Job Lot Stores of Conn., Inc.*, 284 Conn. 1, 5, 931 A.2d 837 (2007).  In Connecticut, "[s]ummary process is a special statutory procedure designed to provide an expeditious remedy.... It enable[s] landlords to obtain possession of leased premises without suffering the delay, loss and expense to which, under the common-law actions, they might be subjected by tenants wrongfully holding over their terms.... Summary process statutes secure a prompt hearing and final determination...." *Young v. Young,* 249 Conn. 482, 487-88, 733 A.2d 835 (1999) (citations and internal quotation marks omitted.).

2011. Thus, as of January 3, 2011, the Lease had long since terminated, and the Debtor had no remaining rights under the Lease or otherwise.

**B.** **PJM is Entitled to Relief from Stay Because the Debtor has No Rights under the Terminated Lease**

13.     "It is a well settled principle in bankruptcy law that once a lease is terminated, there is nothing for a debtor in possession to assume." *In re Crabb*, 49 B.R. 165, 167 (Bankr. D. Mass. 1985); *see also* 11 U.S.C. § 365(c)(3) (debtor may not assume or assign a nonresidential lease of real property that "has been terminated under applicable nonbankruptcy law prior to the order for relief."). Accordingly, "[w]here a landlord has properly terminated a debtor's lease prior to bankruptcy, the landlord is entitled to relief from stay as the debtor has no property interest in the leasehold." *In re Norwood Aviation*, 47 B.R. 155, 158 (Bankr. D. Mass. 1985).

14.     Moreover, "it is well established that equitable considerations do not play a part where a lease has been validly terminated" and "[c]ourts will not revive a terminated lease simply because of the lease's importance to the reorganization efforts." *Crabb*, 49 B.R. at 168.

15.     Because the Lease was terminated before the Debtor filed its bankruptcy petition, the Debtor no longer has any property interest in the leasehold. As a consequence, PJM is entitled to relief from stay pursuant to Section 362(d)—irrespective of whether the Debtor considers the Premises to be important to its reorganization efforts.

**II.** **PJM Requests the Court Waive the Stay Period Under Fed. R. Bankr. P. 4001(a)(3)**

16.     Should the Court grant the requested relief, PJM also requests the Court waive the stay period under Fed. R. Bankr. P. 4001(a)(3). Because the Debtor has no property interest in the leasehold, any appeal of an order granting PJM relief from stay would be ineffectual. Accordingly, the requested waiver is appropriate and will enable PJM to protect its valuable property interests and enforce its rights against the Debtor without further delay.

**WHEREFORE**, PJM respectfully requests that the Court enter an order:

1.   granting this Motion in all respects;

2.   terminating the automatic stay to permit PJM to exercise its rights against the Debtor by, among other thing, permitting PJM to continue the Summary Process Action to obtain possession of the Premises from the Debtor;

3.   waiving the stay period under Fed. R. Bankr. P. 4001(a)(3); and

4.   granting PJM such other and further relief as the Court deems just and proper.

Respectfully submitted,

PJM ASSOCIATES, LLC

By its attorney,

*/s/ Joseph M. Downes III*
Joseph M. Downes III, BBO No. 655853
Demeo & Associates, P.C.
One Lewis Wharf
Boston, Massachusetts 02110
(617) 263-2600
jdownes@jdemeo.com

Dated: February 1, 2011

# <u>Exhibit A</u>

Lease

*Final*
*Executed* 11/15/00

## LEASE AGREEMENT

THIS AGREEMENT is between **PJM ASSOCIATES, LLC**, a Connecticut Limited Liability Company, having a place of business at 62 LaSalle Road, West Hartford, Connecticut, ("Landlord"), and **THE RUGGED BEAR, INC.**, a Delaware corporation, with its principal place of business in Wellesley, Massachusetts. ("Tenant").

IT IS AGREED:

### ARTICLE I

### Premises and Terms

**Section 1.1 - Leased Premises.** The premises and land leased by the Landlord to the Tenant ("Leased Premises") are described as follows:

Identification: A premises located within 977 Farmington Avenue, in the City of West Hartford, County of Hartford, State of Connecticut (the "Property").

Square Footage: Approximately 7,000 square feet +/-, consisting of east side of main level and east side of basement level (the "Leased Premises").

**Section 1.2 - Term.** The term of this Lease shall be for a period of six (6) years, commencing January 1, 2001 ("Commencement Date"). It shall terminate at 11:59 P.M. on December 31, 2006 ("Termination Date"), unless sooner terminated under the terms of this Lease.

### ARTICLE II

### Rent

**Section 2.1 - Definition of Lease Year.** "Lease Year" shall mean, in the case of the first Lease Year, the twelve full calendar months plus the partial month, if any, following the commencement of the term of this Lease. Thereafter, "Lease Year" shall mean each successive twelve calendar month period following the expiration of the first Lease Year, except that in the event of the termination of this Lease on any day other than the last day of a Lease Year, then the last Lease Year shall be the period from the end of the preceding Lease Year to such date of termination.

-1-

RX NOV. 15. 2000 :10:40AM 00 (GOLDSTEIN, RATTZ & FELLMAN, LLP   NO. 0280   P. 2   P.002
NOV-14-2000   18:22   ALFANO&FLYNN   F.02

**Section 2.2 - Basic Rent.** The Tenant shall pay to the Landlord an annual Basic Rent as set forth below, which shall be paid in equal monthly installments, in advance, on the first day of each month hereof, as set forth below:

| Lease Year | Basic Annual Rent | Basic monthly Rent |
|---|---|---|
| 1 | $ 70,000.00 | $ 5,833.33 |
| 2-3 | 136,000.00 | 11,333.33 |
| 4-6 | 143,000.00 | 11,916.66 |
| 1st option 7-12 | 151,500.00 | 12,625.00 |

Tenant shall pay first two (2) months rent upon the commencement of the Lease.

**Section 2.3 - Additional Rent.** If, at any time during the term of this Lease, any tax or excise on rents or other taxes or charges, however described, are levied or assessed against Landlord with respect to the annual rents paid hereunder, such tax, excise or other charge shall be included in the taxes and paid as additional rent. The taxes shall not include franchise, estate, inheritance, succession, capital levy, transfer, income or other excess profit taxes assessed on Landlord.

Tenant shall also pay as additional rent, its proportionate share (24%) of the amount by which real estate taxes assessed by the Town of West Hartford against the property exceed the real estate taxes after the re-evaluation of the Building which is in the process of substantial renovation. Notwithstanding any terms of this paragraph, in the event there is an increase in the mill rate prior to re-evaluation (or thereafter), the base mill rate shall be the rate effective on the date of commencement of lease in determining any tax increment paid as additional rent. This shall not include any interest or penalty charges payable by landlord with respect to any such taxes. If the Landlord pays the real estate taxes, such taxes shall reflect any discount available to the Landlord by prompt payment of such tax regardless of whether such prompt payment is actually made.

If by reason of any of the provisions of this Lease, the Basic Rent under this Lease commences on any day other than the first day of a calendar month or terminates on any day other than the last day of a calendar month, Tenant's proportionate share of taxes shall be pro rated.

**Section 2.4 - No Notice and No Setoff.** The Tenant shall make all payments of Basic Rent, Additional Rent, and any other payments provided for in this Lease without notice, demand, setoff or counterclaim of any kind whatsoever, including money judgments, except that if this Lease requires the Tenant to make a particular payment only after notice from the Landlord, the Tenant shall be entitled to such notice.

- 2 -

**Section 2.5 - Place of Payment.** Payment of Basic Rent and Additional Rent shall be made to the Landlord at the address appearing at the end of this Lease, or to such other person, legal entity or address as the Landlord shall designate by written notice to the Tenant.

**Section 2.7 - Late Charges.** If the rent for any month is not paid by the end of the month due, the Tenant agrees to pay a late charge of five percent (5%) of the total amount past due to the Landlord. This late charge shall be paid on the first day of the next calendar week. This payment shall compensate Landlord for additional work caused to Landlord in order to collect said sums. Failure of Landlord to ask for such payment shall not constitute a waiver and Landlord may present Tenant a bill for all late charges accrued at any time during the term of this Lease and Tenant shall pay same within five (5) days after presentation. For the purpose of this Lease, any payment including late charges due under this Lease shall be deemed rent or additional rent and Landlord shall be entitled to all remedies it has under this Lease.

**Section 2.8 - Additional Rent.** Any and all payments payable by the Tenant under this Lease, other than Basic Rent, shall be deemed additional rent ("Additional Rent"), and the Landlord reserves the same rights and remedies against the Tenant for default in making any such payments as the Landlord shall have for default in the payment of Basic Rent, including, but not limited to, the right to seek and recover such payments as rent under any applicable provisions of the United States Bankruptcy Code. Notwithstanding the provision of Section 2.4, the Landlord shall provide the Tenant with notice of any amounts due hereunder as additional rent not less than thirty (30) days prior to the date such payment becomes due and payable.

<u>ARTICLE III</u>

<u>Use</u>

**Section 3.1 - Use of Premises.** The Tenant covenants and agrees that during the term of this lease, the Leased Premises shall only be used and occupied as a retail clothing outlet.

**Section 3.1A - Exclusive.** The Landlord agrees that so long as any part of the leased premises are being used for the sale of children's apparel, outer wear, boots, shoes, equipment and sports related accessories, unless Tenant consents thereto in writing, the remaining areas of the building, as the same may be expanded from time to time, will not be used for the operation of a store which shall sell children's apparel, outer wear, boots, shoes, equipment and/or sportswear.

- 3 -

NOV-09-2000   17:05   ALFANO&FLYNN   P.05

**Section 3.2 - Unlawful Purpose.** The tenant will not use or allow the Leased Premises or any part thereof to be used or occupied of any unlawful purpose or in violation of any Certificate of Occupancy or certificate of compliance covering the use of the Leased Premises or any part thereof, or in violation of any permit or license connected with the use of the Leased Premises or any part thereof, and will not suffer any act to be done or any condition to exist on the Leased Premises or any part thereof or any article thereon which may be dangerous (unless safeguarded as required by law) or which may, in law, constitute a nuisance, public or private, or which may make void or violable any insurance then in force with respect thereto.

Tenant shall not violate, or permit the violation of any condition imposed by the fire insurance policies carried by Landlord with respect to the Building and shall not do or permit anything to be done, or keep or permit anything to be kept, in the Leased Premises which would subject Landlord to any liability or responsibility for personal injury or death or property damage, or which would increase the fire or other casualty insurance rate on the Building or the property therein over the rate which would otherwise then be in effect or which would result in insurance companies of good standing refusing to insure the Building or any such property in amounts reasonably satisfactory to Landlord. Tenant will be responsible to reimburse Landlord for any increase. No hazardous substances, acids, vapors or other substances or materials shall be discharged or permitted to be discharged into the waste or water lines, vents, or flues of the Building. Plumbing fixtures in or servicing a tenant's premises shall not be used for any purpose other than the proposes for which they were designed or constructed.

**Section 3.3 - Compliance With Laws and Regulations.** Throughout the term of this Lease the Tenant, at its sole cost and expense, will promptly comply with all present and future laws, ordinances, orders, rules, regulations, and requirements (including Section 22a-448 through 22a-457 of the Connecticut General Statutes) of all Federal, State, and municipal governments, departments, commissions, boards and officers, including but not limited to, all orders, rules, and regulations of the National Board of Fire Underwriters, the local Board of Fire Underwriters or any other body or bodies exercising similar functions, and with the requirements of all public liability, fire, and other policies of insurance at any time in force with respect to the Leased Premises, foreseen or unforeseen, ordinary as well as extraordinary, which may be applicable to the Leased Premises whether or not such law, ordinance, order, rule, regulation or requirement shall interfere with the use and enjoyment of the Leased Premises. Tenant shall abate any nuisance within the Premises, and comply with all laws and requirements of public authorities with respect to the Premises or the use and occupancy thereof. If such public authorities impose any duty on Landlord or Tenant arising from (i) Tenant's use of the Premises, (ii) the manner of conduct of Tenant's business or its installation or operation of its equipment or other property

- 4 -

therein, (iii) any cause or condition created by the Tenant, or (iv) breach of any of Tenant's obligations hereunder, in any of such events, Tenant will save Landlord harmless from any such duty or order issued, and Tenant shall solely be responsible to comply with any such duty or order.

Section 3.4 - Waste.  The Tenant will not do or suffer any waste or damage, disfigurement or injury to any portion of the Leased Premises, reasonable wear and tear excepted.

Section 3.5 - Rubbish and Vermin.  The Tenant shall provide for its own rubbish removal and agrees to keep all rubbish in closed containers and to keep the areas to the rear, front and sides of the Leased Premises free from boxes, cartons, and rubbish.

Section 3.6 - Signs.  The Tenant may install and erect, at the Tenant's expense, indoor and outdoor signs at the Leased Premises, subject to approval of municipal authorities, it being understood that the Tenant shall be responsible for the maintenance of any such signs and any damage resulting from the installation or maintenance of such signs.  Any such signs installed or erected by the Tenant shall comply with all applicable laws, regulations and restrictions.  Any such signs shall be subject to the approval of Landlord, which shall not be unreasonably withheld or delayed.

Section 3.7 - Common Area Maintenance.  Tenant shall be responsible for the snow and ice removal only for the sidewalks immediately in front or in back of the Leased Premises.

Section 3.8 - Parking.  Landlord shall provide to Tenant two parking spaces for Tenant's employees.

## ARTICLE IV

### Quiet Enjoyment

The Tenant shall, upon paying the Basic Rent and Additional Rent hereunder and observing and performing all of the terms, covenants and conditions on the Tenant's part to be observed and performed, peaceable and quietly, have and hold the Leased Premises, without hindrance or molestation by any person or persons lawfully claiming by, through or under the Landlord, subject, however, to the terms of this Lease and to any fee mortgage, but it is understood and agreed that this covenant and any and all other covenants of the Landlord contained in the Lease shall be binding upon the Landlord and the Landlord's successors only with respect to breaches occurring during the Landlord's and the Landlord's successors' respective ownership of the Landlord's interest hereunder.

- 5 -

NOV-09-2000  17:06      ALFANO&FLYNN                                    P.07

## ARTICLE V

### Condition, Alterations and Repairs

   **Section 5.1 - Improvements by Landlord and Tenant.** Tenant agrees to perform all
of "Tenant's Work" as specified in the attached **Exhibit B.**   Landlord agrees to perform all
of "Landlord's work" as specified in the attached **Exhibit C.** The making of such
improvements shall be accomplished in a workmanlike manner in compliance with all
applicable Federal, State and municipal laws and regulations.

   **Section 5.2 - Representation.** Tenant has inspected the Leased Premises and is
thoroughly acquainted with its condition.  With the exception of the improvements to be
made pursuant to Section 5.1 of this lease, Tenant agrees to take the same "as is" and
acknowledges that the taking of possession of the Leased Premises by Tenant shall be
conclusive evidence that the Leased Premises were in satisfactory condition at the
time possession was taken.  The parties hereby agree that the Landlord or Landlord's agents
have neither made nor has the Tenant relied upon any representations, warrantees, either
expressed or implied, or promises with respect to the physical condition of the Building,
the land upon which it is erected or the Leased Premises, the rents, leases, expense of
operation or any other matter or thing affecting or related to the Leased Premises except as
herein expressly set forth, and no rights, easements or licenses are acquired by Tenant by
implication or otherwise except as expressly set forth in the provisions of this Lease.

   **Section 5.3 - Landlord's Work and Maintenance.** The Landlord shall make all
repairs within a reasonable time after written notice by the Landlord to the roof,
foundation, and exterior walls of the Building and Leased Premises, and the building of
which the Leased Premises are a part.  The Landlord reserves the right to stop services of
heating, air conditioning, plumbing and electrical systems when necessary by reason of
accident or emergency or for repairs, alterations, replacement or improvements or if, in the
judgment of the Landlord, such repairs are necessary or desirable until said repairs,
alterations, replacements or improvements have been completed.  The Landlord shall have
no responsibility or liability for interruptions in heat, air conditioning, plumbing and
electrical services to the Leased Premises during said period or when prevented from doing
so or so doing by strikes, accidents, or by any cause beyond the Landlord's control, or by
laws of regulations of any federal, state or municipal authority or failure of coal, oil, or
other suitable fuel supplies.  Notwithstanding the foregoing, all damage or injury to the
Leased Premises or to its fixtures, equipment, and appurtenances, whether requiring
structural or non-structural repairs, caused by or resulting from negligence of the Tenant
shall be repaired by Tenant at its sole cost and expense, to the satisfaction of the Landlord
reasonably exercised.  The Tenant shall also repair all damage to the Building and the

-6-

NOV-09-2000   17:06        ALFANO&FLYNN                                        P.08

Leased Premises caused by the moving of the Tenant's fixtures, furniture and equipment, except as otherwise provided.  Landlord  shall be installing new utilities and equipment (including, without limitation, a new HVAC system for the Leased Premises) and Landlord shall transfer the warranties of said equipment and utilities directly to the tenant and in addition, will warrant the installation of its work in connection therewith for one (1) year.

    Section 5.4 - Maintenance by Tenant.  The Tenant, at its own expense, shall keep the Leased Premises (including all, improvements that may be from time to time be thereon) neat and clean, in good repair, order and condition, reasonable wear and tear excepted..

    Tenant may use the existing mechanical and electrical facilities, if any, and Tenant shall be responsible for any maintenance and replacement of ventilating, air conditioning, heating, plumbing, sprinklers, and electrical systems in the premises and on the roof of premises so that the same will be in good working order at all times.  After Landlord completes its work pursuant to the terms of this Lease, Tenant therefore agrees to accept said premises and all installations therein in the existing physical condition, except as otherwise provided in Section 5.3 hereof, and agrees to make any changes necessary to the same so as to have all mechanical, heating, ventilating, air conditioning, sprinkler, plumbing and electrical systems and other systems located in or passing through the Premises or any part thereof in good working order at all times during the period of this Lease.

    Tenant will take good care of the Premises and not commit waste therein and at its expense, promptly make all repairs in and about the Premises resulting from:  (i) the installation, use, or operation of Tenant's property or equipment in the Premises;  (ii) moving of Tenant's property in and out of the Building;  or (iii) the misuse, act or neglect of Tenant, its employees, agents or contractors.  Tenant, except as otherwise referred to herein, shall be responsible for, and at its own expense, shall promptly make all other replacements or repairs necessary to otherwise maintain the interior of said Premises, including the maintenance of a reasonable temperature with the same to prevent freezing and including the keeping of such Premises clean and picked up and in good substantial order and appearance, both inside and outside the Premises, reasonable wear and tear excepted.  Tenant also agrees to keep the sidewalks and approaches to the Premises free of displays or other debris and/or obstruction.

    When used in this section, the term "repairs" shall include all necessary replacement and renewals.  All repairs made by the Tenant shall be performed in good and workmanlike manner, shall be at least equal in quality and class to the original work, and shall be in compliance with all applicable governmental laws, rules and regulations.

- 7 -

NOV-09-2000  17:07    ALFANO&FLYNN                                                        P.09

**Section 5.5 - Alterations and Improvements by Tenant.** The Tenant shall make no structural changes, alterations, changes, or additions to the Leased Premises without the prior written permission of the Landlord including  interior renovations necessary for the operation of the Tenant's business.  All such work shall be performed in a good and workmanlike manner and shall be in compliance with all applicable governmental regulations.  Tenant shall supply fully executed lien waivers from any contractors to perform work on the Leased Premises prior to commencing such work.  It is understood that this is a true net lease with Tenant being responsible at its expense for any and all of the maintenance and repairs and replacements to the Premises, and all installations of heating, ventilating, air conditioning, electrical, plumbing, mechanical, and any other systems located in or passing through the Premises or any part thereof.  Nonstructural work performed by Tenant amounting to more than $10,000.00, shall be submitted to Landlord with plans and specifications to obtain written consent prior to commencing any such work.  The Landlord agrees not to unreasonably withhold or delay its consent.

**Section 5.6 - Compliance with Law.** Tenant will make all repairs, alterations, additions or replacements to the Premises required by any law or ordinance or any order or regulation of any public authority, except those repairs and replacements which are specifically made the obligations of Landlord under the Lease;  keep the Premises equipped with all safety appliances so required by law;  procure any licenses and permits required for Tenant's use;  pay all Municipal County or State taxes assessed against the leasehold interest hereunder, or personal property of any kind owned by or placed in, upon or about the Premises by Tenant;  and comply with the orders and regulations of all appropriate governmental authorities.

**Section 5.7 - Tenant's failure to Repair.** If the Tenant fails to perform, for a period of thirty (30) days after written notice from the Landlord (or such longer period as may reasonably be required, provided Tenant has conveyed and is diligently proceeding to complete such repair), any obligation required to be performed by the Tenant under this Lease the Landlord, at the Tenant's cost, Landlord, on the expiration of such thirty (30) days, may, but shall not be obligated to enter on the Leased Premises to perform such obligation of the Tenant, charging the Tenant reasonable cost and expenses thereof, and the Tenant shall pay the Landlord such charges, as Additional Rent, in addition to any other amounts payable by the Tenant under this Lease.

**Section 5.8 - Payment for Tenant's Work.** Tenant will pay promptly when due the entire cost of any work to the Premises undertaken by Tenant and to bond against or discharge any liens for labor or materials within ten (10) days after written request by Landlord;  procure all necessary permits before undertaking such work;  and do all of such work in a good and workmanlike manner, employing materials of good quality, consistent with building standards and complying with all governmental requirements.  If Tenant fails

- 8 -

to comply with the provisions hereof, Landlord shall have all other rights expressed in Article XII, and remedies under Article XII "Defaults".

Section 5.9 - Liens. The Tenant shall indemnify and save the Landlord harmless from any claims for material or labor, or workmen's compensation claims in connection with any repairs or improvements made by the Tenant, and the Tenant shall have no authority on behalf of the Landlord to give anyone the right to place a lien on the Leased Premises or any part thereof, and should any such lien be placed, the Tenant shall have the same removed immediately; and upon failure to do so, the Landlord may take whatever steps are necessary to have the same removed and the cost thereof shall be paid by the Tenant to the Landlord.

Section 5.10 - Landlord's Liability. The Landlord shall not be liable for any damage or injury to the Leased Premises, or to any property of the Tenant or of any other person thereof, from water, rain, snow, ice, sewage, steam, gas or electricity which may leak into or issue or flow from any part of said Leased Premises, or from the bursting, breaking, obstruction, leaking or any defect of any of the pipes or plumbing appliances or from electric wiring or other fixtures on the Leased Premises, or from the condition of the Leased Premises or from the street or subsurface, unless such damage or injury was the result of any negligence, act or omission of Landlord.

Section 5.11 - Glass. The Tenant agrees to maintain and replace at its own expense, plate, door, window and other glass in the Leased Premises, whether interior or exterior, which shall become broken.

Section 5.12 - Personal Property at Tenant's Risk. All of the furnishings, fixtures, equipment, effects and property of every kind, nature and description of Tenant and of all persons claiming by, through or under Tenant which, during the continuance of this Lease or any occupancy of the Premises by Tenant or anyone claiming under Tenant, may be on the Premises shall be at the sole risk and hazard of Tenant, and except as otherwise set forth in Section 5.10, if the whole or any part thereof shall be destroyed or damaged by fire, water or otherwise, or by the leakage or bursting of water pipes, sprinkler pipes, or other pipes, by theft or from any other cause, no part of said loss or damage is to be charged to or borne by Landlord.

Section 5.13 - Yield Up. Tenant will, at the expiration of the Lease Term or earlier termination of this Lease, remove all trade fixtures and personal property and all interior partitions installed by Tenant repair any damage caused by such removal, remove all Tenant's signs wherever located, surrender all keys to the Premises and yield up the Premises (except for such interior partitions installed by Tenant, in broomclean condition

-9-

and in the same good order and repair in which Tenant is obliged to keep and maintain the Premises by the provisions of this Lease, reasonable wear and tear excepted. Any property not so removed shall be deemed abandoned and may be removed and disposed of by Landlord in such manner as Landlord shall determine and Tenant shall pay Landlord the entire cost and expense incurred by it in effecting such removal and disposition and in making any incidental repairs and replacements to the Premises. Tenant shall further indemnify Landlord against all loss, cost and damage resulting from Tenant's failure and delay in surrendering the Premises as above provided. The obligations of Tenant under the provisions of this paragraph shall survive the termination of this Lease.

<div align="center">

### ARTICLE VI

#### Utilities

</div>

The Tenant shall pay all charges for utilities, including, but not limited to, water, oil, gas, heat, electricity, power, sewer use charges and telephone or other communications service used, rented or supplied upon or in connection with the Leased Premises and shall indemnify the Landlord against said liability or damages on such accounts. Tenant's charges for utilities shall be based upon a separate meter reading installed at Landlord's sole cost and expense.

<div align="center">

### ARTICLE VII

#### Insurance and Indemnification

</div>

Section 7.1 - Fire and Extended Coverage. The Tenant understands that any fire and extended coverage insurance maintained by the Landlord on the Leased Premises is not maintained for the benefit of the Tenant. If the Tenant wishes fire and extended coverage insurance on the Tenant's personal property and leasehold improvements situated on the Leased Premises, the Tenant agrees to purchase the same at its own cost and expense.

Section 7.2 - Public Liability Insurance. At all times subsequent to the commencement date of this Lease and during its full term, the Tenant shall keep the Leased Premises insured at its sole cost and expense against claims for personal injury or property damage under a policy of general public liability insurance, including, but not limited to, Dram Shop Act coverage, if applicable, with limits of at least Twenty Thousand Dollars ($20,000.00). General liability insurance with limits of at least Two Million Dollars ($2,000,000.00) for any injury to one person or any one accident with property damage of at least One Million Dollars ($1,000,000.00). Such policy shall name the Tenant and Landlord as the insureds.

<div align="center">

- 10 -

</div>

**Section 7.3 - Increase in Insurance Premiums.** The Tenant shall pay one hundred (100%) percent of any increase in the insurance rates or premiums on policies of insurance carried by the Landlord on the Leased Premises, caused by the character of the occupation of the Leased Premises by the Tenant. The Tenant shall pay these increases as Additional Rent within ten (10) days after presentation of a copy of a bill for the same by the Landlord.

**Section 7.4 - Certificates of Insurance.** At or prior to the date of commencement of this Lease, the Tenant shall provide the Landlord with certificates of insurance certifying that all insurance required to be carried by the Tenant under the terms of this Lease is in full force and effect. No less than ten (10) days before the expiration of any such insurance policy, the Tenant shall furnish the Landlord with a new certificate of insurance certifying that such policy has been renewed or replaced.

**Section 7.5 - Qualification of Insurers.** All insurance provided for in this Lease shall be effected under enforceable policies issued by insurers of recognized responsibility, licensed to do business in the State of Connecticut.

**Section 7.6 - Indemnification.** The Tenant shall defend, indemnify and save harmless the Landlord and its agents and employees against and from all liabilities, suits, actions, damages, liability and expense, penalties, claims and costs which may be imposed upon or incurred by or asserted against the Landlord or its agents or employees by reason of, or in any way arising out of, the Tenant's use or occupancy of the Leased Premises or any part thereof after the execution of this Lease or occasioned wholly or in part by any act or omission of the Tenant, its agents, contractors, employees, servants, invitees, licensees or concessionaires, including, but not limited to, any of the following occurring during the term of this Lease, excluding any damage or injury resulting from any negligence act or omission of Landlord, Landlord agrees to indemnify Tenant from any damages sustained by Tenant and arising from Landlord's negligent acts or omissions.

(a)     Any work done in, on or about the Leased Premises or any part thereof after the execution of this Lease by or on the request of the Tenant, its agents, contractors, sub-contractors, servants, employees, sub-tenants, licensees, invitees or concessionaires;

(b)     Any negligence or otherwise wrongful act or omission on the part of the Tenant or any of its agents, contractors, sub-contractors, servants, employees, sub-tenants, licensees, invitees or concessionaires;

(c)     Any accident, injury or damage to any person or property occurring in, on or about the Leased Premises or any part thereof;

- 11 -

(d)    Any failure on the part of the Tenant to perform or comply with any of the covenants, agreements, terms, provisions, conditions or limitations contained in this Lease on its part to be performed or complied with.

In case any action or proceeding is brought against Landlord by reason of any such claim, Tenant, upon written notice from Landlord, shall, at Tenant's expense, resist or defend such action or proceeding by counsel approved by Landlord in writing, which approval Landlord shall not unreasonably withhold.

Tenant acknowledges and agrees that liability of Landlord under this Lease shall be limited to Landlord's interest in the Property and only judgment rendered against Landlord shall be satisfied solely out if its interest in the premises. No personal judgment shall lie against the Landlord in excess of Landlord's rights in the premises and no judgment rendered against Landlord shall give rise to any right of execution or levy against Landlord's other assets.

## ARTICLE VIII

### Destruction and Condemnation

**Section 8.1 - Partial Damage.** The parties agree that, in case the Building containing the Leased Premises shall be partially damaged by flood, fire, tornado, explosion, windstorm, or by the elements or otherwise at any time during the term of this Lease, and such damage can be repaired within a period of ninety (90) days after notice by Landlord to Tenant that damage will be repaired, the Landlord shall give immediate notice thereof to the Tenant, and a proportionate reduction of rent or total reduction of rent payment, payable by the Tenant hereunder, shall be allowed the Tenant for the time during which such part or parts or whole of the Leased Premises may be rendered untenantable or incapable of use or occupancy, and this Lease shall continue in full force and effect, and the Landlord shall, at its expense, as speedily as circumstances permit, repair the Leased Premises, if and to the extent permitted to do so by law. Notwithstanding the foregoing, Landlord shall not be required to expend more than the amount of available insurance proceeds in such reconstruction.

**Section 8.2 - Destruction.** In the event that the Building containing the Leased Premises be damaged or destroyed so to the extent of 25% or more of the cost of replacement, that it cannot be repaired within ninety (90) days, this Lease shall, at the option of Landlord, upon written notice to Tenant, become null and void and of no further force and effect, in which event, the rent payable by Tenant hereunder shall abate from date of destruction and Tenant shall be relieved of all other covenants, promises and agreements herein made and to have been thereafter performed.

- 12 -

**Section 8.3 - Taking of All.**  If at any time during the term of this Lease all or materially all of the Building or the Leased Premises, or so much of the Building or the Leased Premises that the remaining area can no longer properly be used for the purpose for which the same was being used prior to such condemnation, shall be taken by the exercise of the right of condemnation or eminent domain or for any public or quasi-public use under any statute, this Lease shall terminate and expire on the date that Tenant shall be deprived of possession by the taking authority, and the Basic Rent and Additional Rent provided to be paid by such Tenant shall be apportioned and paid to the date of such taking.  In such event, any award received or sum accepted by a compromise disposition or otherwise, on or as a result of such condemnation or taking, shall be distributed to the Landlord only.  The Tenant shall have the right to file and receive compensation for moving expenses and costs or loss to which Tenant might be put in removing Tenant's trade fixtures and equipment, but not the Leasehold.  Notwithstanding the above, Tenant may pursue any other remedies it may legally have against a condemning authority.  Landlord reserves all right to awards for damages to the Premises and the leasehold hereby created, (not including a separate award for Tenant's moving expenses, if any, or awards for damage to Tenant's trade fixtures, interior partitions installed by Tenant and other installations made by Tenant which Tenant is entitled to remove upon termination of this Lease) by reason of any exercise of the right or eminent domain, or by reason of anything lawfully done in pursuance of  any public or other authority;  and by way of confirmation Tenant grants to Landlord all Tenant's rights resulting from loss of the Tenant's leasehold, and Tenant agrees to execute and deliver any further instruments or assignments thereof as Landlord may from time to time request.

**Section 8.4 - Taking of Less Than All.**  If at any time during the term of this Lease any lesser portion of the Leased Premises than that described in Section 8.3 shall be taken in any eminent domain or condemnation proceeding, then this Lease shall continue and the rent shall be proportionately reduced on a reasonable basis for the remainder of the term. If the Landlord and Tenant cannot agree to the rent thus to be paid, the matter shall be submitted to arbitration as provided in Section 16.9.  Any condemnation award shall be distributed in the same manner as under Section 8.3.  In the event the rentable space is reduced by more than 15% then tenant at its option may terminate the Lease.

**Section 8.5 - Tenant's Waiver.**  Without limiting the generality of any of the foregoing provisions of this lease, Tenant hereby waives any and all claims of any kind, nature or description against Landlord arising out of the failure of roof membrane, any utilities or installations within the Premises, including specifically, but without limitation, water, sprinkler, air conditioning, heat, ventilation, electricity, plumbing and sanitary facilities.  Tenant also waives any claim for abatement of rent under these circumstances, except as Tenant does not waive claims of liability for Landlord's willful misconduct. Notwithstanding the foregoing, Landlord shall warranty for a period of one (1) year the installation of utilities.

- 13 -

## ARTICLE IX

### Waiver of Priority and Relationship of Parties

Section 9.1 - Subordination. The Tenant agrees, if so requested, to waive and surrender any and all right of prior lien which the Tenant has or ought to have by virtue of this Lease over any mortgage or mortgages which now are or which shall hereafter be placed upon the Leased Premises, the Building or Land or any part thereof any, further, that the Tenant shall execute any and all documents necessary to effect such waiver and surrender of rights or priority and hereby agrees that such mortgage or mortgages, if so desired by the Landlord, shall take precedence over this Lease and shall be entitled to the same rights and benefits both at law and in equity as said mortgage or mortgages would have had if executed, delivered and recorded prior to the lien of this Lease; provided, however, that the Tenant shall not be required to subordinate this Lease unless the holders of all such future mortgages shall enter into written agreements with the Tenant to the effect that, in the event of foreclosure or other action taken under a mortgage by the holder thereof, this Lease and the rights of the Tenant hereunder shall not be disturbed but shall continue in full force and effect so long as the Tenant shall not be in default hereunder, and that the proceeds of losses under the insurance policies received by it will be applied in the same manner as the Landlord is required to apply said proceeds under the terms and conditions of this Lease. The word "Mortgage" used herein includes mortgages, deeds or trust or other similar instruments, and modifications, extensions, renewals and replacements thereof and any and all advances thereunder.

Section 9.2 - Statement of Defaults. The Tenant shall furnish a written statement upon request of the Landlord as to whether or not the Tenant deems the Landlord to be in default of its obligations pursuant to the terms hereof in any respect. In the event a default is alleged, the notice shall specify the same in detail.

Section 9.3 - Modification for Mortgagees. In the event that any present or future financial institutions or insurance companies which hold a mortgage on the Leased Premises or any part thereof shall request any modification of this Lease, then the Tenant agrees to execute the same, provided that such modification does not materially increase the liability or decrease the rights of the Tenant nor materially decrease the responsibility of the Landlord hereunder.

Section 9.4 - No Joint Venture. Notwithstanding any obligation from one party to the other herein, the parties hereto state that they have not created and do not intend to create by this Lease a Joint Venture or partnership relation between them; it being their sole purpose and intent to create only a Landlord-Tenant relationship.

- 14 -

## ARTICLE X

### Entry, Access, Easements

**Section 10.1 - Entry by Landlord.** The Tenant will permit the Landlord and/or its authorized representatives to enter the Leased Premises at all reasonable times and upon reasonable notice, during normal business hours, for the following purposes: (1) inspecting the same; (2) performing any maintenance, repairs or improvements to the Leased Premises, Building or performing any work therein that may be necessary by reason of the Tenant's failure to make any repairs or perform any work in accordance with the terms of this Lease; (3) showing the building to prospective buyers; and (4) during the last six (6) months of this Lease, showing the Leased Premises to prospective tenants. Nothing herein shall be deemed or construed as a duty upon the part of the Landlord to do any such repairs upon the Tenant's default in failing to perform the same.

**Section 10.2 - Utility Easements.** The Landlord shall have the right to grant easements on or across the Land for the installation of utilities, provided that the use of such easements for such purposes does not materially interfere with the access, egress, visibility operations of the Tenant's business.

## ARTICLE XI

### Assignment and Subletting

**Section 11.1 - Assignment and Subletting.** Tenant will not without on each occasion first obtaining the written approval of Landlord, (which approval shall not be unreasonably withheld), assign, transfer, mortgage or pledge this Lease or sublease or any leasehold improvements (which term shall be deemed to include the granting of concessions and licenses and the like) for all or any part of the Premises. If any such assignment or sublease is permitted, the assignee or sublessee, in addition to the obligations of the Tenant hereunder, shall also assume all of such obligations of this Lease as though such assignee or sublessee were an original Tenant under this Lease. No approval of such assignment, transfer, mortgage, sublease or other encumbrance, in a particular instance shall be deemed to be a waiver of the obligation to obtain Landlord's approval in the case of any other assignment or subletting. A transfer of stock of any corporate tenant shall be the same as an assignment for purposes of this Lease.

**Section 11.2 - Limitations on Consent to Assignment or Subletting.** Notwithstanding the foregoing, (i) transfer amongst members of the immediate family of the current

- 15 -

NOV-09-2000  17:10    ALFANO&FLYNN    P.17

stockholders of the Tenant, (ii) sale of all or substantially all of Tenant's stock and assets as a going concern, which shall include five or more of The Rugged Bear, Inc. stores, (iii) a public offering of stock, or (iv) the transfer of stock to a subsidiary or affiliate (as defined herein), shall not require Landlord's consent.  Tenant shall, however, remain primarily liable after such transfer.

The term "Affiliate of Tenant" for purpose of this Article shall mean (i) any corporation, partnership, trust, association or other business organization directly or indirectly (through other entities or otherwise) owning, controlling or holding, whether with or without power to vote, 51% or more of the entire beneficial interest in Tenant or any successor whether by merger, consolidation or acquisition of all or substantially all of the assets of Tenant, (ii) any corporation or trust with transferable shares, 51% or more of whose outstanding capital stock or shares of beneficial interest of any class is directly or indirectly (through other entities or otherwise) owned, controlled or held, whether with or without the power to vote, by Tenant or any successor whether by merger, consolidation or acquisition of all or substantially all of the assets of Tenant or any corporation affiliated with Tenant or such successor as defined in (i) above, and (iii) any partnership, association or other business organization, 51% or more of the beneficial interest in which, whether with or without the power to vote, is directly or indirectly (through other entities or otherwise) owned, controlled or held by Tenant or such successor or any corporation affiliated with Tenant or such successor as defined in (i) above, or (iv) any franchisee of Tenant.

## ARTICLE XII

### Default

**Section 12.1 - Default.**  The Landlord shall have the right to terminate this Lease upon the following events:

(a)  Failure of the Tenant to pay any rent or additional rent for thirty (30) days after the same shall become due and payable (provided, however, if any such failure shall occur twice in any calendar year, such failure shall not be in event of default if payment is made within five (5) days after notice of such failure is given to Tenant, it being agreed that any later failure of Tenant to timely pay any rent or other payment due within such calendar year shall be in event of default without any requirement of notice and without any grace period);

- 16 -

(b) Neglect or failure by the Tenant to perform or observe any of the covenants or undertakings herein on its part to be performed or observed and failure to remedy such default within thirty (30) days after written notice thereof to it by the Landlord;

(c) Any assignment made of the Tenant's property for the benefit of creditors;

(d) If a receiver, trustee or assignee for the Tenant shall be appointed;

(e) If the Tenant shall be declared bankrupt or insolvent according to law;

(f) If any bankruptcy proceeding shall be commenced by or against the Tenant;

(g) If the Tenant abandons the Leased Premises for thirty (30) days.

Landlord may, in addition to and not in derogation of any remedies for any preceding breach of covenant, immediately or at any time thereafter and without demand or notice and with or without process of law, enter into and upon the Premises or any part thereof or mail a notice of termination addressed to Tenant at the Premises, and repossess the same as of Landlord's former estate and expel Tenant and those claiming through or under Tenant and remove its and their effects without being deemed guilty of any manner of trespass and without prejudice to any remedies which might otherwise be used for arrears or rent or preceding breach of covenant, and upon such entry or mailing as aforesaid this Lease shall terminate, Tenant hereby waiving all statutory rights (including without limitation rights of redemption, if any, to the extent such rights may be lawfully waived) and Landlord, without notice to Tenant, may store Tenant's effects, and those of any person claiming through or under Tenant at the expense and risk of Tenant, and, if Landlord so elects, may sell such effects at public auction or private sale and apply the net proceeds to the payment of all sums due to Landlord from Tenant, if any, and pay over the balance, if any, to Tenant.

Section 12.2 - Damages. In the event of the Tenant's default as aforesaid, the Tenant also agrees: (1) to indemnify and save the Landlord harmless from and against all expenses which the Landlord may incur, including, without limitation, commercially reasonable, legal expenses, attorney's fees, brokerage fees and the cost of putting the Leased Premises in good order or preparing the same for rental (but not including the cost of alterations or improvements to the Leased Premises); (2) that the Landlord may relet the Leased Premises or any part or parts thereof, either in the name of the Landlord or otherwise, for a term or terms which may, at the Landlord's option, be less than or exceed the period which would otherwise have constituted the balance of the term and of any extension thereof and may grant concessions or free rent; and provided same does not alter or reduce obligations of Landlord to mitigate damages, (3) that the Tenant or its legal

- 17 -

NOV-09-2000   17:11    ALFANO&FLYNN    P.19

representatives shall pay the Landlord, as liquidated damages for the failure of the Tenant to observe and perform the Tenant's covenants herein contained, any deficiency between the rent hereby reserved and the net amount, if any, of the rents collected on account of any lease or leases of the Leased Premises for each month of the period which would otherwise have constituted the balance of the term. The Landlord, at its option, may make such reasonable alterations, repairs or replacements and decorations on the Leased Premises that the Landlord, in its sole judgment, considers advisable and necessary for the purposes of reletting the Leased Premises. The making of such alterations or decorations shall not operate or be construed to release the Tenant from liability hereunder. The Landlord shall, in no event, be liable for failure to relet the Leased Premises, or, if the Leased Premises are relet, for failure to collect the rent thereof under such reletting. Notwithstanding the foregoing, the Landlord agrees to use commercially reasonable efforts to mitigate damages.

Section 12.3 - Non-Waiver. The Landlord's failure to act upon breach of any of the covenants of this Lease by the Tenant shall in no way constitute a waiver of the rights of the Landlord, at any time in the future, to act upon such default; nor shall any such failure to act prevent the Landlord from acting in the event of any other or further breach of the Tenant's covenants. No provision of this Lease shall be deemed to have been waived unless such waiver be in writing signed by the Landlord. No payment by the Tenant or receipt by the Landlord of a lesser amount than the Basic Rent or Additional Rent then due shall be deemed other than on account of the earliest rent then unpaid, nor shall any endorsement or statement on any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction, and the Landlord may accept such check or payment without prejudice to the Landlord's right to recover the balance of such rent or pursue any other remedy provided for in this Lease.

Section 12.4 - Deferred Payments. No delay or delays in the payment of rent reserved in manner or in times stipulated and no failure of the Landlord to enforce the provisions of this Lease upon such occasion or in the case of default of any covenant herein contained on the part of the Tenant to be performed shall be construed as creating a custom of deferred payments or as a waiver of any of the provisions of this Lease or of the Landlord's right to terminate this Lease or otherwise to enforce the provisions thereof.

Section 12.5 - Provisions not Exclusive. Any and all rights and remedies herein created for the Landlord shall be cumulative, and the use of one remedy shall not be taken to exclude or waive the right to the use of another. The foregoing rights and remedies are not intended to be exclusive but as additional to all rights and remedies the Landlord would otherwise have by law.

- 18 -

**Section 12.6 - Attorney's Fees**. In the event that Landlord brings an action against the Tenant to enforce any covenant of this Lease, including actions for rent or other payments due and actions in summary process, the Landlord, as determined by the entry of a judgment by a court of competent jurisdiction, shall be indemnified by the Tenant against all legal costs and charges, including reasonable attorney's fees.

**Section 12.7 - Expenses.** If Tenant or Landlord shall at any time be in default hereunder and if the other party shall deem it necessary to engage attorneys to enforce such parties' rights hereunder, the termination of such necessity to be in the sole discretion of the applicable party, the defaulting party will reimburse the other party for the reasonable expenses incurred thereby, including, but not limited to court costs and reasonable attorney's fees.

## ARTICLE XIII

### Security Deposit

The Tenant is not required to provide a security deposit to Landlord.

## ARTICLE XIV

### Termination and Surrender

**Section 14.1 - Condition of Premises**. Upon expiration or other termination of this Lease, the Tenant shall:

(a) Quit and surrender the Leased Premises in as good condition as reasonable use and wear thereof will permit, damage by fire, other casualty and the elements excepted.

(b) Remove from the Leased Premises its goods and effects and those of all persons claiming under the Tenant, such goods and effects to include but not be limited to all movable partitions erected by it, appliances, shelving and all other equipment, stock, and materials which the Tenant may have installed in, or brought upon, the Leased Premises; provided, however, that the Tenant shall, at its own expense, repair all damage to the Leased Premises by reason of such removal.

All repairs, alterations, other improvements or installations made to or upon the Leased Premises, which are so attached to the realty that the same will be by law deemed

- 19 -

to be a part of the realty, shall be the property of the Landlord and remain upon, and be surrendered with, the Leased Premises upon the termination of the term of this Lease. Notwithstanding the foregoing, all trade fixtures and signs, whether by law deemed to be a part of the realty or not, installed by the Tenant at any time or anyone claiming under the Tenant, shall remain the property of the Tenant or persons claiming under the Tenant and may be removed by the Tenant or anyone claiming under the Tenant at any time or times during the term of this Lease.

Section 14.2 - Holding Over. If the Tenant remains on the Leased Premises beyond the expiration of this Lease or any renewal or extensions thereof without the written consent of the Landlord, such holding over shall not be deemed to create any tenancy, but the Tenant shall be a Tenant at sufferance only, at a daily rate equal to one and one-half (1 1/2) times the per diem rental rate and other charges under this Lease, and the Landlord shall have, in addition, all of the rights and remedies reserved to it under this Lease except those relating to the Term of this Lease.

## ARTICLE XV

### Renewal Options

Section 15.1 - Renewal Options. Tenant is hereby granted two (2) successive options to renew the Initial Term for a period of six (6) additional years each. The First Renewal Term shall commence at the expiration of the Initial Term at the Basic Rent set forth in Section 2.2. The Second Renewal Term shall be upon market rate terms and conditions as both parties mutually agree, but in no event less than the base rent and additional rent in effect in lease year twelve. In the event the parties hereto cannot mutually agree upon terms and conditions within 60 days of the expiration of the term of this Lease, then this option shall expire and be in no further force and effect.

Section 15.2 - Notification. Tenant shall notify Landlord in writing not less than six (6) months prior to the commencement of each Renewal Term of its election to exercise such Renewal Option. Said notice to be by certified mail, return receipt requested. Tenant shall not be in default beyond any grace period of this Lease at the time Tenant gives such written notice.

- 20 -

## ARTICLE XVI

### Concluding Provisions

**Section 16.1 - Rights of Mortgagee and Subordination.** This Lease is subject and subordinate to all ground or underlying leases and to all mortgages which may now or hereafter affect such leases or the real property of which Premises form a part, and to all renewals, modifications, consolidations, replacements and extensions thereof. This clause shall be self-operative and no further instrument of subordination shall be required by any mortgage, provided mortgagee agrees to recognize Tenant's rights under this lease so long as Tenant shall not be in terminable default under this Lease. Tenant shall receive a non-disturbance agreement from any new mortgagee. Notwithstanding the above, in confirmation of such subordination, Tenant shall execute promptly any certificate or subordination agreement that any mortgagee may request, including an attornment agreement.

Tenant agrees to give to any mortgagee requesting it, copies of notice of any default given by Tenant to landlord or alleged by Tenant and such mortgagee, at its option, shall have a reasonable time after notice to cure such act or omission (taking into account the nature of the alleged act).

Tenant shall, without charge, at any time and from time to time, within thirty (30) days after reasonable request by Landlord, deliver a written instrument, to Landlord or any other person, firm or corporation, specified by Landlord, duly executed and acknowledged, certifying: (a) That this Lease is unmodified and in full force and effect, or, if there has been any modification, whether the same is in full force and effect as modified, and stating any such modification; (b) that there are no setoffs or defenses against the enforcement of any of the agreements, terms, covenants or conditions of this Lease and any modification thereof upon the part of Tenant to be performed or complied with, and, if so, specifying the same; and (c) the dates to which the annual fixed rent, additional rent and other charges hereunder have been paid.

**Section 16.2 - Attorney's Fees.** In the event it shall become necessary for either party to bring a legal action against the other to enforce the provisions of this Lease, the prevailing party shall be entitled to an award of interest on all past due sums, all attorney's fees, court costs and costs associated with effecting service such as Marshall's fees or Sheriff's fees. In any provision of this Lease where interest shall be payable in the amount of twelve (12%) percent per annum.

- 21 -

NOV-09-2000  17:12       ALFANO&FLYNN                                           P.23

**Section 16.3 - Environmental Matters.** Tenant shall have full responsibility for compliance of the Premises with OSHA, environmental laws and regulations, handicapped laws and regulations, and any other existing or future laws or regulations applicable to such Premises. Tenant shall take all steps necessary to avoid the use of hazardous substances or substances which will or may contaminate the Premises, and will save Landlord harmless from any and all violations of any such laws and/or regulations. However, Landlord shall be responsible for any pre-existing hazardous conditions prior to the time of execution of this Lease and for the Property.

**Section 16.4 - Entire Agreement.** This Agreement contains the entire understanding of the parties. There are no oral understandings, terms or conditions, and no party has relied upon any representation, express or implied, not contained in this Agreement.

**Section 16.5 - Amendments.** This Agreement may not be amended, modified, altered or changed in any respect whatsoever except by a further agreement in writing, fully executed by each of the parties hereto.

**Section 16.6 - Construction.** The parties agree that this document shall not be construed more severely against one of the parties than the other.

**Section 16.7 - Captions.** The captions of this Agreement are for convenience and reference only and in no way define, describe, extend or limit the scope or intent of this Agreement or the intent of any provisions hereof.

**Section 16.8 - Notice.** Any notice, demand, offer or other written instrument ("Notice") required or permitted to be given, made or sent under this lease shall be in writing, signed by or on behalf of the party giving such Notice and shall be hand delivered or sent, postage prepaid, by Federal Express or similar overnight delivery or by Registered or Certified Mail, Return Receipt Requested, addressed as follows:

TO LANDLORD:        **PJM ASSOCIATES, LLC**
                    **c/o Sinatro Bros.**
                    **62 LaSalle Road**
                    **West Hartford, CT**

TO TENANT:          **THE RUGGED BEAR**
                    **34 Central Street**
                    **Wellesley, MA  02482**

(with a copy to:)   **Goldstein, Kaltz & Fellman, LLP**
                    **800 South Street, Suite 395**
                    **Waltham, Massachusetts  02453**

- 22 -

Any Notice to be given to the estate of any deceased or incompetent person shall be addressed to the personal representative of such deceased or incompetent person at the address of such representative, or if there is not personal representative, to the estate of the deceased or incompetent person at the address set forth in this Section.

Either party may change its address as set forth in this section by giving Notice to the other party in accordance with this Section.

Section 16.9 - Effective Date of Notice.  The effective date of any Notice shall be the date of the addressee's receipt of such Notice.  Notwithstanding the foregoing, inability to deliver because of a changed address of which no notice was given or rejection or other refusal to accept shall be deemed to be the receipt of the notice as of the date of such inability to deliver, rejection or refusal to accept.

Section 16.10 - Joint and Several Liability.  If this Lease is executed by more than one person or entity as Tenant, each of such persons and entities shall be jointly and severally liable for the performance of all of the Tenant's obligations set forth in this Lease.

Section 16.11 - Notice of Lease.  This Lease shall not be recorded, but a Notice of Lease conforming to the requirements of Section 47-19 of the Connecticut General Statutes may be recorded by either the Landlord or the Tenant.  All governmental charges attributable to the execution or recording of this Notice shall be paid by the party requiring the recording of this Notice.

Section 16.12 - Arbitration.  In the event of any dispute among or between any party bound by the terms of this Agreement, such dispute shall be settled by arbitration in Hartford, Connecticut, in accordance with the rules of the American Arbitration Association as then existing, and judgment upon the award rendered may be entered in any court having jurisdiction thereof.

Section 16.13 - Counterparts.  This Agreement shall be executed in one or more copies, each of which shall be deemed an original.

Section 16.14 - Partial Invalidity.  The invalidity of one or more of the phrases, sentences, clauses, Sections or Articles contained in this Agreement shall not affect the remaining portions so long as the material purposes of this Agreement can be determined and effectuated.  If any portion of this Agreement may be interpreted in two or more ways, one of which would render the portion invalid or inconsistent with the rest of this Agreement, it shall be interpreted to render such portion valid or consistent.

- 23 -

**Section 16.15 - Persons and Property Bound.** The Tenant hereby agrees that any Judgment, Decree or Award obtained against the Landlord or any succeeding owner of the Landlord's interest, which is in any manner related to this Lease, or the Leased Premises or the Tenant's use or occupancy of the Leased Premises, shall be satisfied from the Landlord's equity in the Leased Premises to the extent then owned by the Landlord or such succeeding owner, and the Tenant further agrees to look only to such assets and to no other assets of the Landlord or such succeeding owners for satisfaction.

**Section 16.16 - Waiver of Jury Trial.** The Landlord and Tenant do hereby waiver trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other.

**Section 16.17 - Successors.** This Agreement shall be binding upon and inure to the benefit of the parties and to their respective heirs, personal representatives, successors and assigns.

**Section 16.18 - Number and Gender.** Any reference to the masculine gender shall be deemed to include the feminine and neuter genders, and vice versa, and any reference to the singular shall include the plural, and vice versa, unless the context otherwise requires.

**Section 16.19 - Connecticut Law.** This Agreement shall be governed by, construed and enforced in accordance with the laws of the State of Connecticut.

**Section 16.20 - Consents.** Wherever the consent of either party to this Lease is required, such consent shall not be unreasonably withheld or delayed.

**Section 16.21 - No Brokers.** Tenant and Landlord represent and warrant that no brokers or agents were retained, used or referred to with respect to this Lease and/or leasing.

**Section 16.22 - Landlord Waiver.** Landlord waives all rights in Tenant's personal property, including without limitation, Tenant's inventory, stock-in-trade, trade fixtures, and removable equipment in favor of any secured party. Landlord agrees to execute, upon request, a confirmation of such waiver in such form as it satisfactory to Tenant or Tenant's lenders, including, without limitation, the waiver attached as **Schedule 1.**

- 24 -

NOV-09-2000  17:13        ALFANO&FLYNN                                              P.26

Signed this _15_ day of _November_, 2000.

Witnessed by:                          PJM ASSOCIATES, L.L.C.

_____              By _____

_____              _____


_____              THE RUGGED BEAR, INC.
                                       By: _____


STATE OF CONNECTICUT  )
                      )  ss.                              , 2000
COUNTY OF HARTFORD    )

     Personally appeared                        , signer and sealer of the foregoing
instrument, who, being duly authorized, acknowledged the same to be his free act and
deed as said Manager, and the free act and deed of PJM Associates, LLC, before me.


                              _____

                              Notary Public
                              Commissioner of the Superior Court


COMMONWEALTH OF MASSACHUSETTS)
                             )  ss.               , 2000
COUNTY OF                    )

     Personally appeared          ,             , signer and sealer of the
foregoing instrument, who, being duly authorized, acknowledged the same to be his free
act and deed as said          and the free act and deed of **The Rugged Bear, Inc.**,
before me.


                              _____

                              Notary Public
                              My commission expires:


- 25 -

EXHIBIT "B"
to Lease by and between
**PJM Associates, LLC and
The Rugged Bear, Inc.**

<u>Tenant's work</u>

Tenant shall be responsible for providing all labor, materials and equipment necessary and appropriate for construction of the present physical "as-is" Premises to become a typical retail clothing store.

Tenant agrees that all of the foregoing work and any other work that Tenant shall perform at the Premises shall be done in a good and workmanlike manner and shall comply with any and all codes related to such construction as promulgated by any governing body having jurisdiction over such construction.

Tenant agrees that it shall keep and maintain a policy of Builder's Risk insurance during the course of the construction and shall require each and every contractor performing work at the Premises to provide certificates of liability insurance and Workers' Compensation insurance naming Tenant and Landlord as additional insureds.

F:/docdir/leases/pjm-rugged bear.doc.

# The Rugged Bear, Inc.

December 30, 2009

Tucker Sinatro
PJM Associates, LLC
62 LaSalle St.
West Hartford, CT 06107

> Re:   Lease Agreement dated November 15, 2000 (the "Lease") by and between
> PJM Associates, LLC (the "Landlord"), and The Rugged Bear, Inc. ("Rugged
> Bear")

Dear Tucker:

I write to follow up on your discussions of a plan for Landlord to be paid back rent
owed and to receive ongoing rental payments in a timely fashion under the Lease.

Rugged Bear intends to sell substantially all of its assets (the "Sale") to an entity (the
"Purchaser") affiliated with Detwiler Fenton & Co., a Boston-based investment company.
The newly formed Purchaser, which is in the process of raising capital for the Sale through
its brokerage affiliate, will have an experienced management team, a strong balance sheet,
and will be committed to stabilizing and expanding the current Rugged Bear business.

In connection with the Sale, Rugged Bear will need to assign the Lease to the
Purchaser. In addition, the closing of the Sale is conditioned on Rugged Bear's reducing
certain liabilities. As you know, Rugged Bear currently owes $57,149 to Landlord for past
rent obligations (the "Back Rent"), and is currently obligated under the terms of the Lease to
pay Landlord $21.64 per square foot in annual rent (the "Annual Rent"). In order to facilitate
the consummation of the Sale, Rugged Bear will need the Landlord's consent to the
following changes to the Lease:

> 1. Landlord will grant a permanent abatement of 25% of Back Rent equal to
> $14,288
>
> 2. Rugged Bear will pay Landlord $25,000 on or before December 31, 2009.
>
> 3. Landlord will grant Rugged Bear a reduction of annual rent by 10% for the
> balance of the lease, where the new monthly rent will be $11,363 (see below,
> point 4)
>
> 4. Balance of Back Rent owed of $17,861.00 will be paid back amortized over
> the balance of the lease from 1/1/10 thru 12/31/12 where revised monthly rent is
> $11,859.14

Tucker Sinatro
December 30, 2009
Page 2 of 2

These changes to the Lease, along with the assignment of the Lease to the Purchaser and a standard estoppel certificate, will allow the Sale to go forward and all the parties to benefit. Time is of essence however. In order for the Sale to proceed, Rugged Bear needs Landlord's consent to the Sale and the assignment of Rugged Bear's interest under the Lease, as amended by the changes set forth above, **as soon as possible, and in any event by December 28, 2009**. Please indicate your consent and agreement to these terms by signing this letter in the space provided below and returning it by fax (781-283-5776) to Michael F. Zullas, Esq., legal counsel to Purchaser.

If you have any questions, please do not hesitate to contact Rugged Bear, or Michael F. Zullas, Esq., legal counsel to Purchaser, at (781) 283-5775.

Very truly yours,

Alan T. McDonough
President
The Rugged Bear, Inc.

Agreed and accepted:

LANDLORD:

PJM Associates, LLC

By: Thomas G. Sinatra, Its Manager
Title: Member Manager
Date: 12/30/09

# **Exhibit B**

## Notice to Quit

## NOTICE TO QUIT POSSESSION

TO :  THE RUGGED BEAR COMPANY

977 Farmington Avenue
(Approximately 7,000 square feet, consisting of the east side of main level and east side of basement level)
West Hartford, Connecticut

This is to give you notice that you are to quit possession of the premises known as:

977 Farmington Avenue (Approximately 7,000 square feet, consisting of the east side of main level and east side of basement level), West Hartford, Connecticut

now occupied by you on or before the 22nd                        day of August, 2010.

This notice is given for the following reason:

NONPAYMENT OF RENT WHEN DUE FOR COMMERCIAL PROPERTY.

Notice is hereby given that effective this date any tender of money for rent shall be accepted by the Landlord for Use and Occupancy only.

Dated at West Hartford, Connecticut this 4h                        day of August, 2010.

Victor A. Feigenbaum, Attorney for
PJM Associates, LLC

VICTOR A. FEIGENBAUM • Attorney at Law • Juris No. 370489
26 North Main Street • West Hartford, CT 06107 • Telephone (860) 313-0776 • Facsimile (860) 313-4042

STATE OF CONNECTICUT:
                          : SS: WEST HARTFORD          AUGUST 6, 2010
COUNTY OF HARTFORD  :


Then and by virtue hereof, and by direction of the Plaintiff's Attorney, I left a true and attested
verified copy of the within original NOTICE TO QUIT POSSESSION at the usual place of
business of the within named Tenant, THE RUGGED BEAR COMPANY at 977 Farmington
Avenue, in the Town of West Hartford, County of Hartford.


Service was made on the Commercial Premises.


The within is the original NOTICE TO QUIT POSSESSION with my doings hereon endorsed.

| | | |
|---|---|---|
| SERVICE: | $ 30.00 | ATTEST: |
| PAGES: | 1.00 | |
| 10 MILES: | 5.00 | CHARLES FERRATO |
| ENDORSEMENTS: | .40 | CONNECTICUT STATE MARSHAL |
| TOTAL: | $ 36.40 | HARTFORD COUNTY |

# **Exhibit C**

Summons and Complaint

**SUMMONS**
**SUMMARY PROCESS (Eviction)**
JD-HM-32  Rev. 10-2000
C.G.S. Sec. 51-348  P.B. Sec. 8-1

**STATE OF CONNECTICUT**
**SUPERIOR COURT**

**NOTICE TO OCCUPANT(S) NOT NAMED ON THE SUMMONS**
If you claim to have a right to continue to occupy the premises you should promptly complete and file with the Clerk's Office a Claim of Exemption. The Claim of Exemption may be obtained from the Clerk at the address listed below.

**INSTRUCTIONS**
1. Prepare on typewriter; sign original summons (top sheet) and conform copies of the summons (sheets 2 and 3).
2. If there is more than one defendant, prepare or photocopy conformed summons for each additional defendant.
3. Attach the original summons to the original complaint, and attach a copy of the summons to each copy of the complaint. Also, if there are more than 2 plaintiffs or 4 defendants prepare form JD-CV-2 and attach it to the original and all copies of the complaint.
4. After service has been made by officer, file original papers and officer's return with the clerk of the court.

**TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.**

**RETURN DATE** *(Mo., day, yr.)(Any day but Sundays and legal holidays)*
September 8, 2010

| | AT *(Town in which writ is returnable)(C.G.S. 51-346, 51-349)* | |
|---|---|---|
| ☐ JUDICIAL DISTRICT | Hartford | **CASE TYPE** *(From Judicial Branch code list* |
| ☒ HOUSING SESSION  ☐ G.A. NO. | | Major  **P**    Minor  **90** |

**ADDRESS OF CLERK OF COURT WHERE WRIT AND OTHER PAPERS SHALL BE FILED** *(No., street, town and zip code)(Gen. Stat. 51-347, 51-350)*
80 Washington Street, Hartford, CT  06106

**TELEPHONE NUMBER**
860-756-7920

| | **NAME AND ADDRESS OF EACH PARTY**    *NOTE: Individuals' Names:* | |
|---|---|---|
| **PARTIES** | *(No., street, town and zip code)*    *Last, First, Middle Initial* | ☐ Form JD-CV-2 attached |
| **FIRST NAMED PLAINTIFF** | PJM Associates, LLC  62 LaSalle Road, West Hartford, CT  06107 | |
| **Additional Plaintiff** | | |
| **FIRST NAMED DEFENDANT** | The Rugged Bear Company  977 Farmington Avenue (east side of main level and east side of basement level), West Hartford, CT  06107 | |
| **Additional Defendant** | | |
| **Additional Defendant** | | |
| **Additional Defendant** | | |

**NOTICE TO EACH DEFENDANT**
1. You are being sued for possession of premises occupied by you.
2. This paper is a summons in a summary process action.
3. The complaint attached to these papers states the grounds for possession claimed by the plaintiff.
4. To respond to this summons, or to be informed of further proceedings, you or your attorney must file a form called an "Appearance" with the Clerk of the above named Court at the above address on or before the second day after the above Return Date.
5. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default giving the plaintiff the right to evict you from the premises.
6. The "Appearance" form may be obtained at the above Court address.
7. Each court location will also provide you with an instructions pamphlet explaining the summary process action and with an "Answer" form so that you may respond to the plaintiff's claims against you.
8. If you have questions about the Summons and Complaint, you should consult an attorney promptly. The Clerk of Court is not permitted to give advice on legal questions; however, in Housing Session locations only, the clerk is authorized to give procedural assistance to all pro se parties.

| DATE | SIGNED *(sign and "X" proper box)* | ☒ Commissioner of Superior Court | **TYPE IN NAME OF PERSON SIGNING AT LEFT** |
|---|---|---|---|
| 08/24/2010 | | ☐ Assistant Clerk | Attorney Victor A. Feigenbaum |

**FOR THE PLAINTIFF(S) ENTER THE APPEARANCE OF:**

| NAME AND ADDRESS OF ATTORNEY, LAW FIRM OR PLAINTIFF IF PRO SE | TELEPHONE NO. | JURIS NO. *(If atty. or law firm)* |
|---|---|---|
| Victor A. Feigenbaum, 26 North Main Street, West Hartford, CT  06107 | 860-313-0776 | 370489 |

| NAME AND ADDRESS OF PERSON RECOGIZED TO PROSECUTE IN THE AMT OF $250 *(Not to be completed by pro se plaintiffs)* | SIGNATURE OF PLAINTIFF IF PRO SE |
|---|---|
| see attached infra statement | |

| # PLFS | # DFS | # CNTS | SIGNED *(Office. taking recog.) "X" proper box)* | ☐ Comm. of Superior Court | **For Court Use** | |
|---|---|---|---|---|---|---|
| 1 | 1 | 1 | | ☐ Assistant Clerk | RECEIPT NO. | ☐ No  ☐ Fee |

**IF THIS SUMMONS IS SIGNED by a CLERK:**
a.  The signing has been done so that the Plaintiff(s) will not be denied access to the courts.
b.  It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law.
c.  The Clerk is not permitted to give any legal advice in connection with any lawsuit.
d.  The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service thereof.

| I hereby certify that I have read and understand the above: | SIGNED *(Pro se plaintiff)* | DATE SIGNED | DOCKET NO. |
|---|---|---|---|
| | | | |

**FILE DATE**

<div style="writing-mode: vertical">
Victor A. Feigenbaum  •  Attorney at Law  •  Juris No. 370489
26 North Main Street  •  West Hartford, CT 06107  •  Telephone (860) 313-0776  •  Facsimile (860) 313-4042
</div>

: RETURN DATE: SEPTEMBER 8, 2010

PJM ASSOCIATES, LLC      : SUPERIOR COURT – HOUSING
     : SESSION

VS      : J.D. HARTFORD

THE RUGGED BEAR COMPANY      : AT HARTFORD

     : AUGUST 24, 2010

## COMPLAINT

1. On or about January 1, 2001, the Plaintiff leased to The Rugged Bear, Inc. (hereinafter "Bear Inc."), by written lease through December 31, 2006, at an escalating monthly rental amount beginning at $5,833.33, payable in advance on the first day of each month during the term of said lease, the following premises to wit: 977 Farmington Avenue (approximately 7,000 square feet, consisting of the east side of main level and east side of basement level), West Hartford, Connecticut. A copy of the Lease is incorporated herein by reference and will be provided to appearing parties as Exhibit B to the Complaint in accordance with Connecticut Practice Book § 10-29.

2. On or about June 19, 2006, the Plaintiff and Bear Inc. entered into an Amendment of Lease in which the term of the lease was extended, by exercise of option, to December 31, 2012. A copy of the Amendment to Lease is incorporated herein by reference and will be provided to appearing parties as Exhibit C to the Complaint in accordance with Connecticut Practice Book § 10-29.

3. On or about January 13, 2010, Bear Inc., with the consent of the Plaintiff, assigned the Lease to the Defendant. A copy of the Modification and Amendment Agreement, which includes the heretofore referred assignment, is incorporated herein by reference and will be provided to appearing parties as <u>Exhibit D</u> to the Complaint in accordance with Connecticut Practice Book § 10-29.

4. The Defendant entered into possession of said premises under said Modification and Amendment Agreement and has ever since continued to hold possession thereof.

5. The Defendant failed to pay the monthly installments of rent of $11,859.00 due on June 1, 2010, July 1, 2010 and August 1, 2010.

6. The Defendant failed to pay its share of the property taxes, calculated at $8,281.70, as required as additional rent under Section 2.3 of said Lease, due on July 1, 2010.

7. On or about August 6, 2010, the Plaintiff gave due notice to the Defendant to quit possession of the premises on or before August 22, 2010, a copy of said notice being attached hereto.

8. Though more than three days have elapsed since said notice was given, and the time therein has expired, yet the Defendant neglects and refuses to quit possession of the premises.

VICTOR A. FEIGENBAUM • Attorney at Law • Juris No. 370489
26 North Main Street • West Hartford, CT 06107 • Telephone (860) 313-0776 • Facsimile (860) 313-4042

I hereby certify that I have personal knowledge of the Plaintiffs' Financial Responsibility and deem it sufficient to pay the costs of this action.

WHEREFORE, the Plaintiffs claim:

1. Immediate possession of the premises.

THE PLAINTIFF

BY _____

Victor A. Feigenbaum, Esq.

Its Attorney

VICTOR A. FEIGENBAUM • Attorney at Law • Juris No. 370489
26 North Main Street • West Hartford, CT 06107 • Telephone (860) 313-0776 • Facsimile (860) 313-4042

VICTOR A. FEIGENBAUM • Attorney at Law • Juris No. 370489
26 North Main Street • West Hartford, CT 06107 • Telephone (860) 313-0776 • Facsimile (860) 313-4042

## NOTICE TO QUIT POSSESSION

TO :  THE RUGGED BEAR COMPANY

      977 Farmington Avenue
      (Approximately 7,000 square feet, consisting of the east side of main level and east
        side of basement level)
      West Hartford, Connecticut

This is to give you notice that you are to quit possession of the premises known as:

977 Farmington Avenue (Approximately 7,000 square feet, consisting of the east side of
main level and east side of basement level), West Hartford, Connecticut

now occupied by you on or before the 22nd             day of August, 2010.

    This notice is given for the following reason:

      NONPAYMENT OF RENT WHEN DUE FOR COMMERCIAL PROPERTY.

    Notice is hereby given that effective this date any tender of money for rent shall be
accepted by the Landlord for Use and Occupancy only.

    Dated at West Hartford, Connecticut this 4h        day of August, 2010.

                                Victor A. Feigenbaum, Attorney for
                                PJM Associates, LLC

STATE OF CONNECTICUT:
                    : SS:  WEST HARTFORD        AUGUST 6, 2010
COUNTY OF HARTFORD  :

Then and by virtue hereof, and by direction of the Plaintiff's Attorney, I left a true and attested verified copy of the within original NOTICE TO QUIT POSSESSION at the usual place of business of the within named Tenant, THE RUGGED BEAR COMPANY at 977 Farmington Avenue, in the Town of West Hartford, County of Hartford.

Service was made on the Commercial Premises.

The within is the original NOTICE TO QUIT POSSESSION with my doings hereon endorsed.

| SERVICE: | $ 30.00 | ATTEST: |
|---|---|---|
| PAGES: | 1.00 | |
| 10 MILES: | 5.00 | CHARLES FERRATO |
| ENDORSEMENTS: | .40 | CONNECTICUT STATE MARSHAL |
| TOTAL: | $ 36.40 | HARTFORD COUNTY |

STATE OF CONNECTICUT:

               : SS:  HARTFORD         AUGUST 27, 2010

COUNTY OF HARTFORD  :

Then and by virtue hereof, and by direction of the Plaintiff's Attorney, pursuant to C.G.S.
Section 33-929c, I left two (2) true and attested verified copies of the within original WRIT,
SUMMONS, COMPLAINT and EXHIBIT at the office of Susan Bysiewicz, Secretary of State,
Statutory Agent for Service and duly authorized to accept service on behalf of the within named
Defendant, THE RUGGED BEAR COMPANY and paid statutory fees in the amount of $50.00,
in the Town of Hartford, County of Hartford.

And afterwards, on the 27th day of August, 2010, a true and attested verified copy of the within
original WRIT, SUMMONS, COMPLAINT and EXHIBIT was deposited in the U.S. Mail,
Wethersfield, Certified Mail and Return Receipt Requested, addressed to the within named
Defendant:

               THE RUGGED BEAR COMPANY
               100 HIGH STREET, SUITE 2800
               BOSTON, MA  02110

The within is the original WRIT, SUMMONS, COMPLAINT and EXHIBIT with my doings
hereon endorsed.

| | | |
|---|---|---|
| SERVICE: | $ 30.00 | ATTEST: |
| PAGES: | 18.00 | |
| PD. SEC. OF STATE: | 50.00 | |
| PD. POSTAGE: | 7.00 | |
| 10 MILES: | 5.00 | CHARLES FERRATO |
| ENDORSEMENTS: | 2.40 | CONNECTICUT STATE MARSHAL |
| TOTAL: | $112.40 | HARTFORD COUNTY |

# **Exhibit D**

# Judgment for Possession

STATE OF CONNECTICUT

# SUPERIOR COURT HOUSING SESSION
### OFFICE OF THE CLERK
*www.jud.ct.gov*

**NOTICE OF JUDGMENT**
**SUMMARY PROCESS (EVICTION)**
JD-HM-1 Rev. 7-00 VAF&RAG
C.G.S. §§ 47a-26h(b), 47a-35, 47a-36, 47a-37
P.A. 96-74



VICTOR A FEIGENBAUM
26 NORTH MAIN STREET
WEST HARTFORD, CT 06107

**NOTICE TO ALL OCCUPANT(S)
NOT NAMED IN JUDGMENT**
If you have not been named as a
party to this summary process action,
and claim to have a right to continue
to occupy the premises, you should
promptly complete and file with the
Clerk's Office a Claim of Exemption
from the Judgment. The Claim of
Exemption form may be obtained from
the Clerk at the address listed below.

| HOUSING SESSION<br>Hartford | DOCKET NO.<br>HDSP-157967 |
|---|---|
| ADDRESS OF COURT<br>80 Washington Street, Hartford, CT 06106 | COURT COSTS |
| NAME OF CASE<br>PJM Associates, LLC v The Rugged Bear Company (1st)<br>et al | DATE OF JUDGMENT<br>09/14/2010 |

ADDRESS OF PREMISES
977 Farmington Avenue, E.Side Main Level&ESide Basement, West Hartford,
CT 06107

## NOTICE TO DEFENDANT(S)/TENANT(S)

Court decision:

Motion for default for failure to appear is granted after finding def. not in military service or probably not in military service; Motion for judgment is granted v. The Rugged Bear Company (1st) for "Nonpayment of rent". S/Hon. Vernon D. Oliver, Judge

The Plaintiff (landlord) recovered judgment against you for immediate possession of the premises named in the complaint and occupied by you. You are therefore given the following notice:

### PLEASE READ COMPLETELY THE INFORMATION BELOW

You may be evicted from the premises named in the complaint and occupied by you after 5 days from the **Date of Judgment** shown above. (Any intervening Sunday or legal holiday is not included in counting the 5 day period.)

**You may be evicted from the premises named in the complaint and occupied by you after five (5) days from the Date of Judgment shown above. Any intervening Sunday or legal holiday is not included in the counting of the five (5) day period.**

**Jeffrey S. Hammer, Esq.**
CLERK

spdjudgment_1 ejudstfleri2hh&thtteept7t

# **Exhibit E**

Stipulation re: Stay of Execution and the related
Superior Court Notice

DOCKET NO: 157967                    : RETURN DATE: SEPTEMBER 8, 2010
PJM ASSOCIATES, LLC                  : SUPERIOR COURT –
                                     : HOUSING SESSION
VS.                                  : J.D. HARTFORD
                                     : AT HARTFORD
THE RUGGED BEAR COMPANY              : OCTOBER 1, 2010

## REQUEST FOR STAY OF EXECUTION

The parties to the above action move for a stay of the execution according to the accompanying stipulation executed by all parties.

THE PLAINTIFF,

BY _____
        Victor A. Feigenbaum
        Its Attorney

## ORDER

IT IS HEREBY ORDERED that a Request for Stay of Execution be granted.

BY THE COURT

**NO ORAL ARGUMENT
REQUESTED**

_____
Judge/Clerk

## CERTIFICATION

I hereby certify that a copy of the foregoing Request was mailed postage prepaid this 1st day of October, 2010 to all appearing parties and counsel: Law Offices of Robert R. Lewis, 555 Long Wharf Drive, New Haven, CT 06511.

_____
Victor A. Feigenbaum
Commissioner of the Superior Court

VICTOR A. FEIGENBAUM • Attorney at Law • Juris No. 370489
49 North Main Street • West Hartford, CT 06107 • Telephone (860) 313-0776 • Facsimile (860) 313-4042

DOCKET NO: 157967          : RETURN DATE: SEPTEMBER 8, 2010

PJM ASSOCIATES, LLC        : SUPERIOR COURT –

                                         : HOUSING SESSION

VS.                                       : J.D. HARTFORD

                                         : AT HARTFORD

THE RUGGED BEAR COMPANY     : October 1, 2010

## STIPULATION RE: STAY OF EXECUTION

The parties to the instant action agree that a stay of execution may issue through February 28, 2011, based on the following conditions:

The Defendant agrees that it owes an arrearage of $48,387.55 (the "Arrearage"), representing (i) past due rent (and late fees) / use and occupancy of $37,355.86, (ii) the Defendant's property tax obligations of $8,281.70, and (iii) attorney fees, marshal fees and an entry fee totaling $2,750.00. Defendant shall pay the Arrearage as follows: $5,641.00 on or by October 5, 2010, $10,000.00 each month on or by November 5, 2010, December 5, 2010, and January 5, 2011, and the balance of $12,746.54 on or by February 5, 2011.

In addition, the Defendant agrees to pay use and occupancy of $11,859.00 a month on or by the 5th of each month, beginning October 5, 2010 through February 5, 2011.
All of the above payments shall be made by cash, money order, or certified check only.
All payments shall be made to the Plaintiff Landlord in the usual manner. Time is of the essence as to all payments – the payment dates referred to above indicate the dates that the Plaintiff must receive the payments by.

If the above payments are made in full and on time by the Defendant, the parties agree that the Defendant shall be reinstated as a tenant in good standing on March 1, 2011, and, thereafter, Plaintiff shall promptly file a notice of compliance and stipulation that Defendant is a tenant in good standing with the court.

So agreed.

PLAINTIFF                               DEFENDANT

By: _____ Date: 10-4-20    By: _____ Date: 10-1-2(

Victor A. Feigenbaum, Esq. (#370489)       Robert R. Lewis, Esq. (#428488)

49 North Main Street                     Law Offices of Robert R. Lewis

West Hartford, CT 06107               555 Long Wharf Drive

Its Attorney                              New Haven, CT 06511

                                         Its Attorney

                                         Dean J. Pasalis, Esq.

                                         The Feinberg Law Group, LLC

                                         57 River Street, Ste. 204

                                         Wellesley, MA 02481

                                         Of Counsel