**Exhibit C**

BID PROCEDURES

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

------------------------------x
:
**In re** :
: **Chapter 11**
**THE RUGGED BEAR COMPANY,** :
**f/d/b/a RB ACQUISITION CORP.,** : **Case No. 11-10577-HJB**
:
      **Debtor** :
:
:
------------------------------x

## BID PROCEDURES

The following bid procedures (the "Bid Procedures") have been approved and authorized by the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court") in the above-captioned chapter 11 case of The Rugged Bear Company f/d/b/a RB Acquisition Corp. (the "Debtor") in connection with the Debtor's sale of substantially all of its assets free and clear of any and all liens, claims, encumbrances, and interests and shall govern the auction (the "Auction") to be conducted by the Court to solicit (i) higher and better offers by any party interested in such assets (a "Counterbidder") with respect to the Agency Agreement (the "Agency Agreement") between the Debtor and Gordon Brothers Retail Partners, LLC (the "Agent") dated February 11, 2011 to conduct inventory liquidation sales ("Inventory Sales") at the Debtor's retail store locations (collectively, the "Stores") and (ii) offers to purchase by any party (a "Bidder") with respect to the Debtor's intellectual property and such other assets as may be designated by the Bidder (collectively, the "Intellectual Property") pursuant to an asset purchase agreement submitted in accordance with these Bid Procedures (an "APA").

The terms and conditions of these Bid Procedures shall apply to the solicitation of higher and better offers and to the conduct of the Auction for both the Inventory Sales and the sale of Intellectual Property (the "IP Sale") unless otherwise noted herein. The Inventory Sales and IP Sale are, at times, referred to herein as together as the "Sale."

    (a)    **Diligence by Prospective Counterbidders.** The Debtor shall: (i) give notice of the Sale to prospective Bidders and Counterbidders; (ii) receive and consider offers to enter into the Agency Agreement or APA; (iii) provide information to any such prospective Bidder or Counterbidder; and (iv) allow any such prospective Bidder or Counterbidder to conduct reasonable due diligence in connection with the consideration of a potential bid to enter into the Agency Agreement or APA; provided, however, that any such prospective Bidder or Counterbidder desiring to

conduct due diligence shall: (1) demonstrate the financial ability, as determined by the Debtor in its reasonable discretion in consultation with its professionals, to execute the Agency Agreement or similar agency agreement or APA, to the satisfaction of the Debtor; and (2) execute a confidentiality agreement in a form acceptable to the Debtor in its sole discretion, which shall be not less onerous than or materially different from the confidentiality agreement executed by the Agent.

(b) **Submission of Counteroffers and Bids**. Any counteroffer (a "Counteroffer") for the Inventory Sales or any bid to purchase the Intellectual Property in the IP Sale (a "Bid") shall comply with all of the following requirements:

   (i) be filed with the Clerk of Court, United States Bankruptcy Court, 300 State Street, Springfield, MA 01105 and be served on (1) counsel for the Debtor, K&L Gates, LLP, State Street Financial Center, One Lincoln Street, Boston, Massachusetts 02111, Attn: Charles A. Dale III, Esq. and Mackenzie L. Shea, Esq., (2) the Office of the United States Trustee, John W. McCormack Post Office and Court House, 5 Post Office Square, Suite 1000, Boston, MA 02109, Attn: Jennifer Hertz, Esq., (3) counsel for TD Bank, Goodwin Procter LLP, Exchange Place, 53 State Street, Boston, Massachusetts, 02109-2881, Attn: Michael J. Pappone, Esq., (4) counsel for the Committee, Jager Smith, One Financial Center, Boston, Massachusetts, 02111, Attn: Steven Reingold, Esq.; and (5) counsel to Gordon Brothers, Goulston &Storrs, P.C. 400 Atlantic Avenue, Boston, Massachusetts, 02110, Attn: James Wallack, Esq so that such Counteroffer or Bid is actually received **no later than ____ on _____, 2011** (the "Bid Deadline");

   (ii) include: (a) an executed Agency Agreement in substantially the same form executed with the Agent and a redline comparison marked to show any and all deviations from the Agency Agreement; or (b) an APA for the purchase of the Intellectual Property (and other assets, if applicable), which is acceptable to the Debtor in its sole discretion.

   (iii) be accompanied by: (a) financial statements or evidence satisfactory to the Debtor that the Bidder or Counterbidder is willing, authorized, capable and qualified, financially, legally and otherwise, of unconditionally performing all obligations under the Agency Agreement or APA; and (b) evidence that it is duly authorized and entitled to engage in the transaction contemplated by the Bid or Counteroffer without the consent of any entity that has not been obtained.

- 9 -

    (iv)    be accompanied by a deposit (the "Deposit") equal to ten percent (10%) of the proposed purchase price for the IP Sale, and be in the form of a wire transfer or cashier's check payable to the Debtor and to be held in an escrow account by the Debtor's counsel pending completion of the Auction, unless as set forth herein, the Bidder or Counterbidder is determined to be the Successful Bidder or the Back-Up Bidder (each as defined below); and

    (v)    be accompanied by evidence, satisfactory to the Debtor, in its sole discretion, of the Bidder or Counterbidder's good faith, within the meaning of section 363(m) of the Bankruptcy Code.

(c)    **Minimum Overbid Requirement for Inventory Sales**. Any Counteroffer with respect to the Inventory Sales shall offer a Guaranteed Percentage (as defined in the Agency Agreement) of not less than 60.0%.

(d)    **No Minimum Bid Requirement for IP Sale**. Bids with respect to the IP Sale shall not be subject to a minimum bid amount.

(e)    **Participation in Both Inventory Sales and IP Sale** The Agent and any Bidder or Counterbidder shall be entitled to submit a combined Counteroffer/Bid ("Global Bid") for the assets that are the subject of the Inventory Sales and IP Sale and may participate in the Auction with respect to both, provided that such Global Bid allocates the proposed purchase price between the Inventory Sales assets and the Intellectual Property assets.

(f)    **Assumption and Assignment of Leases and/or Executory Contracts.** If any bid contemplates the assumption and assignment of any Store Lease or other executory contract of the Debtor, the bidder must furnish the Debtor financial and other information with which the Debtor can establish "adequate assurance" as required by the Bankruptcy Code.

(g)    **No Timely or Conforming Counteroffers for Inventory Sales**. If no timely, conforming Counteroffers are submitted for the Inventory Sales, the Debtor shall request at the Sale Hearing that the Court approve the sale to the Agent pursuant to the terms and conditions of the Agency Agreement.

(h)    **No Timely or Conforming Bids for IP Sale**. If no timely, conforming Bids are submitted for the IP Sale that are acceptable to the Debtor in its sole discretion, the Debtor shall withdraw its request to sell such assets.

(i)    **Auction Procedures**. In the event that one or more timely, conforming Counteroffers or Bids are submitted, and each party who has submitted such a timely, conforming Counteroffer or Bid (including the Agent) shall be referred to herein as a "Qualified Bidder", the Debtor shall conduct the Auction immediately prior to the Sale Hearing, in which the Agent and all

Qualified Bidders may participate. The Auction shall be governed by the following procedures:

(i) all Qualified Bidders shall be deemed to have consented to the core jurisdiction of (and venue in) the Bankruptcy Court and to have waived any right to jury trial in connection with any disputes relating to the Auction;

(ii) bidding will commence (A) with respect to the Inventory Sales, at an amount equal to 0.25% higher than the Guaranteed Amount in the highest and best Counteroffer submitted by a Qualified Bidder, (B) with respect to the IP Sale, at an amount equal to at least $25,000 higher than the highest proposed purchase price submitted in a Bid by a Qualified Bidder for the Intellectual Property, and (C) with respect to a Global Bid, in an amount to be determined by the Debtor (each, the "Beginning Auction Bid");

(iii) each subsequent bid by a Qualified Bidder shall be in increments of at least (A) with respect to the Inventory Sales, at least 0.25% above than the Guaranteed Amount proposed in the Beginning Auction Bid, (B) with respect to the IP Sale, at least $25,000 above the proposed purchase price in the Beginning Auction Bid, and (C) with respect to the Global Bid, an amount greater than the Beginning Auction Bid by at least $25,000;

(iv) Notwithstanding any contrary provision hereof, the Debtor may at any time prior to or during the Auction request sealed bids from the Qualified Bidders;

(v) Agent shall not be permitted to credit its bid by the amount of the Breakup Fee;

(vi) the Debtor shall make the ultimate determination of which Counteroffer or Bid, including a Global Bid, for the assets which are the subject of the Inventory Sales and IP Sale represents the highest and best bid for the Debtor's assets. The entity (or entities should the Inventory Sales assets and IP Sale assets be sold separately) making such bid being hereinafter known as the "Successful Bidder").

(j) **Breakup Fee**. In the event that the Bankruptcy Court enters an order approving the Inventory Sales to a Successful Bidder(s) other than the Agent (including as part of a Global Bid), and the Debtor consummates such transaction, then the Debtor shall promptly, without further Bankruptcy Court notice, action or order, pay to the Agent the Breakup Fee of $35,000.00

- 11 -

(k) **Back-Up Bidder**. Upon the conclusion of the Auction, the Debtor shall have the right (but not the obligation) to select a bidder other than the Successful Bidder(s) and to designate such bidder(s) the "Back-Up Bidder." If, for any reason, the Successful Bidder(s) are unable or unwilling to timely perform its obligations under the Successful Bidder's definitive Agency Agreement or APA, the Debtor, in the exercise of its business judgment and in its sole discretion, may enter into the Agency Agreement or APA with the Back-Up Bidder(s) without further notice or a hearing, and the Back-Up Bidder shall be bound by the last bid (including any sealed bid) it made during the Auction.

(l) **Disposition of Deposits**. The deposits submitted by any Bidder or Counterbidders shall be refunded to each unsuccessful Bidder or Counterbidder other than the Back-Up Bidder(s), if any, upon entry of an order approving the Agency Agreement or APA to the Successful Bidder(s). The deposit of the Successful Bidder(s) and the Back-Up Bidder(s) shall be retained by the Debtor as earnest money to be used in the following ways: (1) the deposit of the Successful Bidder(s) shall either be (a) applied at closing as a credit toward the Guaranteed Percentage or purchase price the Successful Bidder(s) have agreed to pay, (b) if the Agency Agreement or APA agreed to by the Successful Bidder(s) shall fail to timely close by reason of a breach or default of the Successful Bidder(s), the deposit shall be retained by the Debtor, or (c) in the event that the Agency Agreement or APA agreed to by the Successful Bidder(s) shall fail to timely close by reason of a breach or default of the Debtor, the deposit shall be returned to the Successful Bidder(s); and (2) the deposit of the Back-Up Bidder(s) shall either be (a) returned to the Back-Up Bidder(s) upon the closing of the transaction with the Successful Bidder(s); or (b) if the sale to the Successful Bidder(s) shall fail to close for any reason applied at closing as a credit toward the Guaranteed Percentage or purchase price the Back-Up Bidder(s) have agreed to pay. Any deposit retained by the Debtor on account of a default by a Successful Bidder or Back-Up Bidder shall be without prejudice to any other right, claim or remedy the Debtor may have against such party.

(m) **Consultation with the Committee.** Anything in the Bid Procedures Order or these Bid Procedures to the contrary notwithstanding, any decision to be made by the Debtor hereunder shall be done in consultation with the Committee.

Dated: Boston, Massachusetts
      February ___, 2011

Respectfully submitted,

THE RUGGED BEAR COMPANY,
f/d/b/a RB ACQUISITION CORP.

By its proposed counsel,

/s/ _____
Charles A. Dale III (BBO No. 558839)
Mackenzie L. Shea (BBO No. 666241)
K&L Gates LLP
State Street Financial Center
One Lincoln Street
Boston, Massachusetts 02111
Tel: (617) 261-3100
Fax: (617) 261-3175

E-mail:
    chad.dale@klgates.com
    mackenzie.shea@klgates.com