**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                      :
In re                                                 :    Chapter 11
                                                      :
**THE RUGGED BEAR COMPANY,**                          :    Case No. 11-10577-HJB
**f/d/b/a RB ACQUISITION CORP.,**                     :
                                                      :
                        Debtor.                       :
                                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x


**SECOND INTERIM ORDER (A) AUTHORIZING USE OF**
**CASH COLLATERAL; (B) GRANTING ADEQUATE**
**PROTECTION AND (C) GRANTING RELATED RELIEF**

---

**This Cash Collateral Order contains certain terms and conditions that vary from Massachusetts Local Bankruptcy Rule 4001-2(c), including:**

    (i)    **Concessions regarding prepetition liens and debt regarding the validity, perfection, priority, enforceability and amount;**

    (ii)    **Releases and waivers of claims by the Debtor;**

    (iii)    **Restrictions upon rights under Bankruptcy Code § 506(c);**

    (iv)    **Provisions that provide for the Debtor's use of cash collateral to cease upon the occurrence of certain events; and**

    (v)    **Terms upon which relief from the automatic stay will be granted.**

---

This matter having come before the Court on the *Motion of the Debtor for an Order Pursuant to Sections 105, 361, 362, and 363 of the Bankruptcy Code (A) Authorizing Use of Cash Collateral; (B) Granting Adequate Protection; (C) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001; and (D) Granting Related Relief* (the "**Motion**") filed by The Rugged

Bear Company f/d/b/a RB Acquisition Corp. (the "*Debtor*") on January 27, 2011 [**Docket No. 15**]; and it appearing from the record before the Court that sufficient cause exists for the entry of this order; the Court

### FINDS AS FOLLOWS:[1]

A.    On January 25, 2011 (the "*Petition Date*"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*") in the United States Bankruptcy Court for the District of Massachusetts (the "*Court*").

B.    The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

C.    On January 28, 2011, the Court held an emergency hearing on the Motion, at which time it entered an interim order authorizing the Debtor's use of Cash Collateral (as defined below) through the date of the continued hearing with respect thereto [Dkt. No. 32].

D.    On February 4, 2011, the Office of the United States Trustee (the "*UST*") appointed an Official Committee of Unsecured Creditors (the "*Committee*").  On February 7, 2011, the UST amended the appointment of the Committee.

E.    On February 11, 2011, the Debtor filed its *Motion of the Debtor for an Order (I) Authorizing the Sale of Substantially all of its Assets Free and Clear of Any and All Liens, Claims, Encumbrances, and Interests; (II) Approving Form of Agency Agreement; (III) Approving Bid Procedures and Breakup Fee; (IV) Scheduling an Auction and Sale Hearing; (V) Approving Form and Manner of Notice; (VI) Shortening Notice Pursuant to Rule 9006 of the Federal Rules of Bankruptcy Procedure; and (VII) Granting Related Relief and Request for Scheduling of Emergency Hearing on Bid Procedures Order* [Dkt. No. 93] (the "*Sale Motion*"),

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

wherein the Debtor requested, among other things, approval of the bid procedures (the "*Bid Procedures*") and authorization to conduct Inventory Sales (as defined in the Sale Motion).

F.     TD Bank, N.A. ("*TD Bank*") has asserted a lien against the Prepetition Collateral (as defined below) and the cash proceeds thereof (the "*Cash Collateral*").

G.     <u>Notice</u>. Due and adequate notice of the hearing has been given, and no further notice of the hearing is required before the entry of the relief provided for in this Second Interim Order (hereinafter, the "*Interim Order*").

H.     <u>Jurisdiction and Venue</u>. The Court has jurisdiction of this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. The Motion is a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (D) and (M). Venue of this case and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**NOW THEREFORE, IT IS HEREBY FOUND, DETERMINED, ORDERED AND ADJUDGED THAT:**

1.     The Motion is granted on a further interim basis, as set forth herein.

2.     <u>**Debtor Acknowledgments and Agreements.**</u> **Without prejudice to the rights of the Committee and other parties-in-interest as are set forth in Paragraph 18, and subject in all respects to such rights, the Debtor admits, stipulates, acknowledges and agrees that:**

(a)     *Prepetition Loan Agreements.* **Prior to the commencement of these cases, the Debtor entered into, *inter alia*, the following agreements with TD Bank (or its predecessors in interest):**

(i)     **Promissory Note, dated January 26, 2010, issued by RB Acquisition Corp. (now known as The Rugged Bear Company) and payable to TD Bank (as amended, the "*Note*");**

3

(ii)    **Continuing General Security Agreement**, dated January 26, 2010, by and between RB Acquisition Corp. (now known as The Rugged Bear Company) and TD Bank (as amended, the "*Security Agreement*"); and

(iii)    **Line of Credit Agreement**, dated January 26, 2010, by and between TD Bank, as lender, and RB Acquisition Corp. (now known as The Rugged Bear Company), as borrower (as amended, the "*Credit Agreement*," and together with the Note, the Security Agreement and all other documents and agreements evidencing the Debtor's obligations to TD Bank, the "*Prepetition Loan Agreements*").

(b)    *Prepetition Obligations Amount.* As of the Petition Date, the aggregate amount of all obligations owing by the Debtor to TD Bank under and in connection with the Prepetition Loan Agreements was $4,278,495.98, plus interest accrued and accruing thereon, together with all costs, fees, expenses (including attorneys' fees and legal expenses) and other charges accrued, accruing or chargeable with respect thereto (collectively, the "*Prepetition Obligations*"). The Prepetition Obligations constitute legal, valid, binding, enforceable and non-avoidable obligations of the Debtor pursuant to the terms thereof, are not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, and the Debtor does not possess and shall not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Prepetition Obligations.

(c)    *Prepetition Collateral.* As of the Petition Date, the Prepetition Obligations were secured by valid, perfected, enforceable and non-avoidable first priority

security interests and liens granted by the Debtor to TD Bank upon all of the Debtor's pre-

petition property (the "*Prepetition Collateral*"), subject only to the liens specifically listed or

permitted under the Prepetition Loan Agreements to the extent that such security interests,

liens or encumbrances are valid, perfected and non-avoidable security interests, liens or

encumbrances existing as of the Petition Date (hereinafter referred to as the "*Permitted

Encumbrances*"). The Debtor will not assert any claim, counterclaim, setoff or defense of

any kind, nature or description which would in any way affect the validity, enforceability

and non-avoidability of any liens, claims or security interests of TD Bank in the Prepetition

Collateral.

      (d)    *Proof of Claim.*  The acknowledgment by the Debtor of the Prepetition

Obligations and the liens, rights, priorities and protections granted to or in favor of TD

Bank as set forth herein and in the Prepetition Loan Agreements shall be deemed a timely

filed proof of claim on behalf of TD Bank in this case; *provided, however,* that,

notwithstanding the foregoing, TD Bank may elect, in its sole discretion, to file a proof of

claim in this case.

    3.    <u>Findings Regarding the Use of Cash Collateral.</u>

      (a)    *Postpetition Financing.*  The Debtor has requested from TD Bank, and TD

Bank is willing to consent to the Debtor's further use of Cash Collateral and other financial

accommodations on the terms and conditions set forth in this Interim Order.  TD Bank has

indicated that it would object to the further use of Cash Collateral, except on the terms of the

Interim Order.  TD Bank is entitled, under Bankruptcy Code § 363(e), to adequate protection of

its interests in the Prepetition Collateral to the extent of any actual and demonstrated diminution

in the value thereof, including (i) the use of Cash Collateral and (ii) the use, sale, lease,

depreciation or other diminution in value of the Prepetition Collateral other than the Cash Collateral.

(b)    *Need for Use of Cash Collateral and Related Financial Accommodations.* The Debtor does not have sufficient available sources of working capital, including cash collateral, to complete the liquidation of its assets and to maximize value for its estate and all parties-in-interest without the relief requested under the Motion. Accordingly, the Debtor has an immediate need for the use of Cash Collateral to, among other things, permit the orderly and efficient preservation and maximization of the value of the assets of the Debtor's bankruptcy estate (as defined under Section 541 of the Bankruptcy Code, the "*Estate*") in order to maximize the recovery for all creditors of the Estate.

(c)    *Budget.* The Debtor, in consultation with TD Bank, has prepared and delivered to TD Bank a budget (the "*Budget*"), which is annexed hereto as Exhibit A. Such Budget has been thoroughly reviewed by the Debtor and its management and sets forth, among other things, the projected disbursements for the periods covered thereby. The Debtor represents in its good faith determination that the Budget is achievable in accordance with the terms of this Interim Order and will allow the Debtor to operate at all times during this case without the accrual of unpaid administrative expenses.

(d)    *Business Judgment and Good Faith.* The terms of this Interim Order are fair, just and reasonable under the circumstances and reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The terms and conditions of this Interim Order have been negotiated in good faith and at arms' length by and among the Debtor, on one hand, and TD Bank, on the other hand, with all parties being represented by counsel. Any credit extended

under the terms of this Interim Order through the use of the Cash Collateral shall be deemed to

have been extended in good faith by TD Bank.

(e) *Good Cause.* The relief requested in the Motion is necessary, essential

and appropriate, and is in the best interest of and will benefit the Debtor, its creditors and its

Estate, as its implementation will, among other things, provide the Debtor with the necessary

liquidity to (i) minimize disruption to the Debtor's continuing efforts to liquidate its assets, (ii)

preserve and maximize the value of the Estate for the benefit of all the Debtor's creditors, and

(iii) avoid immediate and irreparable harm to the Debtor, its creditors and its assets.

(f) *Immediate Entry.* Sufficient cause exists for immediate entry of this

Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and Local Rule 4001-2.  No party

appearing in the case has filed or made an objection to the relief sought in the Motion or the

entry of this Interim Order, or any objections that were made (to the extent such objections have

not been withdrawn) hereby are overruled.

4.   Authorization to Use Cash Collateral.  Subject to compliance with the Budget and

the terms and conditions hereof, the Debtor hereby is authorized and empowered to immediately

use the Cash Collateral during the period commencing on the date of this Interim Order through

the earlier of (i) the occurrence of an Event of Default (as defined in paragraph 14) or (ii) the

final hearing on the Motion (the "***Financing Period***"), in such amounts as set forth in the

Budget.

5.   The Debtor shall use Cash Collateral during the Financing Period, at the times, in

the amounts, and for the purposes identified in the Budget (as such may be amended with the

consent of TD Bank or approval of the Court); *provided, however,* that the Debtor shall be

authorized to exceed the revenues and expenses in the Budget by no more than (i) ten percent

(10%) on an aggregate basis per week and (ii) twenty percent (20%) on a line item basis

measured over a four (4) week rolling period (the "*Permitted Variance*"), and to apply any

unused portion in one week to any subsequent weekly period; *provided further* that any such

unused portion (except in respect of professional fees and any other accrued but unpaid

administrative expenses entitled to priority under Section 503(b) of the Bankruptcy Code) may

not be applied more than four (4) weeks after the budget period in which it accrued.  Provided

that no Event of Default (as defined in paragraph 14) has occurred and subject to paragraph 11

below, the Debtor shall be, and is, hereby, authorized to pay, as and when the same become due

and payable, administrative expenses of the kind specified in Section 503(b) of the Bankruptcy

Code incurred in the ordinary course of the Debtor's business or as otherwise approved by this

Court after notice and hearing.

      6.    <u>Adequate Protection</u>.  Under Bankruptcy Code § 363(e), TD Bank is entitled to

adequate protection of its interest in the Prepetition Collateral, including the Cash Collateral, for

and equal in amount to the actual and demonstrated diminution in the value of the Prepetition

Collateral, including any such diminution resulting from (i) the use of the Cash Collateral under

Bankruptcy Code § 363(c), including without limitation for the funding or payment of any

Carve-Out, and (ii) the sale, lease or use by the Debtor (or other decline in value) of the

Prepetition Collateral (the amount of any such diminution under subparagraph (i) or (ii) being

referred to hereinafter as the "*Adequate Protection Obligations*").  As adequate protection for

the Adequate Protection Obligations, the Debtor hereby grants to TD Bank the following:

      (a)    **_Adequate Protection Liens._  Subject to paragraph 18 below, TD Bank

is hereby granted (effective and perfected as of the Petition Date and without the necessity

of the execution or filing by the Debtor or TD Bank of any mortgage, financing statement**

or other security or collateral agreement) a valid, binding, enforceable and perfected first priority replacement security interest in, and lien on (the "*Adequate Protection Liens*"), all of the rights, title and interests of the Debtor in, to and under (1) all of the same types of property that secured the Prepetition Obligations (including any after-acquired property of the same type), and the proceeds of all of the foregoing, whether now existing or hereafter acquired, but only to the extent, and in the same order of priority, of any such security interest or lien as of the Petition Date, and (2) all other property of the Estate, including without limitation, all cash and cash collateral of the Debtor (whether maintained with TD Bank or other financial institution) and any investment of such cash and cash collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, causes of action, contracts, properties, plants, equipment, general intangibles, documents, instruments, investment property, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names or other intellectual property, capital stock of subsidiaries (if any) and the proceeds thereof, whether now existing or hereafter acquired (the property covered by (1) and (2) are referred to collectively as the "*Postpetition Collateral*," and, together with the Prepetition Collateral, the "*Collateral*"). Notwithstanding the foregoing, the Postpetition Collateral shall not include the Debtor's powers, claims, defenses, rights, and causes of action under Bankruptcy Code §§ 502(d), 506(c), 544, 545, 547, 548, 549, 550, 552 and 553 (the "*Avoidance Actions*"). Subject to paragraphs 11 and 18 below and subject and subordinate to the Carve-Out, the Adequate Protection Liens granted hereunder to TD Bank on account of the Adequate Protection Obligations shall be (x) a first priority perfected lien on all of the Postpetition Collateral that is not otherwise encumbered by a validly perfected, non-avoidable security interest or

lien as of the Petition Date, (y) a first priority, senior and perfected lien on (1) that portion of the Postpetition Collateral that comprises the Prepetition Collateral and is not subject to a validly perfected lien or security interest with priority over TD Bank's liens on the Prepetition Collateral as of the Petition Date and (2) Postpetition Collateral subject to a lien that is junior to the liens securing the Prepetition Obligations, and (z) a second priority, junior perfected lien on all Postpetition Collateral that is subject to a validly perfected lien with priority over TD Bank's liens (if any) as of the Petition Date;

(b)    *Superpriority Claims.* TD Bank shall have, on account of the Adequate Protection Obligations and subject only to the payment of the Carve-Out, a superpriority claim as provided for in Bankruptcy Code § 507(b) (the *"Superpriority Claims"*) that shall not have recourse to, or be in any way payable from, any Avoidance Actions or any proceeds thereof, with priority in payment over any and all administrative expenses of the kinds specified or order under any provision of the Bankruptcy Code, including Bankruptcy Code §§ 105, 326, 328, 330, 331, 503, 506(c), 507(a), 726, 1113 or 1114, and shall at all times be senior to the rights of the Debtor, any Chapter 11 trustee or any creditor, in this case, or, to the extent permitted by applicable law, any trustee appointed if this case is converted to a case under Chapter 7 of the Bankruptcy Code. Subject only to the Carve-Out and paragraph 11, no cost or expense of administration under Bankruptcy Code §§ 105, 503(b), 507(b) or otherwise, including any such cost or expense resulting from the conversion of this case under Bankruptcy Code § 1112, shall be senior to, or *pari passu* with, the Superpriority Claims;

(c)    Adequate Protection Payments. Except as may be provided by any order approving the Sale Motion, on or before May 30, 2011, the Debtor shall pay to TD Bank an

amount equal to: (1) all existing cash on hand, including all cash proceeds generated by the sale of the Collateral; less (2) all amounts necessary to fund all unpaid costs and expenses reflected in the Budget and all costs and expenses covered by the Carve-Out. Such payment shall be applied in reduction of the Prepetition Obligations.

7.    Lien Priority.  Subject to paragraph 18 below, the pre-petition and post-petition liens and security interests of TD Bank granted under the Prepetition Loan Agreements and this Interim Order in the Collateral shall be and shall continue to be first and senior in priority to all other interests and liens of every kind, nature and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or interests granted in favor of third parties in conjunction with Section 363, 364 or any other Section of the Bankruptcy Code or other applicable law, **but only to the extent, and in the same order of priority, of any such security interest or lien as of the Petition Date**; *provided, however*, that the liens and security interests of TD Bank in the Collateral shall be subject and subordinate only to (i) the Permitted Encumbrances, and (ii) the Carve Out (as defined below)(the "***Permitted Liens and Claims***").

8.    Post-Petition Lien Perfection.  This Interim Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the post-petition liens and security interests granted herein, without any further act and without regard to any other federal, state or local requirements or law requiring notice, filing, registration, recording or possession of the Collateral, or other act to validate or perfect such security interest or lien, including without limitation, control agreements with any financial institution(s) holding a blocked account or other depository account consisting of Collateral (a "***Perfection Act***").  Notwithstanding the foregoing, if TD Bank shall, in its sole discretion, elect for any reason to file, record or otherwise

11

effectuate any Perfection Act, TD Bank is authorized to perform such act, and the Debtor is

authorized and directed to perform such act to the extent necessary or required by TD Bank,

which act or acts shall be deemed to have been accomplished as of the date and time of entry of

this Interim Order notwithstanding the date and time actually accomplished, and in such event,

the subject filing or recording office is authorized to accept, file or record any document in

regard to such act in accordance with applicable law. TD Bank may choose to file, record or

present a certified copy of this Interim Order in the same manner as a Perfection Act, which shall

be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is

authorized to accept, file or record such certified copy of this Interim Order in accordance with

applicable law. Should TD Bank so choose and attempt to file, record or perform a Perfection

Act, no defect or failure in connection with such attempt shall in any way limit, waive or alter the

validity, enforceability, attachment, or perfection of the post-petition liens and security interests

granted herein by virtue of the entry of this Interim Order. **For the avoidance of doubt, the

automatic stay provisions of Bankruptcy Code § 362 hereby are vacated and modified to

permit (i) the Debtor and TD Bank to undertake and perform all acts and take all actions

necessary to implement this Interim Order and (ii) the Debtor to create, and TD Bank to

perfect, any and all liens, mortgages and security interests granted hereunder.**

     9.    [Reserved]

10.    <u>Carve Out Costs</u>.  Upon a Termination Declaration, the liens and security interests of TD Bank in the Collateral, the Adequate Protection Liens, and the Superpriority Claim shall be subject and subordinate only to the right of payment of the following expenses (the "***Carve Out***"):

(a)    statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6);

(b)    fees payable to the Clerk of this Court; and

(c)    subject to the terms and conditions of this Interim Order, the unpaid and outstanding reasonable fees and expenses incurred on or after the Petition Date, and approved by a final order of the Court pursuant to Sections 326, 328, 330, or 331 of the Bankruptcy Code (collectively, the "***Allowed Professional Fees***"), by attorneys, accountants and other professionals: (1) retained by the Debtor (collectively the "***Debtor Professionals***") in a cumulative, aggregate sum not to exceed $370,000, excluding pre-petition retainers paid to K&L Gates and Consensus Advisors; (2) retained by the Committee (collectively, the "***Committee Professionals***") in a cumulative, aggregate sum not to exceed $60,000; and (3) retained by any chapter 7 trustee subsequently appointed in this case (collectively, the "***Trustee Professionals***") in a cumulative, aggregate sum not to exceed $25,000.

11.    <u>Payment of the Carve Out and Other Administrative Expenses</u>.

(a)    Prior to the occurrence of an Event of Default, Debtor shall be permitted to pay allowed professional fees in accordance with the Budget and any such amounts paid prior to the occurrence of an Event of Default shall not reduce the Carve-Out.  Following an Event of Default, and notwithstanding the Debtor's receipt of a Termination Declaration (as defined in paragraph 15 below) from TD Bank, the Debtor shall be permitted to pay the Carve Out and any

unpaid administrative expenses incurred prior to the Termination Date, provided that such

unpaid administrative expenses were provided for in the Budget.

(b)    TD Bank's obligation to fund or otherwise pay the Carve Out shall be

added to and made a part of the Obligations, secured by the Collateral, and entitle TD Bank to all

of the rights, claims, liens, priorities and protections under this Interim Order, the Prepetition

Loan Agreements, the Bankruptcy Code or applicable law.  Except as otherwise provided herein

with respect to the Carve Out, TD Bank shall not, under any circumstance, be responsible for the

direct payment or reimbursement of any fees or disbursements of any professionals incurred in

connection with the Case under any chapter of the Bankruptcy Code or to ensure that the Debtor

has sufficient funds to pay such compensation.

12.    **Restrictions Upon Section 506(c) Claims.  Except for the costs and expense**

**reflected by the Budget and amounts covered by the Carve Out and as provided for in**

**paragraph 11, no costs or expenses of administration which have or may be incurred in the**

**case at any time during the case, including following the conversion of this case to a case**

**under chapter 7 of the Bankruptcy Code or any other proceedings under the Bankruptcy**

**Code, shall be charged against TD Bank, its respective claims or the Collateral pursuant to**

**Section 506(c) of the Bankruptcy Code without either (a) the prior written consent of**

**TD Bank, and no such consent shall be implied from any other action, inaction or**

**acquiescence by TD Bank; or (b) an order of the Court.**

13.    Limitation On Use of Cash Collateral.  Notwithstanding anything herein or in any

other order by this Court to the contrary, no Prepetition Collateral, Cash Collateral, Collateral or

the Carve-Out may be used to (a) object, contest or raise any defense to, the validity, perfection,

priority, extent or enforceability of any amount due under this Interim Order, the Prepetition

14

Loan Agreements, or the liens or claims granted under this Interim Order or the Prepetition Loan Documents, (b) assert any claims and defenses or causes of action against TD Bank or its respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (c) seek to modify any of the rights granted to TD Bank hereunder or under the Prepetition Loan Agreements, (d) prevent, hinder or otherwise delay TD Bank's assertion, enforcement or realization on the Collateral in accordance with the Prepetition Loan Agreements or this Interim Order, or (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an Order of this Court, (ii) in accordance with the Budget, or (iii) consented to by TD Bank.

14.    **Termination of Use of Cash Collateral.** **The occurrence of any of the following events, (unless waived in writing by TD Bank), shall constitute an event of default under this Interim Order, beyond any applicable grace period set forth below, (each such event, an "Event of Default"):**

(a)    **The Debtor shall fail to:**

(i)    **obtain entry of an order approving the Bid Procedures related to the Sale Motion on or before February 18, 2011;**

(ii)    **obtain an order authorizing and approving the Sale Motion on or before March 3, 2011;**

(iii)    **provided that the Agent (as defined in the Sale Motion) is the winning bidder at the auction for the Debtor's assets (the "*Auction*"), promptly remit to TD Bank the Initial Guaranty Payment (as defined in the Agency Agreement) for application to the Prepetition Obligations;**

15

(iv)    if the Agent is not the winning bidder at the Auction, promptly remit to TD Bank after receipt any sums paid to the Debtor from such winning bidder on account of the Collateral;

(b)    Provided that the Agent is the winning bidder at the Auction, the Inventory Sales contemplated by the Sale Motion shall not have commenced by March 4, 2011;

(c)    If the Agent is not the winning bidder at the Auction, the Debtor shall have failed to select a higher and better offer at the Auction and consummate any such related transaction for the Debtor's assets by March 4, 2011;

(d)    The Inventory Sales contemplated by the Sale Motion shall not have completed by May 30, 2011;

(e)    The Debtor shall fail to (i) comply with the Budget (subject to the Permitted Variance), or (ii) comply with any other covenant or agreement specified in this Interim Order and such failure to comply with any such covenant or agreement shall continue unremedied for more than three (3) business days after written notice thereof to counsel for the Debtor, the Committee, and UST;

(f)    Any representation made by the Debtor in any Weekly Report (other than with respect to projected financial information) shall prove to have been incorrect in any material respect when made;

(g)    the Debtor takes any action or ceases operations of its present businesses or takes any material action (which is inconsistent with the Budget) for the purpose of effecting the foregoing or there shall occur a dissolution or termination of the existence of the Debtor;

(h)     this Interim Order shall have been reversed, vacated, stayed, amended, supplemented or otherwise modified in a manner which shall, in the sole opinion of TD Bank, materially and adversely affect the rights of TD Bank hereunder or shall materially and adversely affect the priority of any or all of TD Bank's claims, liens or security interests;

(i)     any sale of all or substantially all assets of the Debtor pursuant to section 363 of the Bankruptcy Code shall have been approved which is not acceptable to TD Bank, _provided_ that no timely filed action is then pending as provided for in paragraph 18 below;

(j)     any sale of Post-Petition Collateral shall have been approved without the written consent of TD Bank, _provided_ that no timely filed action is then pending as provided for in paragraph 18 below;

(k)     any other super-priority claim or lien equal or superior in priority to that granted to TD Bank pursuant to or permitted hereunder shall have been granted;

(l)     the automatic stay of section 362 of the Bankruptcy Code is lifted so as to allow a third party to proceed against any asset of the Debtor valued at $50,000 or more;

(m)     the Debtor (or any of the Debtor's successors and assigns) shall have filed a motion or application or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the Prepetition Obligations or any other cause of action against or with respect to the Prepetition Obligations, the prepetition liens securing such Prepetition Obligations, in each case, against TD Bank or any of its affiliates, subsidiaries, agents, members, officers, directors, employees or

attorneys, **provided, however**, that for the avoidance of doubt, the commencement of any such action in accordance with paragraph 18 below shall not constitute an Event of Default hereunder;

(n)   the chapter 11 case shall have been dismissed or converted to a case under chapter 7 of the Bankruptcy Code, or a chapter 11 trustee, a responsible officer, or an examiner with enlarged powers related to the operation of the Debtor's business (powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code) shall have been appointed.

15.   **Effect of Event of Default.**

(a)  Immediately upon the occurrence and during the continuation of an Event of Default, TD Bank may declare a termination, reduction, or restriction of the Debtor's right to use Cash Collateral, except for (i) the limited use of Cash Collateral provided for in paragraph 11 above and (ii) the Carve-Out (any such declaration, shall be referred to as a *"Termination Declaration"*). The Termination Declaration shall be served upon the Debtor, the Committee, and the UST (the date of any such Termination Declaration, the *"Termination Date"*). On the Termination Date, the Debtor's right to use the Cash Collateral on the terms and conditions set forth in this Interim Order shall, except to the extent necessary to pay the Carve-Out and subject to paragraph 11 above, terminate automatically. Within five (5) business days after the Termination Date (the *"Remedies Notice Period"*), the Debtor shall be entitled to request an emergency hearing with the Court in connection with any motion seeking the continued use of Cash Collateral; provided, however, TD Bank and any other party in interest, including without limitation the Committee, shall retain all rights to object to any such motion.

**(b) In the event the automatic stay is modified or vacated by the Court following an emergency hearing as provided for in paragraph 15(a) above or any other hearing as the Court may schedule, TD Bank shall be entitled, subject to the payment of the Carve-Out and subject to paragraph 11 above, to apply the payments or proceeds of the Collateral in accordance with the provisions of the Prepetition Loan Agreements. After expiration of the Remedies Notice Period, nothing herein shall prohibit TD Bank from seeking any relief on an emergency or expedited basis to the extent TD Bank deems it necessary to protect its interest in any Collateral; provided, however, that the Debtor and any other party in interest, including without limitation the Committee, shall retain all rights to object to any such request for relief.**

16.   <u>Reports, Books and Records</u>. Notwithstanding any other provision of this Interim Order:

(a)   On the third business day of each week following entry of this Interim Order, the Debtor shall furnish to TD Bank and its counsel and the Committee and its counsel a weekly cash report setting forth, in comparative form, the actual results achieved against those projected for the prior week, including the actual cash receipts and disbursements and the variance of the actual results from those estimated in the Budget. The Debtor shall also furnish to counsel to TD Bank and the Committee copies of its monthly operating reports as filed with the Office of the United States Trustee;

(b)   The Debtor shall provide TD Bank with such written reports as TD Bank, in its reasonable discretion, shall require;

(c)      The Debtor is directed to keep its books and records of original entry,

including without limitation, records of sale, credits authorized (whether or not credit

memoranda have been issued), purchases, accounts receivable, bills of lading, cash receipts, and

cash disbursements, current and updated, so that all business activity is posted to them in the

ordinary course of the Debtor's business; and

(d)      TD Bank and its professional advisors shall have the right, at any time, to

inspect, audit, examine, check, make copies of or extracts from the books, accounts, checks,

orders, invoices, bills of lading, correspondence and other records of the Debtor, and the Debtor

shall make all of same available to TD Bank and its representatives, for such purposes.

17.    Preservation of Rights Granted Under this Interim Order.

(a)      No claim or lien having a priority senior to or *pari passu* with those

granted by this Interim Order to TD Bank shall be granted or allowed while any portion of the

Adequate Protection Obligations remains outstanding, and the Adequate Protection Liens of TD

Bank shall not be subject or junior to any lien or security interest that is avoided and preserved

for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code or subordinated

to or made *pari passu* with any other lien or security interest under the Bankruptcy Code or

otherwise.

(b)      Unless all Adequate Protection Obligations shall have been paid in full,

the Debtor shall not seek, and it shall constitute an Event of Default and a termination of the

right to use Cash Collateral as provided for in this Interim Order if the Debtor seeks, or supports

any applications therefor, or if there is entered, (i) any modifications or extensions of this Interim

Order without the prior written consent of TD Bank, and no such consent shall be implied by any

other action, inaction or acquiescence by TD Bank, (ii) without the approval or consent of TD

Bank, the Court authorizes (x) under section 363 of the Bankruptcy Code, the use of Cash

Collateral in which TD Bank has an interest, or the sale, use, or lease, other than in the ordinary

course of business, of other property of the Debtor (including the Collateral) in which TD Bank

has an interest, or (y) the obtaining of credit or the incurring of indebtedness pursuant to

section 364 of the Bankruptcy Code, or any other grant of rights against the Debtor and/or its

estate entitled to priority administrative status which is equal or superior to that granted to TD

Bank (with respect to the Adequate Protection Claim) herein, or (iii) an order dismissing the

Case.  If an order dismissing the Case under section 1112 of the Bankruptcy Code or otherwise is

at any time entered, such order shall provide (in accordance with sections 105 and 349 of the

Bankruptcy Code) that (x) the superpriority claims and Replacement Liens granted to TD Bank

pursuant to this Interim Order shall continue in full force and effect and shall maintain their

priorities as provided in this Interim Order until all Adequate Protection Obligations shall have

been paid and satisfied in full (and that such superpriority claims and Replacement Liens, shall,

notwithstanding such dismissal, remain binding on all parties in interest) and (y) this Court shall

retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens

and security interests referred to in clause (x) of this paragraph.

        (c)    If any or all of the provisions of this Interim Order are hereafter reversed,

modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect (i) the

validity of any Adequate Protection Claim incurred prior to the actual receipt of written notice by

TD Bank of the effective date of such reversal, modification, vacatur or stay or (ii) the validity or

enforceability of any lien or priority authorized or created hereby or pursuant to this Interim

Order with respect to any Adequate Protection Obligations incurred prior to such reversal,

modification, vacatur or stay.  Notwithstanding any such reversal, modification, vacatur or stay,

any use of Cash Collateral or Adequate Protection Obligations incurred by the Debtor to TD

Bank prior to the actual receipt by TD Bank of written notice of such reversal, modification,

vacatur or stay shall be governed in all respects by the original provisions of this Interim Order,

and TD Bank shall be entitled to all the rights, remedies, privileges and benefits granted in this

Interim Order with respect to all uses of Cash Collateral and Adequate Protection Obligations.

(d)     Except as expressly provided in this Interim Order, the Adequate

Protection Obligations and all other rights and remedies of TD Bank granted by the provisions of

this Interim Order shall survive, and shall not be modified, impaired or discharged by (i) the

entry of an order converting the Case to a case under chapter 7, dismissing the Case or by any

other act or omission, or (ii) the entry of an order confirming a plan of reorganization in the Case

and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtor has waived any

discharge as to any remaining Adequate Protection Obligations. The terms and provisions of this

Interim Order shall continue in this Case, in any successor case, or in any superseding chapter 7

case under the Bankruptcy Code, and the Adequate Protection Obligations and all other rights

and remedies of TD Bank granted by the provisions of this Interim Order shall continue in full

force and effect until the Adequate Protection Obligations are indefeasibly paid in full in cash.

18.     Effect of Stipulations on Third Parties and Challenge Period.

(a) The stipulations, admissions, rights, and liens contained in or granted by this Interim

Order, including, without limitation, in paragraphs 2 and 6(a) above, shall be binding upon (1)

the Debtor and any successor thereto (including, without limitation, any chapter 7 or chapter 11

trustee appointed or elected in this case) in all circumstances, and (2) all parties in interest,

including, without limitation, any Committee, unless (a) a party in interest with requisite

standing has timely filed an adversary proceeding, objection or contested matter by no later than

the date that is the later of (i) 90 days after the entry of a Final Order in respect of the Motion,

which date can be extended by the Court for cause shown, or (ii) such later date as has been

agreed to, in writing, by TD Bank (A) challenging the validity, enforceability, priority or extent

of the Prepetition Obligations or the Prepetition Liens on the Prepetition Collateral, or the

Adequate Protection Liens granted by paragraph 6(a) above, or (B) otherwise asserting or

prosecuting any Avoidance Actions or any other claims, counterclaims or causes of action,

objections, contests or defenses of the Debtor or its estate against TD Bank or its respective

agents, affiliates, subsidiaries, directors, officers, employees, representatives, attorneys or

advisors in connection with matters related to the Prepetition Loan Documents, the Prepetition

Obligations, the Prepetition Collateral, or the conduct of TD Bank or in connection therewith

(collectively, *"Claims and Defenses"*), and (b) there is a final order in favor of the plaintiff or

objecting party sustaining any such objection, challenge or claim in any such timely filed

adversary proceeding, objection or contested matter; *provided*, **that as to the Debtor, all such**

**Claims and Defenses are hereby irrevocably waived and relinquished as of the Petition**

**Date.**

        (b)    If no such adversary proceeding or contested matter is timely filed as provided for in

paragraph 18(a) above, then (x) the Prepetition Obligations shall constitute allowed claims, not

subject to counterclaim, setoff, recoupment, subordination, recharacterization, defense or

avoidance, for all purposes in the Case, including upon conversion of this Case to a case under

chapter 7 of the Bankruptcy Code, (y) the Prepetition Liens on the Prepetition Collateral and the

Adequate Protection Liens shall be deemed legal, valid, binding, enforceable, perfected and of

the priority described in paragraphs 4(e), 6(a), and 11(a) above, not subject to recharacterization,

subordination, avoidance or reduction, and (z) the Prepetition Obligations, the Prepetition Liens

on the Prepetition Collateral, and the conduct of TD Bank shall not be subject to any other or

further challenge by any party in interest, and any such party shall be enjoined and forever barred

from, seeking to exercise the rights of the Debtor's estate regarding any such challenge,

including, without limitation, any successor thereto (including, without limitation, any estate

representative or a chapter 7 or 11 trustee appointed or elected for the Debtor in this case), or

from asserting any Claims and Defenses against TD Bank, or any of its respective agents,

affiliates, subsidiaries, directors, officers, employees, representatives, attorneys or advisors.

(c) Notwithstanding the foregoing, the Committee hereby is authorized to, and conferred

standing to, pursue any Claims and Defenses against TD Bank.

(d) If any such adversary proceeding or contested matter is timely filed as provided for in

paragraph 18(a) above, the stipulations, admissions, rights, and liens contained in or granted by

this Interim Order shall nonetheless remain binding and preclusive (as provided in the second

sentence of this paragraph) on the Committee and on any other person or entity, except to the

extent that such findings and admissions were expressly challenged in such adversary proceeding

or contested matter.

19. **Binding Effect; Successors and Assigns.**

(a) The provisions of this Interim Order and any actions taken pursuant hereto

shall survive entry of any orders which may be entered confirming any plan of reorganization, or

which may be entered converting this case from chapter 11 to a case under chapter 7 of the

Bankruptcy Code; *provided, further*, that the terms and provisions of this Interim Order, as well

as the liens, mortgages and security interests and the Adequate Protection Obligations granted

shall continue in this case under the Bankruptcy Code and such liens, mortgages and security

interests and the Adequate Protection Claim shall maintain their priority as provided by this

Interim Order until the Debtor's Pre Petition Obligations are satisfied in full.

(b)    The provisions of this Interim Order shall be binding upon all parties in

interest in this case and shall inure to the benefit of TD Bank, the Debtor, the Debtor's estate and

their respective successors and assigns (including, without limitation, (i) any chapter 11 or

chapter 7 trustee appointed or elected as a representative of the Debtor's estate in this case,

(ii) an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or (iii) any other

fiduciary appointed as a legal representative of the Debtor or with respect to property of the

estate of the Debtor in this case).

(c)    Nothing in this Interim Order shall in any way prejudice or compromise

any rights that TD Bank may have against parties other than the Debtor.

20.    <u>Effectiveness</u>.  The terms and conditions of this Interim Order shall constitute

findings of fact and conclusions of law and be:  (a) immediately enforceable upon entry hereof

pursuant to Bankruptcy Rule 8005; and (b) not be stayed absent (i) an application by a party in

interest for such stay in conformance with such Bankruptcy Rule 8005, and (ii) a hearing upon

notice to the Debtor and TD Bank.

21.    <u>Reservation of Rights</u>.

(a)    Nothing contained in this Interim Order or TD Bank's consent to the use

of the Cash Collateral shall constitute a determination that TD Bank is not entitled to additional,

different or further adequate protection for continued use of the Cash Collateral.  This Order

shall not constitute a concession, acknowledgement, admission or stipulation by TD Bank or a

finding by the Court that TD Bank's interests in the Prepetition Collateral are "*adequately*

*protected*" within the meaning of sections 361 and 363 of the Bankruptcy Code.

      (b)    Nothing in this Interim Order shall be construed to limit TD Bank's rights to apply to the Court at any time for modification of this Interim Order, for different, further or additional adequate protection, for termination of the use of Cash Collateral, for relief from the automatic stay, or any other relief nor should anything in this Interim Order be construed to limit the rights of the Committee or any other party-in-interest to object to such application. Nothing in this Interim Order, including the Budget, shall constitute or be construed as a consent, acknowledgment or agreement by TD Bank or to the Debtor's calculation of the value of accounts receivable, inventory or *"cash collateral"* as used in the Budget and nothing herein shall constitute a waiver or estoppel with respect to the right of TD Bank to dispute the validity or accuracy of such calculation or any contention with respect to collateral values or adequate protection based thereon.

      (c)    Except as expressly provided for herein, nothing contained in this Interim Order (including, without limitation, the authorization to use Cash Collateral) shall impair or modify any claims, rights, or defenses available in law or equity to TD Bank and all such claims, rights, or defenses are fully reserved.

      22.    <u>Order Governs</u>. In the event of any inconsistency between the provisions of this Interim Order and any confirmation order confirming a plan not otherwise agreed to by TD Bank with respect to the use of Cash Collateral, the provisions of this Interim Order shall govern.

      23.    In no event shall TD Bank be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Collateral.

      24.    A final hearing on the relief requested in the Motion shall be held on _____March 2____, 2011 at _10:00am_ in ____Springfield____, Massachusetts.

25.     A copy of this Interim Order, shall be served by the Debtor via first class mail on

or before _February 22, 2011_ upon: (a) the Office of the United States Trustee; (b) TD Bank;

(c) all known taxing authorities that have claims against the Debtor; (d) any party which has

filed, prior to the date of entry of this Interim Order, a request for service of pleadings in this

case; (e) counsel for the Committee; and (f) the creditors holding the 20 largest unsecured claims

in this case.  Service in accordance with this paragraph shall be deemed good and sufficient

notice and service of this Interim Order and the final hearing on the relief requested in the

Motion.


Honorable Henry J. Boroff
United States Bankruptcy Judge

Dated: _February 18_ 2011

27

## EXHIBIT A

### BUDGET

### [Attached Behind]

Exhibit A-28

Confidential

CONSENSUS

**THE RUGGED BEAR COMPANY, DIP**
Weekly Cash Flow Projection

| | Actual | fiscal month February | | | | fiscal month March | | | | | fiscal month April | | | | | fiscal month May | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week ending | 2/13/2011 | 2/20/2011 | 2/27/2011 | 3/6/2011 | 3/13/2011 | 3/20/2011 | 3/27/2011 | 4/3/2011 | 4/10/2011 | 4/17/2011 | 4/24/2011 | 5/1/2011 | 5/8/2011 | 5/15/2011 | 5/22/2011 | 5/29/2011 | 6/5/2011 |
| | Actual | Estimate | Estimate | Estimate | Estimate | Estimate | Estimate | Estimate | Estimate | Estimate | Estimate | Estimate | Estimate | Estimate | Estimate | Estimate | Estimate |

**Cash Inflows**

**Sales**

| Row | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash in from Sales | 390,727 | 333,000 | 430,000 | 330,000 | | | | | | | | | | | | | 508,370 |
| Sale of Inventory to Liquidator | | | | | | | | | | | | | | | | | 5,000 |
| Sales Tax Collected (7.2%) | 2,904 | 6,660 | 8,600 | 2,033,478 6,600 | 10,000 | 10,000 | 10,000 | 10,000 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 5,000 | 5,000 | 5,000 | |
| Proceeds From Sale of Intellectual Prop. | | | | | | | | | | | | | | | | | |
| Proceeds From Sale of Fixtures & Equipment | | | | | | | | | | | | | | | | | |
| Liquidator Reimbursement of Central Expense | | | | | | | | | | | | | | | | | |
| Credit Card Receivable | | | 5,000 | | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Refund of Credit Card Deposit | | | 153,008 | | | | | | | | | | | | | | |
| Cash Received from Franchisee | 176,185 | | | | | | | | | | | | | | | | 175,000 |
| Franchise Letter of Credit | | | | | | | | | | | | | | | | | |
| **Total Cash In** | 569,816 | 339,660 | 434,600 | 2,376,078 | 166,008 | 15,000 | 15,000 | 15,000 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 10,000 | 10,000 | 10,000 | 693,370 |

**Cash Outflows**

| Row | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Payroll and other employee expenses | 165,772 | 161,204 | 9,643 | 9,643 | 142,659 | 9,643 | 64,762 | 9,643 | 67,712 | 9,643 | 52,670 | 9,643 | 62,441 | 9,643 | 49,734 | 25,000 | 43,161 |
| Health insurance (reimbursement) | 26,828 | 33,479 | | | 28,540 | | | (20,007) | 8,533 | | (12,569) | 5,973 | | | | (1,792) |
| Rent Payments | | 10,000 | 7,500 | 330,000 | | | | 394,474 | | | 327,866 | | | | | |
| Rent Payment/Reimbursement from Liquidator | 14,954 | 62,597 | 17,597 | 11,665 | 10,218 | (76,000) | (76,000) | (76,000) | (76,000) | (76,000) | (76,000) | (76,000) | (76,000) | (76,000) | (76,000) | (45,000) |
| Other Occupancy Costs | 11,221 | | | 28,369 | | 10,219 | 10,219 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Credit Card Fees | | 9,596 | | 9,675 | | | | 8,774 | | | 8,774 | | | | | |
| Advertising | | | | | | | | (1,500) | | | | | | | | |
| Insurance | | 10,000 | | 6,000 | | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) |
| Insurance Reimbursement | | | 1,000 | 13,500 | | | | 11,500 | | | 11,500 | | | | | |
| Professional Fees | | 2,000 | | | | | | | | 350,000 | | | | | | |
| G&A Expenses | | | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Communications & Systems | | | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Debtor Counsel | | | 85,000 | 0 | 40,000 | 85,000 | 0 | 0 | 0 | 20,000 | 0 | 50,000 | 0 | 0 | 50,000 | 0 |
| Creditor Committee | | | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Debtor Advisor/CRO | | | | | | | | | | | | | | | | |
| Consensus Success Fee | | | | | | | | | | | | | | | | 35,000 |
| Sales Taxes | | 30,697 | | 5,000 | 16,628 | | 5,000 | 5,000 | 36,600 | | 5,000 | 27,560 | | | 5,000 |
| Loan Principal Payment | | | 20,000 | | | 20,000 | 20,000 | | | | 20,000 | | | | 20,000 |
| Payments to Trade | | | | | | | | | | | | | | | | |
| Other Expense | 5,680 | 212,941 | 21,471 | 26,471 | 37,941 | 17,341 | 11,471 | 11,471 | 11,471 | 11,471 | 11,471 | 11,471 | 11,471 | 11,471 | 11,471 | 5,000 |
| Float (Checks cleared from Previous Week) | | | | | | | | | | | | | | | | |
| Float (Checks not cleared Current Week) | | | | | | | | | | | | | | | | |
| **Total Cash Out** | 246,455 | 532,314 | 112,210 | 526,380 | 228,159 | 115,981 | (105,951) | 349,955 | 15,215 | 185,213 | 21,440 | 270,154 | 6,385 | (23,387) | (11,396) | 32,560 | 34,869 |
| **Cash Increase (Decrease)** | 323,361 | (192,654) | 322,390 | 1,851,756 | (62,151) | (100,981) | (91,551) | (334,955) | (2,715) | (172,713) | (8,940) | (357,654) | 6,115 | 53,187 | 21,396 | (22,560) | 658,500 |

| Inventory Roll-Forward | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Inventory (incl. capitalized costs) | 5,880,631 | 5,675,510 | 5,403,690 | 5,168,492 | | | | | | | | | | | | |
| Plus: Inventory Coming In | 0 | 0 | 0 | 0 | | | | | | | | | | | | |
| Less: Cost of Goods Sold | (205,121) | (271,820) | (235,188) | (210,275) | | | | | | | | | | | | |
| Ending Inventory (incl. capitalized costs) | 5,675,510 | 5,403,690 | 5,168,492 | 4,958,217 | | | | | | | | | | | | |
| Less: Capitalized Costs in Inventory | (650,000) | (650,000) | (650,000) | (650,000) | | | | | | | | | | | | |
| Net Inventory (net of capitalized costs) | 5,025,510 | 4,753,690 | 4,518,492 | 4,308,217 | | | | | | | | | | | | |

| | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Loan Balance - Beginning | 4,278,496 | 4,278,496 | 4,258,496 | 4,258,496 | 4,258,496 | 4,258,496 | 4,258,496 | 4,238,496 | 4,238,496 | 4,238,496 | 4,238,496 | 4,238,496 | 4,218,496 | 4,218,496 | 4,218,496 | 4,198,496 |
| Loan Principal Payment | 0 | (20,000) | 0 | 0 | 0 | 0 | (20,000) | 0 | 0 | 0 | (20,000) | 0 | 0 | 0 | (20,000) | 0 |
| Loan Balance - Ending | 4,278,496 | 4,258,496 | 4,258,496 | 4,258,496 | 4,258,496 | 4,258,496 | 4,238,496 | 4,238,496 | 4,238,496 | 4,238,496 | 4,218,496 | 4,218,496 | 4,218,496 | 4,218,496 | 4,198,496 | 4,198,496 |
| **Ending Cash Balance** | 630,163 | 437,480 | 759,879 | 2,685,635 | 2,632,484 | 2,530,533 | 2,438,982 | 2,105,347 | 2,102,532 | 2,066,819 | 2,066,678 | 1,702,985 | 1,709,160 | 1,763,287 | 1,764,533 | 1,741,782 | 2,400,282 |