**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

------------------------------x
                              :
**In re**                     :
                              :   **Chapter 11**
**THE RUGGED BEAR COMPANY,**  :
**f/d/b/a RB ACQUISITION CORP.,** :   **Case No. 11-10577-HJB**
                              :
**Debtor**                    :
                              :
                              :
------------------------------x

**ORDER (I) AUTHORIZING AND SCHEDULING AUCTION AND SALE HEARING
WITH RESPECT TO PROPOSED SALE OF SUBSTANTIALLY ALL OF THE
DEBTOR'S ASSETS FREE AND CLEAR OF ANY AND ALL LIENS, CLAIMS,
ENCUMBRANCES AND INTERESTS; (II) APPROVING AGENCY AGREEMENT, BID
PROCEDURES, AND BREAKUP FEE; (III) APPROVING FORM AND MANNER OF
NOTICE; (IV) SHORTENING NOTICE PURSUANT TO RULE 9006 OF THE
FEDERAL RULE OF BANKRUPTCY PROCEDURE; AND (V)
GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[1] of The Rugged Bear Company f/d/b/a RB Acquisition Corp., as debtor and debtor-in-possession in the above-captioned case(the "Debtor"), seeking, *inter alia*, entry of an order (i) authorizing and scheduling an Auction and Sale Hearing to determine the highest and best offers for one or more sales of substantially all of the Debtor's assets free and clear of any and all liens, claims, encumbrances and interests as contemplated by the Motion; (ii) approving the form of Agency Agreement; (iii) approving the Bid Procedures, and Breakup Fee; (iv) approving form and manner of notice; (v) shortening notice pursuant to Rule 9006 of the Bankruptcy Rules; and (vi) granting related relief; and the Court being satisfied, based on the representations made in the Motion and at the hearing on entry of this Order (the "Bid Procedures Hearing"), that the requested relief is necessary and in the best interests of the

---

[1]   All capitalized terms not otherwise defined herein have the meanings ascribed to such terms in the Motion.

BOS-1464657 v4

Debtor and its estate; and due and proper notice of the relief sought by this Order and the Bid Procedures Hearing having been provided; and after due deliberation and sufficient cause appearing therefore, it is

FOUND AND DETERMINED THAT:[2]

A.   On January 25, 2011 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

B.   The Debtor has continued in possession of its property and has continued to operate and manage its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner.

C.   On February 4, 2011, the Office of the United States Trustee appointed the Committee.

D.   The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this chapter 11 case in this district is proper pursuant to 28 U.S.C. §§ 1408.

E.   The Debtor has provided notice of the relief sought in the Motion with respect to the Bid Procedures and the Bid Procedures Hearing to (i) the Office of the United States Trustee; (ii) counsel to TD Bank; (iii) counsel to the Committee; (iv) the creditors holding the twenty (20) largest claims against the Debtor's estate; (v) all known federal, state, and local taxing authorities; (vi) landlords for the Stores; (vii) counsel to Gordon Brothers; (viii) all attorneys general for the states in which the Stores are located; (ix) all other entities that have filed

---

[2]   Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052. Statements made by the Court from the bench at the hearing constitute additional conclusions of law and findings of act as appropriate.

requests for notices pursuant to Rule 2002 of the Bankruptcy Rules; and (x) all parties who have previously expressed an interest in the Debtor's assets (the "Core Notice Parties").

F. The notice of and opportunity to be heard with respect to the Bid Procedures was proper, timely, adequate, and sufficient and is appropriate under the circumstances, and no further notice is required.

G. The Debtor has articulated good and sufficient reasons for approval of (i) the Bid Procedures attached hereto as Exhibit A, (ii) the Breakup Fee, and (iii) the Sale Notice, in connection with the sale(s) of substantially all of the Debtor's assets contemplated by the Motion.

H. Gordon Brothers Retail Partners, LLC ("Gordon Brothers" or the "Agent"), pursuant to the Agency Agreement dated February 11, 2011, will serve as the "stalking horse" bidder for the Auction to be conducted under section 363 of the Bankruptcy Code with respect to the Inventory Sales.

I. There shall be no "stalking horse" bidder for the Auction to be conducted under section 363 of the Bankruptcy Code with respect to the sale of Intellectual Property and such other assets as may be designated by a bidder.

J. The Bid Procedures and the Breakup Fee are reasonable and appropriate to induce Gordon Brothers to become the stalking horse for the Inventory Sales process, and to maximize the return on the assets being sold pursuant to the Motion. The Agent would not have entered into the Agency Agreement absent the Breakup Fee.

K. The approval of the Bid Procedures is in the best interests of the Debtor, its estate, its creditors, and other parties in interest. The Debtor's determination to propose and to agree to such provisions is within the Debtor's reasonable business judgment. The Bid Procedures,

including the Breakup Fee, are fair and reasonable and reasonably calculated to enhance the process of competitive bidding for and maximize recovery with respect to the Debtor's assets. The Breakup Fee is fair, reasonable, and necessary to preserve and enhance the value of the estate by encouraging further competitive bidding and by providing other potential bidders with a benchmark as to the initial value of the goods that are the subject of the Inventory Sales.

L.  There is a need to have the Auction proceed as rapidly as possible given the nature of the Debtor's assets and sufficient cause exists for shortening notice of the Motion pursuant Rule 9006(c)(1) of the Bankruptcy Rules.

NOW, THEREFOR, IT IS HEREBY ORDERED THAT:

1.  The relief sought in the Motion concerning Bid Procedures is granted.

2.  The Bid Procedures, attached hereto as <u>Exhibit A</u>, the Breakup Fee, and the Sale Notice, in the form attached to the Motion, or as amended appropriately to conform with the provisions of this Order, are approved in all respects. The Court may require amendments to the Agency Agreement, which amendments will be ruled upon prior

3.  On or before February 18, 2011, the Debtor shall serve, by first-class mail, postage prepaid, (A) a copy of this Order and the Sale Notice on the Core Notice Parties and (B) a copy of the Sale Notice on all other creditors and equity holders. [handwritten: to bidding at the Auction.]

4.  Service of the Order and Sale Notice in the form and manner set forth in the preceding paragraph is sufficient to provide effective notice to all interested parties and shall constitute proper, timely, adequate and sufficient notice of the Bid Procedures, the Auction, the Sale Hearing, and the sale(s) and other relief contemplated by the Motion in accordance with Rules 2002 and 6004 of the Bankruptcy Rules, and no other or further notice shall be required with respect thereto.

5.  Any objection (an "<u>Objection</u>") to the Motion or to the sale(s) contemplated thereby must (a) be in writing; (b) state the legal and factual basis for such objection; (c) be filed

with the Clerk of the Court, United States Bankruptcy Court, 300 State Street, Springfield, Massachusetts 01105; and (d) be served on: (i) counsel for the Debtor, K&L Gates, LLP, State Street Financial Center, One Lincoln Street, Boston, Massachusetts 02111, Attn: Charles A. Dale III, Esq. and Mackenzie L. Shea, Esq., (ii) the Office of the United States Trustee, John W. McCormack Post Office and Court House, 5 Post Office Square, Suite 1000, Boston, MA 02109, Attn: Jennifer Hertz, Esq., (iii) counsel for TD Bank, Goodwin Procter LLP, Exchange Place, 53 State Street, Boston, Massachusetts, 02109-2881, Attn: Michael J. Pappone, Esq., (iv) counsel for the Committee, Jager Smith, One Financial Center, Boston, Massachusetts, 02111, Attn: Steven Reingold, Esq.; (v) counsel to Gordon Brothers, Goulston & Storrs, P.C., 400 Atlantic Avenue, Boston, Massachusetts, 02110, Attn: James Wallack, Esq. **so as to be received no later than** 10:00am on March 1, 2011 (the "Objection Deadline").

6. Any person or entity who fails to file and serve an Objection in compliance with the preceding paragraph by the Objection Deadline shall be deemed to have consented to the relief sought in the Motion and to the sale(s) contemplated thereby.

7. The Auction for the Debtor's assets will be governed by the Bid Procedures, as such may be amended or supplemented in accordance therewith, and shall be conducted by the Court at Springfield Massachusetts at 10:00am on March 2, 2011. The Sale Hearing to consider (i) approval of the sale(s) contemplated by the Motion to the Successful Bidder(s) (as defined in the Bid Procedures) and (ii) any objections to the sale will commence immediately following the Auction.

8. The Agent is hereby granted a Breakup Fee in the amount of $35,000.00, which shall be payable in the event that the Court approves, and the Debtor consummates, an Inventory Sale (or other disposition of the same assets) to a Successful Bidder who is not the Agent. The

Breakup Fee shall be paid promptly from the proceeds of such transaction in accordance with Section 17 of the Agency Agreement, notwithstanding any lien on such proceeds, without further notice, action or order of the Court.

9. This Order is deemed effective immediately upon entry by waiving the ten (10) day stay under Rule 6004(h) of the Bankruptcy Code.

10. The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Order.

11. The Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation of this Order.

12. To the extent of any material inconsistency between the Agency Agreement and this Order, the Order shall control.

Dated: February 18, 2011

Honorable Henry J. Boroff
United States Bankruptcy Judge

- 6 -

- 7 -

# EXHIBIT A

## BID PROCEDURES

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

---------------------------------x
                                 :
**In re**                        :
                                 :   **Chapter 11**
**THE RUGGED BEAR COMPANY,**     :
**f/d/b/a RB ACQUISITION CORP.,**:   **Case No. 11-10577-HJB**
                                 :
        **Debtor**               :
                                 :
                                 :
---------------------------------x

## BID PROCEDURES

The following bid procedures (the "Bid Procedures") have been approved and authorized by the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court") in the above-captioned chapter 11 case of The Rugged Bear Company f/d/b/a RB Acquisition Corp. (the "Debtor") in connection with the Debtor's sale of substantially all of its assets free and clear of any and all liens, claims, encumbrances, and interests and shall govern the auction (the "Auction") to be conducted by the Court to solicit (i) higher and better offers by any party interested in such assets (a "Counterbidder") with respect to the Agency Agreement (the "Agency Agreement") between the Debtor and Gordon Brothers Retail Partners, LLC (the "Agent") dated February 11, 2011 to conduct inventory liquidation sales ("Inventory Sales") at the Debtor's retail store locations (collectively, the "Stores") and (ii) offers to purchase by any party (a "Bidder") with respect to the Debtor's intellectual property and such other assets as may be designated by the Bidder (collectively, the "Intellectual Property") pursuant to an asset purchase agreement submitted in accordance with these Bid Procedures (an "APA").

The terms and conditions of these Bid Procedures shall apply to the solicitation of higher and better offers and to the conduct of the Auction for both the Inventory Sales and the sale of Intellectual Property (the "IP Sale") unless otherwise noted herein. The Inventory Sales and IP Sale are, at times, referred to herein as together as the "Sale."

(a) **Diligence by Prospective Counterbidders.** The Debtor shall: (i) give notice of the Sale to prospective Bidders and Counterbidders; (ii) receive and consider offers to enter into the Agency Agreement or APA; (iii) provide information to any such prospective Bidder or Counterbidder; and (iv) allow any such prospective Bidder or Counterbidder to conduct reasonable due diligence in connection with the consideration of a potential bid to enter into the Agency Agreement or APA; provided, however, that any such prospective Bidder or Counterbidder desiring to

BOS-1464657 v4

conduct due diligence shall: (1) demonstrate the financial ability, as determined by the Debtor in its reasonable discretion in consultation with its professionals, to execute the Agency Agreement or similar agency agreement or APA, to the satisfaction of the Debtor; and (2) execute a confidentiality agreement in a form acceptable to the Debtor in its sole discretion, which shall be not less onerous than or materially different from the confidentiality agreement executed by the Agent.

(b) **Submission of Counteroffers and Bids**. Any counteroffer (a "Counteroffer") for the Inventory Sales or any bid to purchase the Intellectual Property in the IP Sale (a "Bid") shall comply with all of the following requirements:

   (i) be filed with the Clerk of Court, United States Bankruptcy Court, 300 State Street, Springfield, MA 01105 and be served on (1) counsel for the Debtor, K&L Gates, LLP, State Street Financial Center, One Lincoln Street, Boston, Massachusetts 02111, Attn: Charles A. Dale III, Esq. and Mackenzie L. Shea, Esq., (2) the Office of the United States Trustee, John W. McCormack Post Office and Court House, 5 Post Office Square, Suite 1000, Boston, MA 02109, Attn: Jennifer Hertz, Esq., (3) counsel for TD Bank, Goodwin Procter LLP, Exchange Place, 53 State Street, Boston, Massachusetts, 02109-2881, Attn: Michael J. Pappone, Esq., (4) counsel for the Committee, Jager Smith, One Financial Center, Boston, Massachusetts, 02111, Attn: Steven Reingold, Esq.; and (5) counsel to Gordon Brothers, Goulston &Storrs, P.C. 400 Atlantic Avenue, Boston, Massachusetts, 02110, Attn: James Wallack, Esq so that such Counteroffer or Bid is actually received no later than 10:00am on March 1, 2011 (the "Bid Deadline");

   (ii) include: (a) an executed Agency Agreement in substantially the same form executed with the Agent and a redline comparison marked to show any and all deviations from the Agency Agreement; or (b) an APA for the purchase of the Intellectual Property (and other assets, if applicable), which is acceptable to the Debtor in its sole discretion.

   (iii) be accompanied by: (a) financial statements or evidence satisfactory to the Debtor that the Bidder or Counterbidder is willing, authorized, capable and qualified, financially, legally and otherwise, of unconditionally performing all obligations under the Agency Agreement or APA; and (b) evidence that it is duly authorized and entitled to engage in the transaction contemplated by the Bid or Counteroffer without the consent of any entity that has not been obtained.

(iv) be accompanied by a deposit (the "Deposit") equal to ten percent (10%) of the proposed purchase price for the IP Sale, and be in the form of a wire transfer or cashier's check payable to the Debtor and to be held in an escrow account by the Debtor's counsel pending completion of the Auction, unless as set forth herein, the Bidder or Counterbidder is determined to be the Successful Bidder or the Back-Up Bidder (each as defined below); and

(v) be accompanied by evidence, satisfactory to the Debtor, in its sole discretion, of the Bidder or Counterbidder's good faith, within the meaning of section 363(m) of the Bankruptcy Code.

(c) **Minimum Overbid Requirement for Inventory Sales**. Any Counteroffer with respect to the Inventory Sales shall offer a Guaranteed Percentage (as defined in the Agency Agreement) of not less than 60.0%.

(d) **No Minimum Bid Requirement for IP Sale**. Bids with respect to the IP Sale shall not be subject to a minimum bid amount.

(e) **Participation in Both Inventory Sales and IP Sale** The Agent and any Bidder or Counterbidder shall be entitled to submit a combined Counteroffer/Bid ("Global Bid") for the assets that are the subject of the Inventory Sales and IP Sale and may participate in the Auction with respect to both, provided that such Global Bid allocates the proposed purchase price between the Inventory Sales assets and the Intellectual Property assets.

(f) **Assumption and Assignment of Leases and/or Executory Contracts.** If any bid contemplates the assumption and assignment of any Store Lease or other executory contract of the Debtor, the bidder must furnish the Debtor financial and other information with which the Debtor can establish "adequate assurance" as required by the Bankruptcy Code.

(g) **No Timely or Conforming Counteroffers for Inventory Sales**. If no timely, conforming Counteroffers are submitted for the Inventory Sales, the Debtor shall request at the Sale Hearing that the Court approve the sale to the Agent pursuant to the terms and conditions of the Agency Agreement.

(h) **No Timely or Conforming Bids for IP Sale**. If no timely, conforming Bids are submitted for the IP Sale that are acceptable to the Debtor in its sole discretion, the Debtor shall withdraw its request to sell such assets.

(i) **Auction Procedures**. In the event that one or more timely, conforming Counteroffers or Bids are submitted, and each party who has submitted such a timely, conforming Counteroffer or Bid (including the Agent) shall be referred to herein as a "Qualified Bidder", the Debtor shall conduct the Auction immediately prior to the Sale Hearing, in which the Agent and all

Qualified Bidders may participate. The Auction shall be governed by the following procedures:

(i) all Qualified Bidders shall be deemed to have consented to the core jurisdiction of (and venue in) the Bankruptcy Court and to have waived any right to jury trial in connection with any disputes relating to the Auction;

(ii) bidding will commence (A) with respect to the Inventory Sales, at an amount equal to 0.25% higher than the Guaranteed Amount in the highest and best Counteroffer submitted by a Qualified Bidder, (B) with respect to the IP Sale, at an amount equal to at least $25,000 higher than the highest proposed purchase price submitted in a Bid by a Qualified Bidder for the Intellectual Property, and (C) with respect to a Global Bid, in an amount to be determined by the Debtor (each, the "Beginning Auction Bid");

(iii) each subsequent bid by a Qualified Bidder shall be in increments of at least (A) with respect to the Inventory Sales, at least 0.25% above than the Guaranteed Amount proposed in the Beginning Auction Bid, (B) with respect to the IP Sale, at least $25,000 above the proposed purchase price in the Beginning Auction Bid, and (C) with respect to the Global Bid, an amount greater than the Beginning Auction Bid by at least $25,000;

(iv) Notwithstanding any contrary provision hereof, the Debtor may at any time prior to or during the Auction request sealed bids from the Qualified Bidders;

(v) Agent shall not be permitted to credit its bid by the amount of the Breakup Fee;

(vi) the Debtor shall make the ultimate determination of which Counteroffer or Bid, including a Global Bid, for the assets which are the subject of the Inventory Sales and IP Sale represents the highest and best bid for the Debtor's assets. The entity (or entities should the Inventory Sales assets and IP Sale assets be sold separately) making such bid being hereinafter known as the "Successful Bidder").

(j) **Breakup Fee**. In the event that the Bankruptcy Court enters an order approving the Inventory Sales to a Successful Bidder(s) other than the Agent (including as part of a Global Bid), and the Debtor consummates such transaction, then the Debtor shall promptly, without further Bankruptcy Court notice, action or order, pay to the Agent the Breakup Fee of $35,000.00

(k) **Back-Up Bidder**. Upon the conclusion of the Auction, the Debtor shall have the right (but not the obligation) to select a bidder other than the Successful Bidder(s) and to designate such bidder(s) the "Back-Up Bidder." If, for any reason, the Successful Bidder(s) are unable or unwilling to timely perform its obligations under the Successful Bidder's definitive Agency Agreement or APA, the Debtor, in the exercise of its business judgment and in its sole discretion, may enter into the Agency Agreement or APA with the Back-Up Bidder(s) without further notice or a hearing, and the Back-Up Bidder shall be bound by the last bid (including any sealed bid) it made during the Auction.

(l) **Disposition of Deposits**. The deposits submitted by any Bidder or Counterbidders shall be refunded to each unsuccessful Bidder or Counterbidder other than the Back-Up Bidder(s), if any, upon entry of an order approving the Agency Agreement or APA to the Successful Bidder(s). The deposit of the Successful Bidder(s) and the Back-Up Bidder(s) shall be retained by the Debtor as earnest money to be used in the following ways: (1) the deposit of the Successful Bidder(s) shall either be (a) applied at closing as a credit toward the Guaranteed Percentage or purchase price the Successful Bidder(s) have agreed to pay, (b) if the Agency Agreement or APA agreed to by the Successful Bidder(s) shall fail to timely close by reason of a breach or default of the Successful Bidder(s), the deposit shall be retained by the Debtor, or (c) in the event that the Agency Agreement or APA agreed to by the Successful Bidder(s) shall fail to timely close by reason of a breach or default of the Debtor, the deposit shall be returned to the Successful Bidder(s); and (2) the deposit of the Back-Up Bidder(s) shall either be (a) returned to the Back-Up Bidder(s) upon the closing of the transaction with the Successful Bidder(s); or (b) if the sale to the Successful Bidder(s) shall fail to close for any reason applied at closing as a credit toward the Guaranteed Percentage or purchase price the Back-Up Bidder(s) have agreed to pay. Any deposit retained by the Debtor on account of a default by a Successful Bidder or Back-Up Bidder shall be without prejudice to any other right, claim or remedy the Debtor may have against such party.

(m) **Consultation with the Committee**. Anything in the Bid Procedures Order or these Bid Procedures to the contrary notwithstanding, any decision to be made by the Debtor hereunder shall be done in consultation with the Committee.

Dated: Boston, Massachusetts
       February 18, 2011

Respectfully submitted,

THE RUGGED BEAR COMPANY,
f/d/b/a RB ACQUISITION CORP.

By its proposed counsel,

/s/ *[signature]*

Charles A. Dale III (BBO No. 558839)
Mackenzie L. Shea (BBO No. 666241)
K&L Gates LLP
State Street Financial Center
One Lincoln Street
Boston, Massachusetts 02111
Tel: (617) 261-3100
Fax: (617) 261-3175

E-mail:
    chad.dale@klgates.com
    mackenzie.shea@klgates.com