ASSET PURCHASE AGREEMENT

BETWEEN

THE RUGGED BEAR COMPANY f/d/b/a RB ACQUISITION CORP.

AND

CUTIE PIE BABY, INC.

DATED: FEBRUARY 28, 2011

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (this "*Agreement*") is made as of February 28, 2011, by and between The Rugged Bear Company f/d/b/a RB Acquisition Corp., a Delaware corporation and debtor and debtor-in-possession in the Bankruptcy Case ("*Seller*"), and Cutie Pie Baby, Inc., a New York corporation ("*Buyer*").

### RECITALS

A.  Seller owns a chain of 29 retail stores operating under the name "Rugged Bear" (the "*Business*").

B.  On January 25, 2011 (the "*Petition Date*"), Seller filed a voluntary bankruptcy petition pursuant to Chapter 11 of the Bankruptcy Code pending before the United States Bankruptcy Court for the District of Massachusetts (the "*Bankruptcy Court*") designated as Case No. 11-10577-HJB (the "*Bankruptcy Case*");

C.  Seller desires to sell, convey, assign, transfer and deliver to Buyer certain of the assets and other rights relating to the Business and Buyer desires to purchase and accept from Seller such assets and rights, at the price and on the terms and conditions herein set forth and in accordance with Sections 363 of the Bankruptcy Code.

### AGREEMENT

NOW, THEREFORE, in consideration of the covenants and agreements set forth herein, the parties hereby agree as follows:

1.  **Definitions**

As used in this Agreement, the following capitalized terms shall have the meanings set forth below:

"*Agreement*": This Agreement and all schedules and exhibits hereto.

"*Assignment of Trademarks*": As defined in Section 2.5.

"*Assumed Liabilities*": As defined in Section 2.3.

"*Auction*": As defined in Section 8.7.

"*Bankruptcy Case*": As defined in the Recitals.

"*Bankruptcy Code*": The United States Bankruptcy Code, being Title 11 of the United States Code as enacted in 1978, as the same has heretofore been or may hereafter be amended, recodified, modified or supplemented, together with all rules, regulations and interpretations thereunder or related thereto.

"*Bankruptcy Court*": As defined in the Recitals.

"*Bid Procedures Order*": The order dated February 18, 2011 entered in the Bankruptcy Case pursuant to which the Bankruptcy Court established certain procedures for the sale of the assets contemplated to be sold under this Agreement.

"*Bid Submission Date*": March 1, 2011 at 10:00 a.m., which is the date set by the Bid Procedures Order for submission of objections and counter-offers.

"*Bill of Sale*": As defined in Section 2.5.

"*Business*": As defined in the Recitals.

"*Buyer Released Parties*" As defined in Section 14.2.1.

"*Claim*": Any claim, demand, cause of action, suit, proceeding, arbitration, hearing or investigation as defined in Section 101(5) of the Bankruptcy Code.

"*Closing*": The consummation of the purchase and sale of the Purchased Assets under this Agreement.

"*Closing Date*": The date upon which the Closing becomes effective.

"*Code*": The Internal Revenue Code of 1986, as amended, and all regulations promulgated thereunder, as in effect from time to time.

"*Deposit*": As defined in Section 3.2.

"*Encumbrance*": Any security interest, mortgage, lien, charge, option, easement, interest, license, adverse claim or restriction of any kind, including, but not limited to, any restriction on the use, transfer, voting, receipt of income or other exercise of any attributes of ownership.

"*Excluded Assets*": As defined in Section 2.2.

"*Final Order*": An order of the Bankruptcy Court which has been entered, not vacated and with respect to which (A) no appeal has been timely filed, (B) if a timely appeal has been filed, the effectiveness of such order has not been stayed in accordance with Federal Rule of Bankruptcy Procedure 8005 or otherwise, or (C) if such order was stayed pending appeal such stay has been terminated by subsequent court order.

"*Intellectual Property*": As defined in Section 2.1.1.

"*Petition Date*": As defined in the Recitals.

"*Purchased Assets*": As defined in Section 2.1

"*Purchase Price*": As defined in Section 3.1.

"*Sale Approval Order*" As defined in Section 8.6.

"*Sale Hearing*" As defined in Section 8.6.

"*Seller Released Parties*" As defined in Section 14.2.2.

"*Tax*" or "*Taxes*": All taxes, charges, fees, levies or other assessments, including, without limitation, income, excise, gross receipts, personal property, real property, sales, use, ad valorem, transfer, franchise, profits, license, withholding, payroll, employment, severance, stamp, occupation, windfall profits, social security and unemployment or other taxes imposed by the United States or any agency or instrumentality thereof, any state, county, local or foreign government, or any agency or instrumentality thereof, and any interest or fines, and any and all penalties or additions relating to such taxes, charges, fees, levies or other assessments.

"*Transaction Documents*": Any and all of the agreements and documents referenced in Sections 8 and 9.

"*Transfer*": As defined in Section 2.1.

2. **Purchase and Sale of Assets**

    2.1 **Purchase and Sale**

    Subject to the terms and conditions of this Agreement, at the Closing, Seller shall sell, transfer, convey, assign and deliver (collectively, "*Transfer*"), or cause to be transferred, to Buyer or its nominee, designee, or assignee, free and clear of all Claims and Encumbrances, and Buyer or its nominee, designee, or assignee shall purchase and acquire, all of Seller's right, title and interest in and to the following assets (collectively, but excluding the Excluded Assets, the "*Purchased Assets*").

    2.1.1    **Intellectual Property**

    All intellectual property owned by the Seller (whether or not protectable by patent, copyright or trade secret rights), including all trade names, trademarks (including common-law trademarks), service marks, emblems, logos, insignia and copyrights, and their registrations and applications, and all goodwill associated therewith, and all documentary evidence of any of the foregoing (collectively, the "*Intellectual Property*").

    2.1.2    **Domain Names/URLs**

    All of Seller's websites, domain names, and uniform resource locators (also known as URLs) and all related rights thereto employed primarily or exclusively in the Seller's operation of the Business, including, without limitation, www.ruggedbear.com

    2.1.3    **[Customer Lists]**

    [All of Seller's mailing lists, customer lists, sales and customer files, advertising and promotional materials.]

-3-

### 2.2 Excluded Assets

Notwithstanding the generality of Section 2.1, any and all assets of Seller not expressly described above in Section 2.1 as Purchased Assets shall be retained by the Seller and shall not be transferred to Buyer (collectively, the "*Excluded Assets*").

### 2.3 Assumption of Liabilities

Buyer agrees to assume and agrees to discharge and perform when due, the liabilities of Seller (and only those liabilities of Seller) which are specifically enumerated in this Section 2.3 (the "*Assumed Liabilities*"). All claims against Seller and all liabilities and obligations of Seller not specifically assumed by Buyer pursuant to this Section 2.3 are Excluded Liabilities. The Assumed Liabilities shall consist only of any liabilities and obligations arising as a direct result of the Buyer's ownership and use, from and after the Closing, of the Purchased Assets.

### 2.4 Excluded Liabilities

Notwithstanding any other provision of this Agreement to the contrary, the Buyer is assuming only the Assumed Liabilities and is not assuming any other liability or obligation of Seller of whatever nature, whether known or unknown, absolute, contingent, presently in existence or arising hereafter and whether or not related to the Purchased Assets or the Business. Without limiting the generality of the foregoing, the Buyer shall not assume any liabilities other than the Assumed Liabilities, including without limitation the following obligations or liabilities, which shall remain obligations and liabilities of Seller (all obligations or liabilities not assumed by Buyer herein are called the "*Excluded Liabilities*"): all Claims, liabilities, or obligations related to (i) any Excluded Asset, (ii) any Taxes accruing or relating to any periods prior to the Closing, (iii) any warranties for, returns of, or issues with items sold prior to the Closing, (iv) any environmental and safety law; and (v) the continuation or termination of any employee benefit plan and all liabilities with respect to accrued payroll, bonuses, vacation pay, severance pay, workers' compensation liability, or any other employee benefits owed to present and former employees of Seller.

### 2.5 Instruments of Sale and Transfer; License to Agent

On or prior to the Closing Date, Seller shall deliver to Buyer and Buyer shall deliver to Seller, as the case may be, such instruments of sale as shall, in the reasonable judgment of Buyer, be effective to vest in Buyer at the Closing all of Seller's right, title and interest in and to the Purchased Assets including, without limitation, a Bill of Sale substantially in the form of **Exhibit 2.5(a)** (the "*Bill of Sale*") and an Assignment of Trademarks substantially in the form of **Exhibit 2.5(b)** (the "*Assignment of Trademarks*"). Seller shall take all reasonable additional steps as may be necessary to put Buyer in possession and operating control of the Purchased Assets at the Closing, and Buyer shall take all reasonable additional steps as may be necessary for it to assume the Assumed Liabilities at the Closing. Notwithstanding anything to the contrary contained in this Agreement, the Buyer shall grant a license to use the Purchased Assets to the Agent (as defined in the Bid Procedures Order) for the purpose and duration of conducting the Inventory Sales (as defined in the Bid Procedures Order).

### 2.6 Further Assurances

From time to time following the Closing, Buyer and Seller shall execute and deliver, or cause to be executed and delivered, to the other such additional instruments of conveyance and transfer and evidences of assumption as such party may reasonably request or as may be otherwise necessary or desirable to carry out the purposes of this Agreement.

## 3. Purchase Price

### 3.1 Purchase Price

The aggregate purchase price for the Purchased Assets shall be $50,000.00, paid pursuant to Section 4.2 below (the "*Purchase Price*").

### 3.2 Purchase Price Deposit

Contemporaneously herewith, the Buyer shall make a deposit of $5,000.00, equal to ten percent (10%) of the Purchase Price, towards the sale of the Purchased Assets contemplated by this Agreement (the "*Deposit*"), and if the Buyer is the successful bidder, such amounts shall be credited against the Purchase Price in accordance with Section 4.2 below. If the Buyer is not the successful bidder pursuant to the Sale Approval Order (or if the Seller withdraws the Purchased Assets from sale at the Auction), the Deposit shall be repaid to the Buyer in accordance with the Bid Procedures Order.

### 3.3 Allocation of Purchase Price

The Buyer intends to utilize the fair market values of the Purchased Assets, to be agreed upon by the Buyer and Seller prior to Closing, for the purpose of allocating the Purchase Price paid hereunder for the Purchased Assets for federal, state, local and other Tax purposes, which allocation shall be in accordance with Section 1060 of the Code and the Treasury regulations thereunder. Seller shall pay any sales, use, excise, transfer, or other Taxes arising out of the transfer of the Purchased Assets. Each party agrees to report, if required, the federal, state, local and other Tax consequences of the transactions contemplated by this Agreement and the Transaction Documents in a manner consistent with such allocation and shall not take any position inconsistent therewith upon examination of any Tax return, in any refund claim, or in any litigation, investigation or otherwise. Each party shall cooperate with the other party in the filing of Form 8594 with the U.S. Internal Revenue Service.

## 4. Closing; Payments

### 4.1 Closing Date

Subject to the terms and conditions of this Agreement, the Closing shall take place at the offices of the Seller's counsel, K&L Gates, LLP, State Street Financial Center, One Lincoln Street, Boston, MA 02111 at 10:00 a.m. on the first business day after the Sale Approval Order becomes a Final Order, or at such other location or time as the parties may agree and shall be effective as of midnight of the Closing Date, provided that if any of the conditions set forth in Section 8 is not satisfied by the time the Closing would otherwise occur, Buyer may, by notice to

Seller, defer the Closing to a business day specified in such notice, but not later than March 22, 2011 or such later date as the parties shall mutually agree.

### 4.2 Payment of Purchase Price

(a) The Purchase Price, less the Deposit, shall be payable at Closing by wire transfer to such bank account as Seller may designate in writing prior to the Closing.

(b) The Buyer shall, as of the Closing, assume or accept the Purchased Assets, subject only to the Assumed Liabilities.

## 5. Representations and Warranties of Seller

Seller represents and warrants to Buyer as follows:

### 5.1 Organization, Good Standing, etc.

Seller is a corporation duly organized, validly existing and in corporate good standing under the laws of the jurisdiction of its incorporation. Seller has all requisite corporate power and authority to own, operate and lease the Purchased Assets and to carry on the Business as now being conducted. Seller is duly qualified to do business in all jurisdictions where such qualification is required except where the failure to so qualify would not, individually or in the aggregate, result in a material adverse effect on the Business.

### 5.2 Corporate Authority

Subject to the approval by the Bankruptcy Court of this Agreement and the Transaction Documents, Seller has full corporate power and authority to execute and deliver this Agreement and the Transaction Documents to which it is a party and perform its obligations hereunder and thereunder. Subject to the approval of the Bankruptcy Court, the execution and delivery by Seller of this Agreement and the Transaction Documents to which it is a party, the performance by Seller of its obligations hereunder and thereunder and the consummation by Seller of the transactions contemplated hereby and thereby have been duly authorized by all necessary corporate action. Subject to the approval of the Bankruptcy Court, this Agreement constitutes a valid and binding obligation of Seller, enforceable against Seller in accordance with its terms, and the Transaction Documents to which Seller is a party, when executed, delivered by Seller and approved by the Bankruptcy Court, will constitute valid and binding obligations of Seller, enforceable against Seller in accordance with their respective terms.

## 6. Representations and Warranties of Buyer

To induce Seller to enter into this Agreement, Buyer represents and warrants to Seller, as of the Closing Date, all as follows in this Section 6:

### 6.1 Organization, Good Standing, Power, etc.

Buyer is a corporation duly organized, validly existing and in good standing under the laws of the State of New York. Buyer has all requisite power and authority to own or lease and operate its assets and to carry on its business as it is now conducted.

### 6.2 Transaction Documents

Buyer has full corporate power and authority to execute and deliver this Agreement and the Transaction Documents to which it is a party and perform its obligations hereunder and thereunder. The execution and delivery by Buyer of this Agreement and the Transaction Documents to which it is a party, the performance by Buyer of its obligations hereunder and thereunder and the consummation by Buyer of the transactions contemplated hereby and thereby have been duly authorized by all necessary corporate action. This Agreement constitutes a valid and binding obligation of Buyer, enforceable against Buyer in accordance with its terms, and the Transaction Documents to which Buyer is a party, when executed and delivered by Buyer, will constitute valid and binding obligations of Buyer, enforceable against Buyer in accordance with their terms.

### 6.3 No Conflict

Neither the execution and delivery by Buyer of this Agreement or the Transaction Documents to which Buyer is a party, the performance by Buyer of its obligations hereunder or thereunder, nor the consummation of the transactions contemplated hereby or thereby will (a) violate, conflict with or result in any breach of any provision of Buyer's certificate of incorporation or by-laws; or (b) violate any applicable law, statute, rule, ordinance or regulation of any governmental body.

### 7. [Reserved]

### 8. Conditions Precedent to Obligations of Buyer

The obligation of Buyer to purchase the Purchased Assets at the Closing shall be subject to the satisfaction at or prior to the Closing of each of the following conditions, any one or more of which may be waived by Buyer:

### 8.1 Representations, Warranties and Covenants

(a) The representations and warranties of Seller made in this Agreement, the Transaction Documents and any certificate furnished pursuant hereto or thereto shall be true, complete and correct, with the same force and effect as though made on and as of the Bid Submission Date; and

(b) Seller shall have performed and complied in all respects with the covenants and agreements required by this Agreement to be performed and complied with by it on or prior to the Closing Date.

### 8.2 Delivery of Documents

Seller shall deliver the following documents, agreements and supporting papers to Buyer at the Closing, and the delivery of each shall be a condition to Buyer's performance of its obligations to be performed at the Closing:

(a) a Bill of Sale duly executed by an authorized officer of Seller; and

(b) a counterpart of the Assignment of Trademarks duly executed by an authorized officer of Seller.

### 8.3 Satisfaction of Conditions

All agreements and other documents required to be delivered by Seller hereunder on or prior to the Closing Date shall be in form and substance satisfactory to Buyer as determined in the reasonable judgment of Buyer and its counsel. Buyer shall have received such other agreements, documents and information as it may reasonably request in order to establish satisfaction of the conditions set forth in this Section 8.

### 8.4 Bankruptcy Court Approval

The hearing at which the Bankruptcy Court considers entering the Sale Approval Order shall be referred to as the "*Sale Hearing*". The Bankruptcy Court shall have entered an order (the "*Sale Approval Order*") in form and substance acceptable to Seller and Buyer approving this Agreement and authorizing Seller to take all actions provided for herein, and the Sale Approval Order shall become a Final Order. Without in any way limiting the foregoing, to satisfy the conditions set forth in this section, the Sale Approval Order must:

(a) contain findings of fact and rulings that Buyer negotiated this Agreement at arms length, without collusion, and in good faith within the meaning of Section 363(m) of the Bankruptcy Code, and is a good faith purchaser and entitled to the protections of Section 363(m) of the Bankruptcy Code;

(b) as of the Closing Date, terminate and release all Encumbrances and Claims in and to the Purchased Assets under and pursuant to Sections 363(f) and 1141(d) of the Bankruptcy Code; it being understood that such order (or an abstract thereof) shall be in form suitable for filing in applicable lien records and shall enjoin any holder of a Claim or Encumbrance against the Purchased Assets or any interest in Seller from asserting any such Claim or Encumbrance against Buyer or the Purchased Assets;

(c) provide that the purchase price for the Purchased Assets shall be the Purchase Price, or such greater sum as may be bid in accordance with the bid procedures set forth in the Bid Procedures Order;

(d) vacate the automatic stay of the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure as they relate to Buyer and the Purchased Assets;

(e) except as otherwise provided in this Agreement, expressly provide that Buyer shall not be deemed a successor of Seller and shall acquire no successor liability for any obligation of Seller for any claims against Seller as a result of the sale of the Purchased Assets to Buyer; and

(f) approve the sale of the Purchased Assets to Buyer in accordance with Section 363 of the Bankruptcy Code.

### 8.5 Bid Procedures Order and Auction

The Buyer shall be deemed a "Qualified Bidder" under the Bid Procedures Order. If there is a Qualified Bidder in addition to Buyer, the Bankruptcy Court shall conduct an auction (the "*Auction*") to commence prior to the Sale Hearing. In accordance with the Bid Procedures Order and notwithstanding anything to the contrary contained in this Agreement, the Seller reserves the right, at any time prior to or after the Auction, to withdraw the Purchased Assets from sale.

### 8.6 Reserved

### 8.7 Due Diligence

The Buyer shall, prior to the entry of the Sale Approval Order, have completed all of its business, legal, and financial due diligence with respect to the Purchased Assets and the Business and shall, in its sole and absolute judgment, be satisfied with the results thereof.

## 9. Conditions Precedent to Obligations of Seller

The obligation of Seller to sell the Purchased Assets to Buyer at the Closing shall be subject to the satisfaction at or prior to the Closing of each of the following conditions, any of which may be waived by Seller:

### 9.1 No Injunction or Litigation

As of the Closing Date, there shall not be any Claim or judgment of any nature or type threatened, pending or made by or before any governmental body that questions or challenges the lawfulness of the transactions contemplated by this Agreement or the Transaction Documents under any law or regulation or that seeks to delay, restrain or prevent such transactions.

### 9.2 Representations, Warranties and Covenants

(a) The representations and warranties of Buyer made in this Agreement or in the Transaction Documents or any certificate furnished pursuant hereto or thereto shall be true, complete and correct on and as of the Closing Date with the same force and effect as though made on and as of the Closing Date;

(b) Buyer shall have performed and complied with the covenants and agreements required by this Agreement to be performed and complied with by it on or prior to the Closing Date.

### 9.3 Delivery of Documents

Buyer shall deliver a counterpart of the Assignment of Trademarks executed by Buyer and supporting papers to Seller at the Closing, and the delivery of such Assignment of Trademarks shall be a condition to Seller's performance of its obligations to be performed at the Closing.

### 9.4 Bankruptcy Court Approval

The Bankruptcy Court shall have entered the Sale Approval Order and the Sale Approval Order shall either be a Final Order or no stay of the Sale Approval Order is then in effect so long as the Bankruptcy Court has made a finding pursuant to §363(m) of the Bankruptcy Code, provided, however, Buyer in its sole discretion may waive this requirement.

## 10. Certain Post-Closing Covenants

### 10.1 Further Assurances

After the Closing Date, Seller shall from time to time, at Buyer's request execute and deliver, or cause to be executed and delivered, such further instruments of conveyance, assignment and transfer or other documents, and perform such further acts, as Buyer may reasonably request in order to fully effect the conveyance and transfer to Buyer of, or perfect Buyer's right, title and interest in, any of the Purchased Assets, to assist Buyer in obtaining possession of any of the Purchased Assets, or to otherwise comply with the provisions of this Agreement and consummate the transactions contemplated by this Agreement and the Transaction Documents.

### 10.2 Post-Closing Cooperation

After the Closing Date, each party shall, to the extent it is capable of doing so, provide the other party with such reasonable assistance (without charge) as may be requested by the other party in connection with any Claim or audit of any kind or nature whatsoever or the preparation of any response, demand, inquiry, filing, disclosure or the like (including, but not limited to, any tax return or form) relating to the Purchased Assets or the Business.

## 11. Taxes and Costs; Apportionments

### 11.1 Transfer Taxes

Seller shall bear all excise, transfer, sales and use, registration and documentary taxes, filing and recordation fees and similar charges relating to the sale or transfer of the Purchased Assets hereunder. Buyer shall furnish Seller with any necessary certificates of Tax exemption if applicable.

### 11.2  Transaction Costs

Each party shall be responsible for its own costs and expenses incurred in connection with the preparation, negotiation and delivery of this Agreement and the Transaction Documents, including but not limited to attorneys' and accountants' fees and expenses.

### 11.3  Apportionments

Any and all Taxes, assessments, and other charges to the extent applicable to the Purchased Assets will be pro-rated to the Closing Date, and such Taxes and other charges shall be allocated between the parties by adjustment at the Closing, or as soon thereafter as the parties may agree. All such Taxes shall be allocated on the basis of the fiscal year of the tax jurisdiction in question.

## 12.  Survival

All representations and warranties of Seller and Buyer contained in this Agreement or in the Transaction Documents or in any certificate delivered pursuant hereto or thereto shall terminate as of the Closing. The covenants and agreements of Seller and Buyer contained in this Agreement or in the Transaction Documents shall terminate at Closing, except for those covenants which, by their terms, are to be performed after the Closing, which post-Closing covenants shall survive for a period of six (6) months after the Closing Date.

## 13.  Termination

### 13.1  Termination

This Agreement may be terminated before the Closing:

(a)  by Seller, by giving written notice to Buyer at any time, if any of the conditions set forth in Section 9 is not satisfied at the time at which the Closing (as it may be deferred pursuant to Section 4) would otherwise occur, or if the satisfaction of any such condition is or becomes impossible;

(b)  by Buyer, by giving written notice to Seller at any time, if any of the conditions set forth in Section 8 is not satisfied at the time at which the Closing (as it may be deferred pursuant to Section 4) would otherwise occur, or if the satisfaction of any such condition is or becomes impossible;

(c)  by Seller, by giving written notice to Buyer at any time, if Buyer has breached any material representation, warranty, covenant or agreement contained in this Agreement;

(d)  by Buyer, by giving written notice to Seller, if Seller has breached any representation, warranty, covenant or agreement contained in this Agreement;

(e)  by mutual written agreement of Seller and Buyer;

(f)     by Buyer, if the Bankruptcy Court shall not have entered the Sale Approval Order and/or the Sale Approval Order shall either be a Final Order or no stay of the Sale Approval Order is then in effect so long as the Bankruptcy Court has made a finding pursuant to §363(m) of the Bankruptcy Code, provided, however, Buyer in its sole discretion may waive this requirement.;

(g)     by Buyer, upon dismissal of Seller's bankruptcy case or conversion of Seller's bankruptcy case to a proceeding under Chapter 7, or the appointment of a trustee under Chapter 11, of the Bankruptcy Code; or

14.  **Miscellaneous**

14.1  **Mutual Releases**

14.1.1    **Release by Seller**

Effective as of the Closing, the Seller, on behalf of itself and its bankruptcy estate, shall be deemed to have irrevocably, unconditionally and without reservation of any kind waived, released and forever discharged the Buyer and its respective affiliates, officers, directors, employees, attorneys, professionals, and agents, acting in such capacity (collectively, the "***Buyer Released Parties***"), from and against any and all actions, causes of action, claims, liabilities, suits, debts, judgments, and damages, of any kind whatsoever, whether matured or unmatured, whether at law or in equity, whether known or unknown, liquidated or unliquidated, foreseen or unforeseen, discoverable or undiscoverable, contingent or non-contingent, which Seller has, had, or may assert in the future against the Buyer Released Parties from the beginning of time through the Closing, but excluding past, present, and future rights, obligations, and claims arising under this Agreement.

14.1.2    **Release by Buyer**

Effective as of the Closing, the Buyer shall be deemed to have irrevocably, unconditionally and without reservation of any kind waived, released and forever discharged the Seller and its respective affiliates, officers, directors, employees, attorneys, professionals, and agents, acting in such capacity (collectively, the "***Seller Released Parties***"), from and against any and all actions, causes of action, claims, liabilities, suits, debts, judgments, and damages, of any kind whatsoever, whether matured or unmatured, whether at law or in equity, whether known or unknown, liquidated or unliquidated, foreseen or unforeseen, discoverable or undiscoverable, contingent or non-contingent, which Buyer has, had, or may assert in the future against the Seller Released Parties from the beginning of time through the Closing, but excluding past, present, and future rights, obligations, and claims arising under this Agreement.

14.2  **Severability**

If any court determines that any part or provision of this Agreement is invalid or unenforceable, the remainder of this Agreement shall not be affected thereby and shall be given full force and effect and remain binding upon the parties, provided that if a court so determines that any part or provision of this Agreement is invalid or unenforceable, Buyer shall have the

right to terminate this Agreement and rather than accepting such partial enforceability or other modifications to this Agreement. Furthermore, subject to Buyer's right to terminate as provided in the preceding sentence, the court shall have the power to replace the invalid or unenforceable part or provision with a provision that accomplishes, to the extent possible, the original business purpose of such part or provision in a valid and enforceable manner. Such replacement shall apply only with respect to the particular jurisdiction in which the adjudication is made.

### 14.3  Modification and Waiver

This Agreement may not be amended or modified in any manner, except by an instrument in writing signed by each of the parties hereto. The failure of any party to enforce at any time any of the provisions of this Agreement shall in no way be construed to be a waiver of any such provision, or in any way affect the right of such party thereafter to enforce each and every such provision. No waiver of any breach of this Agreement shall be deemed to be a waiver of any other or subsequent breach.

### 14.4  Notices

All notices and other communications required or permitted to be given under this Agreement shall be in writing and shall be sent by facsimile transmission, or mailed postage prepaid by first-class certified or registered mail, or mailed by a nationally recognized express courier service, or hand-delivered, addressed as follows:

if to Buyer:

Cutie Pie Baby, Inc.
34 West 33rd Street 9th Floor South
NY, NY 10001

and

if to Seller:

K&L Gates LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
Attn: Charles A. Dale III, Esq.

Either party may change the persons or addresses to which any notices or other communications to it should be addressed by notifying the other party as provided above. Any notice or other communication, if addressed and sent, mailed or delivered as provided above, shall be deemed given or received three days after the date of mailing as indicated on the certified or registered mail receipt, or on the next business day if mailed by express courier service, or on the date of delivery or transmission if hand-delivered or sent by facsimile transmission.

#### 14.5    Assignment

Neither Seller nor Buyer may assign any of its rights or obligations hereunder without the prior written consent of the other party. Notwithstanding the foregoing, Buyer may assign its rights and obligations under this Agreement to any nominee, designee, or any affiliate of Buyer, and furthermore Buyer may assign its rights and obligations hereunder to any third-party successor after the Closing; provided, however, that any such assignment by Buyer shall not relieve Buyer from its obligations hereunder. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns.

#### 14.6    Captions

The captions and headings used in this Agreement have been inserted for convenience of reference only and shall not be considered part of this Agreement or be used in the interpretation thereof.

#### 14.7    Entire Agreement

This Agreement constitutes the entire agreement and understanding between the parties with respect to the subject matter hereof and supersedes all prior agreements, understandings, negotiations, representations and statements, whether oral, written, implied or expressed, relating to such subject matter.

#### 14.8    No Third-Party Rights

Nothing in this Agreement is intended, nor shall be construed, to confer upon any person or entity other than Buyer and Seller any right or remedy under or by reason of this Agreement, except with respect to the license granted to the Agent for use of the Purchased Assets for the purpose and duration of conducting the Inventory Sales (as discussed in Section 2.5 below).

#### 14.9    Counterparts

This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which shall constitute one agreement. The parties acknowledge and agree that this Agreement may be executed via facsimile (including computer-scanned or other electronic reproduction of the actual signatures) and that delivery of a facsimile signature by electronic or physical means shall be effective to the same extent as delivery of an original signature.

#### 14.10    Governing Law

This Agreement shall be governed by, and construed in accordance with, the laws of the Commonwealth of Massachusetts as though made and to be fully performed in the Commonwealth of Massachusetts.

[Signature Page Follows]

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed by their respective representatives hereunto authorized as of the day and year first above written.

**The Rugged Bear Company f/d/b/a RB Acquisition Corp.**

By_____

Name_____

Title_____


**Cutie Pie Baby, Inc.**

By_____

Name _____ Eli Yedid _____

Title _____ President _____

Exhibit 2.5(a)<br>to Asset Purchase Agreement

## BILL OF SALE AND ASSIGNMENT

KNOW ALL MEN BY THESE PRESENTS, that The Rugged Bear Company f/d/b/a RB Acquisition Corp., a Delaware corporation ("*Seller*"), for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged by it, does hereby sell, transfer, convey, assign and deliver to [_____]., a [_____] corporation ("*Buyer*"), all of Seller's right, title and interest in and to the Purchased Assets, as defined in the Asset Purchase Agreement (the "*Agreement*") between Seller and Buyer dated March [--], 2011, which is incorporated herein by reference.

    Seller warrants that it has good, valid and marketable title to the Purchased Assets, free and clear of any lien or encumbrance, except as otherwise provided in the Agreement.

    This Bill of Sale and Assignment is being delivered in connection with the Agreement and is subject to, and is entitled to the benefits in respect of, the Agreement.

    This Bill of Sale and Assignment shall be binding upon and inure to the benefit of Buyer and Seller and their respective successors and assigns.

    The Purchased Assets are sold as is and where is, without warranties (except as expressly stated above) of any kind or nature.

    IN WITNESS WHEREOF, Seller has caused its duly authorized representative to execute this Bill of Sale and Assignment as of this ____ day of _____, 2011.

**The Rugged Bear Company f/d/b/a RB<br>Acquisition Corp.**

By_____

Name _____

Title_____

Exhibit 2.5(b)
to Asset Purchase Agreement

## ASSIGNMENT OF TRADEMARKS

Assignment of Trademarks dated as of this ____ day of _____ 2011, by and between The Rugged Bear Company f/d/b/a RB Acquisition Corp., a Delaware corporation ("*Seller*"), and to [_____]., a [_____] corporation ("*Buyer*").

WHEREAS, Seller and Buyer have entered into an Asset Purchase Agreement dated as of March [--], 2011 (the "*Agreement*");

NOW, THEREFORE, for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged by the parties, the parties hereby agree as follows:

All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Agreement.

Subject to the terms and conditions of the Agreement, Seller hereby assigns to Buyer as of the Closing Date all of the right, title and interest of Seller in and under all of the trademarks and tradenames listed on **Exhibit A** attached hereto.

This Assignment of Trademarks is being delivered in connection with the Agreement and is subject to, and is entitled to the benefits in respect of, the Agreement.

This Assignment of Trademarks shall be binding upon and inure to the benefit of Buyer and Seller and their respective successors and assigns.

This Assignment of Trademarks may be executed in one or more counterparts, each of which shall be deemed an original, but all of which shall constitute one agreement.

[Signature Page Follows]

IN WITNESS WHEREOF, the parties have caused their duly authorized representatives to execute this Assignment of Trademarks as of the date first written above.

**The Rugged Bear Company f/d/b/a RB Acquisition Corp.**

By_____

Name_____

Title_____


**[Buyer]**

By_____

Name_____

Title_____

**Exhibit A**